**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GREGORY V. MANCO, Ph.D., | ; | |
| Plaintiff, | ; | |
| v. | : | CIVIL ACTION NO. 5:22-CV-00285 |
| | ; | |
| ST. JOSEPH'S UNIVERSITY, ET AL | : | |
| Defendants | ; | |

**PLAINTIFF'S REPLY TO HADASSAH COLBERT, KARLEIGH LOPEZ AND ERIN FAHEY'S OPPOSITION FOR LEAVE OF COURT TO FILE AN AMENDED COMPLAINT**

## I.     INTRODUCTION

Plaintiff, Dr. Gregory Manco ("Dr. Manco" or "Plaintiff") has requested leave pursuant to Rule 15(a) of the Federal Rules of Civil Procedure to file an Amended Complaint. The instant opposition was filed by Defendant Hadassah Colbert ("Colbert"), Karleigh Lopez ("Lopez"), and Erin Fahey ("Fahey"), collectively ("Opposing Defendants").   Opposing Defendants filed an opposition to Plaintiff's Amended Complaint seeking to have this Court to preclude Plaintiff's claims against Opposing Defendants for Intentional Infliction of Emotional Distress ("IIED") and Tortious Interference With Contractual Relations.   In doing so, Opposing Defendants, *inter alia*, improperly support their position with alleged additional irrelevant putative facts seeded into their response[1], all of which exceed the scope of Dr. Manco's Amended Complaint, as opposed to the allegations within the Amended Complaint. As set forth below, Opposing Defendants' assertions

---

[1] For example, Opposing Defendants have scrutinized over 18,500 anonymous (Twitter name "South Jersey Giants") tweets and fixated on criticizing Dr. Manco's Constitutionally protected speech on a select few tweets.  Opposing Defendants improperly interjected their ideological dogma in criticizing Dr. Manco's "tweets…*designed* to elicit reactions…and generate public discussion (emphasis in original); that Dr. Manco "writes articles, sits for interviews and speaks publicly on topics including reparations for slavery, racial sensitivity trainings, transgender identity, affirmative action, diversity, equity and inclusion, the elimination of public school, minimum wage, maximum corporate tax, abortion and the 'welfare state.'" Opposing Defendants' fixation further rambles objections to Dr. Manco's other tweets, alleging that "his references to a Member of Congress…is an idiot, scumbag, socialist, pure evil, unintelligent, imbecile, POS and criminal."  (*See* Doc. 30, p. 1-2).

in opposition are improper hyperbole which are again designed to "cancel" Dr. Manco's Constitutional rights before this Court, are without merit and are inconsistent with the standard of review at this juncture.

Plaintiff's Motion for Leave should be granted.

## II.   <u>ARGUMENT</u>

### A.  Legal Standard

The legal standard to file a Motion to Amend is set forth in Federal Rule of Civil Procedure 15, which states in relevant part:

> (a) Amendments Before Trial.
>
> (1) Amending as a Matter of Course. A party may amend its pleading once as a matter of course within:
>
> (A) 21 days after serving it, or
>
> (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
>
> (2) Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.
>
> (3) Time to Respond. Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later.

It is axiomatic, and universally recognized throughout the United States, that Federal Rule of Civil Procedure 15 shall be liberally construed, encouraged and favored, where no prejudice or disadvantage was suffered by opposing side. *McDowall v. Orr Felt & Blanket Co.*, 146 F.2d 136, 1944 U.S. App. LEXIS 2261 (6th Cir. 1944); *Blair v. United States*, 9 Lab. Cas. (CCH) ¶ 2533, 147 F.2d 840, 9 Lab. Cas. (CCH) P62533, 1945 U.S. App. LEXIS 3408 (8th Cir.), modified, 10

2

Lab. Cas. (CCH) ¶ 2750, 150 F.2d 676, 10 Lab. Cas. (CCH) P62750, 1945 U.S. App. LEXIS 2832 (8th Cir. 1945).

> Leave to amend pleadings…is generally at the discretion of the trial court, *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962), *Zenith Radio Corporation v. Hazeltine Research, Inc.*, 401 U.S. 321, 330, 91 S. Ct. 795, 802, 28 L. Ed. 2d 77 (1971), ***and "(courts) have shown a strong liberality … in allowing amendments under Rule*** 15(a)," 3 Moore's Federal Practice P 15.08(2) at 15-59 (2d ed. 1980), (footnote omitted), which specifically states that leave to amend "shall be freely given when justice so requires."

*Heyl & Patterson International, Inc. v. F. D. Rich Housing, Inc.*, 663 F.2d 419, 425, 1981 U.S. App. LEXIS 16761, *12-13, 32 Fed. R. Serv. 2d (Callaghan) 1305 (emphasis added)

One factor of any motion to amend is prejudice to the non-moving party. *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413-14 (3d Cir. 1993). The test is whether the amendment would ***unfairly prejudice*** the non-moving party. *See Phoenix Technologies, Inc. v. TRW*, 834 F. Supp. 148 (E.D. Pa. 1993); *Bryn Mawr Hospital v. Coatesville Electric Supply Co*., 776 F. Supp. 181 (E.D. Pa. 1991) (court should refuse to allow amendment only if opposing party can show that it was unfairly disadvantaged or deprived of opportunity to present facts or evidence). Indeed, in *Adams v. Gould*, 739 F. 2d 858 (3d Cir. 1984), the Third Circuit held that the district court abused its discretion in denying leave to amend after summary judgment had been granted against plaintiff on an alternative theory of liability where no showing of prejudice, undue delay or bad faith was made.

Generally, leave to amend pleadings is freely given in the interest of justice, however, leave to amend should not be granted when it would cause undue delay, was brought in bad faith or as a dilatory tactic, would cause prejudice or when amendment would be futile. *Pharmaceutical Sales and Consulting Corp. v. J.W.S. Delavau Co. Inc.*, 106 F. Supp. 2d 761, 764 (D.N.J. 2000) (citation omitted). In disposing of Opposing Defendants' objections, *infra*, it is abundantly clear that

Opposing Defendants' grounds for objection do not exist, that that there is no undue delay, no bad faith, no dilatory motive, no prejudice, and Dr. Manco's claims are not futile.

### Plaintiff's Claims Against Opposing Defendants Are Not Futile

Opposing Defendants predicate their objections on assertions that Dr. Manco's claims are "futile". When assessing the "futility" of a proposed amended, courts are to apply the same standard used to decide whether to grant a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). As set forth by then, Judge Alito:

> A motion to dismiss pursuant to Rule 12(b)(6) may be granted only if, accepting all ***well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff***, plaintiff is not entitled to relief. *Bartholomew v. Fischl*, 782 F.2d 1148, 1152 (3d Cir. 1986). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974). (emphasis added)

*Id* at 1420.

In turning to the facts at Bar, and viewing them in a light most favorable to Dr. Manco, ***all well plead facts in Plaintiff's Amended Complaint are deemed admitted for purposes of determining whether they are futile***, i.e., the Rule 12(b)(6) standard. Likewise, Opposing Defendants attempt to invite this Court to look beyond the Amended Complaint, editorialize and interject their version of the facts, all of which is improper and should be disregarded. Indeed, Opposing Defendants, by their arguments, are inviting this Court to be distracted by Opposing Defendants' ineffectual hyperbole, short circuit the pleadings and discovery, and move this Court to their version of the facts in essentially moving for Summary Judgment. This is improper.

1. **<u>Intentional Infliction of Emotional Distress "IIED"</u>**

Under Pennsylvania law, in order to sustain a claim for an IIED claim, a plaintiff must prove, "(1) the conduct [of the defendant] must be extreme and outrageous; (2) it must be intentional and reckless; (3) it must cause emotional distress; [and] (4) that distress must be severe." *Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir. 1979) (in referencing the Restatement (Second) of Torts § 46 as the basis for establishing an IIED claim under Pennsylvania law).  Under the Restatement (Second) of Torts § 46, liability can only be found, "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Id. at 1274 (citing Restatement (Second) of Torts § 46, cmt. d). "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" *Kazatsky v. King David Memorial Park*, 515 Pa. 183, 191, 527 A.2d 988, 991, 1987 Pa. LEXIS 734, *12-13. "The term "outrageous" is neither value-free nor exacting. It does not objectively describe an act or series of acts; rather, it represents an evaluation of behavior. The concept thus fails to provide clear guidance either to those whose conduct it purports to regulate, or to those who must evaluate that conduct." *Id* at 195.

In *Chuy*, the Third Circuit Court of Appeals affirmed the jury's IIED award to the plaintiff. Id. at 1270.  Plaintiff was a former football player for the Philadelphia Eagles who was misdiagnosed with a potentially fatal medical condition. *Id*. at 1269-70.  Plaintiff's IIED claim centered around the Eagles team physician's single statement to the Philadelphia Bulletin which discussed plaintiff's purported condition and how the condition would affect plaintiff moving

forward. *Id*. at 1273.  After reading the Eagles team physician's statement after the story was picked up nationally, plaintiff suffered from emotional disturbances in his day-to-day life, which continued even after he was informed that he did not have the medical condition at issue. *Id*. at 1270.

The *Chuy* Court affirmed the decision, holding, in part, when accepting the plaintiff's version of events as true, that the statements made by the Eagles team physician to the Philadelphia Bulletin constituted "intolerable professional conduct" due to the physician knowing the statement he gave was not true. *Id*. at 1274.

In turning to the facts of the case at Bar, *Chuy* vitiates many of Opposing Defendants' objections. Indeed, *Chuy* involved a single statement. Thus, Opposing Defendants' reliance upon the number tweets and statements referenced in the Amended Complaint, as being insufficient to sustain a claim for IIED, is misplaced. The *Chuy* plaintiff was not present when the Eagles team physician made the statement. Thus, Opposing Defendants' argument regarding Dr. Manco's lack of physical presence also fails. *Chuy* involved a statement where plaintiff was misdiagnosed with a potentially fatal medical condition.  Akin to a fatal medical condition, and despite St. Joseph's outside investigator concluding that "there [was] no evidence" of racial bias in his classroom[2] towards Colbert nor towards any other students, Dr. Manco was publicly denounced and branded a racist, and lost his livelihood by joint conduct of all Defendants as alleged with specificity in Plaintiff's Amended Complaint. Indeed, being branded as a racist and having his professional career "cancelled" by all Defendants, as articulated in Plaintiff's Amended Complaint, is "outrageous" as defined by *Kazatsky* and contemporary norms. To suggest that Plaintiff's

---

[2] See ¶ 69 of the Amended Complaint

Amended Complaint fails to plead "outrageous" conduct[3], as defined by *Kazatsky,* is to ignore that

warning of *Kazatsky* that "outrageous" is "neither value-free nor exacting. It does not objectively

describe an act or series of acts; rather, it represents an evaluation of behavior." *Id.* at 195.

**Quasi-Judicial Immunity**

Opposing Defendants[4] assertions that their conduct, as alleged in Plaintiff's Amended

Complaint, falls within quasi judicial privilege is absurd. Opposing Defendants advance the

argument that these former students of Saint Joseph's University ("SJU"), who never complained

of Dr. Manco until they first saw Dr. Manco's tweet years after graduation, and who themselves

conspired to "cancel" Plaintiff through a systemic process, motivated by express malice in calling

him racist, are now cloaked in immunity is misplaced. In *Overall v. Univ. of Pa.*, 412 F.3d 492,

(2005), then Judge Alito explained quasi-judicial privilege: "Pennsylvania cases finding ***quasi-***

***judicial privilege consistently involve proceedings before federal, state, or local governmental***

***bodies, or proceedings held pursuant to a statute or administrative regulation.*** " *Id* at 497

(emphasis added)

In reversing the District Court for improperly providing quasi-judicial privilege to any

proceeding that applies facts to law the Third Circuit further stated in *Overall:*

> The District Court misapprehended the essence of quasi-judicial
> proceedings. While "applying law to facts" is undeniably an
> attribute of such proceedings, our research reveals that under
> ***Pennsylvania law government involvement is also a necessary***
> ***condition*** for according quasi-judicial status to grievance
> procedures.

---

[3] See allegations within Plaintiff's Amended Complaint at ¶¶ 91, 114, 115, 122, 123, 213, 215, 216 and 217

[4] By citing the Memorandum opinion of *Fogel v. University of the Arts* 2019 U.S. Dist. LEXIS 51763 of Judge
Kearney. Notably, Judge Kearney later authored the Memorandum Opinion in *Ralston v. Garabeedian*, NO. 19-1539
(2021) and cited *Overall* with approval for the proposition that "Our Court of Appeals held 'government involvement'
is 'a necessary condition for according quasi-judicial status to grievance procedures' under Pennsylvania law" *Id* at
16.

We have not found a single Pennsylvania case according quasi-judicial status to entirely private hearings. Rather, ***Pennsylvania cases finding quasi-judicial privilege consistently involve proceedings before federal, state, or local governmental bodies, or proceedings held pursuant to a statute or administrative regulation*** ....

Secondary sources referenced in Pennsylvania quasi-judicial privilege cases bolster this conclusion. Every case cited in the leading torts treatise involves a government entity of some sort. The Restatement (Second) of Torts explains that quasi-judicial privilege should be extended to any person acting as a judge of a court, whether of general or limited jurisdiction. It is also applicable to any other official, judicial or otherwise, who performs a judicial function, such, for example, as a master in chancery, a referee in bankruptcy, a member of a military tribunal or the governor of a State of the United States engaged in an extradition hearing.

Restatement (Second) of Torts § 585. ***Each example in this passage involves a government actor.*** The Restatement goes on to discuss other "governmental agencies" that sometimes perform quasi-judicial functions, such as "public utility commissions and utility boards." *Id.* It concludes that "it is immaterial whether the body of which the judicial officer is a member is created by the constitution or by statute." *Id.* Implicit in this rule is the assumption that ***the "judicial officer" must be a public offic***ial.

Unlike all of the cases cited above, the present case involves an entirely private grievance procedure. No state or federal statute authorized it, and no public officials presided over it. Nor was it the product of a collective bargaining agreement. Furthermore, the defendants could not point to *any* case, in Pennsylvania or elsewhere, that involved an entirely private proceeding akin to the one at issue here.

Sound reasons exist for this public-private distinction. Government hearings typically involve basic procedural safeguards that may be lacking in private proceedings. For example, the Penn grievance procedure at issue here did not require sworn testimony. The volunteer faculty members who presided over the hearing lacked the power to make any binding judgment or enforce any disciplinary measures; they could only make recommendations. And of particular relevance to this case, no one kept a transcript of what was

said during the hearing, so there is no record of exactly what Dr. Smith said when he allegedly defamed Dr. Overall.

Pennsylvania of course is free to set the scope of its quasi-judicial privilege as it wishes, but we have found absolutely no support for the argument advanced in this case by the University of Pennsylvania. We agree with the Restatement that "the fact that an official or board is required to find facts as a basis for its action does not of itself make the function of the official or board judicial," and hold that the District Court erred in deeming Penn's procedure quasi-judicial. Restatement (Second) of Torts, § 585 cmt. b. We therefore reverse the entry of summary judgment in favor of Penn on Dr. Overall's defamation claim and remand for further proceedings.

*Overall v. Univ. of Pa.*, 412 F.3d 492, 497-498, (2005)

In turning to the facts at Bar, nothing about the conspiracy to publicly defame Dr. Manco and "cancel" him, as alleged in Plaintiff's Amended Complaint, falls within the ambit of this putative quasi-judicial immunity. Objecting Defendants' conduct, and the process by which they "cancelled" Plaintiff was not akin, or reasonably related to a proceeding tantamount to judicial and/or quasi-judicial proceeding. Assuming, *arguendo*, this Court may potentially consider Objecting Defendants to part of quasi-judicial proceedings, such an argument would, nevertheless, fail as their conduct could not reasonably be construed to contemplate quasi-judicial proceedings because "[t]he Pennsylvania Supreme Court applies the judicial privilege to communications made in anticipation of a quasi-judicial proceeding." *Ralston* at 16.

## 2. **Tortious Interference**

Objecting Defendants' proposed Order seeks to strike Dr. Manco's claims for tortious interference, but they fail to raise it in their brief. Thus, Objecting Defendants' argument is waived. *See generally*, 592 F. Supp. 562 (1984). Notwithstanding, Plaintiff herein incorporates Plaintiff's Reply to Defendant Susan Liebell's Opposition for Leave of Court to File an Amended Complaint as thought the same were set forth herein by reference. Plaintiff further states as follows.

9

To prove tortious interference with an existing or prospective contract under Pennsylvania law, Plaintiff must prove four elements: (1) the existence of a contractual relationship or prospective contractual relationship between the plaintiff and another party; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship or preventing the relationship from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage as a result of defendant's conduct. See, *Phillips v. Selig*, 2008 PA Super 244, 959 A.2d 420, 428-29 (Pa. Super. Ct. 2008); see also Restatement (Second) of Torts, § 766-766B (1979). *BP Envtl. Servs. v. Republic Servs.*, 946 F. Supp. 2d 402, 407, 2013 U.S. Dist. LEXIS 71536, *7-8, 2013 WL 2182740.  In turning the facts of the case at Bar, the Amended Complaint is replete with facts which support the claim of tortious interference against Opposing Defendants.

### III.   Conclusion

For the foregoing reasons, Opposing Defendants' objections to Dr. Manco's Amended Complaint are without merit and, consequently, Plaintiff's Motion for Leave should be granted.

ZARWIN, BAUM, DeVITO,
KAPLAN, SCHAER & TODDY, P.C.


/s/ Joseph M. Toddy
Joseph M. Toddy, Esq.
2005 Market Street, 16th Floor
Philadelphia, PA  19103
215.569.2800; Fax  215.569.1606
Attorneys for Plaintiff
Dated: June 14, 2022                    jmtoddy@zarwin.com

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREGORY V. MANCO, Ph.D., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 5:22-CV-00285 |
| | : | |
| ST. JOSEPH'S UNIVERSITY, | : | |
| HADASSAH COLBERT, KIERNAN | : | |
| LOUE, LYNLY CARMAN, DR. SUSAN | : | |
| LIEBELL, KARLEIGH LOPEZ, ERIN | : | |
| FAHEY | : | |
| | : | |
| Defendants. | : | |

I, Joseph M. Toddy, Esq. hereby certify that on, I made this document available for viewing

by all registered users of this Court's ECF system, including:

Leslie Miller Greenspan, Esq.
Tucker Law Group
1801 Market Street, Suite 2500
Philadelphia, PA 19103
Attorney for Defendants, St. Joseph's University

Deniz Uzel Reilly, Esq.
Fisher & Phillips LLP
100 N. 18th Street, 12th Floor
Philadelphia, PA 19103
Attorney for Defendants, Hadassah Colbert, Kiernan Loue, Karleigh Lopez, Erin Fahey

Kristen Lizzano, Esq.
March, Hurwitz & DeMarco
1100 North Providence Road
Media, PA 19063
Attorney for Defendant, Lynly Carman

Robert Drake, Esq.
Drake Speciale LLC
221 Chestnut Street, Suite 200
Philadelphia, PA 19106
Attorney for Defendant, Dr. Susan Liebell

ZARWIN, BAUM, DeVITO,
KAPLAN, SCHAER & TODDY, P.C.

/s/ Joseph M. Toddy
Joseph M. Toddy, Esq.
2005 Market Street, 16th Floor
Philadelphia, PA  19103
215.569.2800; Fax  215.569.1606
Attorneys for Plaintiff
jmtoddy@zarwin.com

Dated:  June 14, 2022