## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

GREGORY V. MANCO, Ph.D.,          ;
             Plaintiff,        ;
        v.            :  CIVIL ACTION NO. 5:22-CV-00285
                       ;
ST. JOSEPH'S UNIVERSITY, ET AL  ;
            Defendants    ;

## PLAINTIFF'S REPLY TO DEFENDANT, SUSAN LIEBELL'S OPPOSITION FOR LEAVE OF COURT TO FILE AN AMENDED COMPLAINT

### I.    INTRODUCTION

Plaintiff, Dr. Gregory Manco ("Dr. Manco" or "Plaintiff") has requested leave pursuant to Rule 15(a) of the Federal Rules of Civil Procedure to file an Amended Complaint. The instant opposition was filed by Defendant Susan Liebell ("Liebell"). Liebell filed an opposition to Plaintiff's Amended Complaint seeking to have this Court to preclude Plaintiff's claims against Liebell for Intentional Infliction of Emotional Distress ("IIED") and Tortious Interference With Contractual Relations. In doing so, Liebell, *inter alia*, improperly supports her position with allegations of additional, irrelevant and ineffectual putative facts seeded into her response[1], all of which exceeds the scope of Dr. Manco's Amended Complaint, as opposed to the allegations within the Amended Complaint. As set forth below, Liebell's assertions in opposition are ineffectual, improper hyperbole which are designed to "cancel" Dr. Manco's Constitutional rights before this Court, and are without merit and improper at this juncture.

Plaintiff's Motion for Leave should be granted.

---

[1] For example, Liebell scrutinized anonymous (Twitter name "South Jersey Giants") tweets and fixated on criticizing Dr. Manco's Constitutionally protected speech on a select few tweets. In her opposition, Liebell ineffectually rambles-on by criticizing Dr. Manco's Constitutionally protected speech by improperly interjecting her ideological dogma in criticizing Dr. Manco's "social media notoriety by publicly posing rude, personally provocative social media posts that are replete with name-calling, mudslinging and insult laden references….[and that] Plaintiff is a self-appointed culture warrior." (*See*, Doc. 32, p.1)

II.   **ARGUMENT**

A.  **Legal Standard**

The legal standard to file a Motion to Amend is set forth in Federal Rule of Civil Procedure 15, which states in relevant part:

(a) Amendments Before Trial.

(1) Amending as a Matter of Course. A party may amend its pleading once as a matter of course within:

(A) 21 days after serving it, or

(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

(2) Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

(3) Time to Respond. Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later.

It is axiomatic, and universally recognized throughout the United States, that Federal Rule of Civil Procedure 15 shall be liberally construed, encouraged and favored, where no prejudice or disadvantage was suffered by opposing side. *McDowall v. Orr Felt & Blanket Co.*, 146 F.2d 136, 1944 U.S. App. LEXIS 2261 (6th Cir. 1944); *Blair v. United States*, 9 Lab. Cas. (CCH) ¶ 2533, 147 F.2d 840, 9 Lab. Cas. (CCH) P62533, 1945 U.S. App. LEXIS 3408 (8th Cir.), modified, 10 Lab. Cas. (CCH) ¶ 2750, 150 F.2d 676, 10 Lab. Cas. (CCH) P62750, 1945 U.S. App. LEXIS 2832 (8th Cir. 1945).

> Leave to amend pleadings…is generally at the discretion of the trial court, *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962), *Zenith Radio Corporation v. Hazeltine Research, Inc.*, 401 U.S. 321, 330, 91 S. Ct. 795, 802, 28 L. Ed. 2d 77 (1971), ***and "(courts) have shown a strong liberality … in allowing amendments under Rule*** 15(a)," 3 Moore's Federal Practice P 15.08(2) at 15-59 (2d ed. 1980), (footnote omitted), which specifically states that leave to amend "shall be freely given when justice so requires."

*Heyl & Patterson International, Inc. v. F. D. Rich Housing, Inc.*, 663 F.2d 419, 425, 1981 U.S. App. LEXIS 16761, *12-13, 32 Fed. R. Serv. 2d (Callaghan) 1305 (emphasis added)

One factor of any motion to amend is prejudice to the non-moving party. *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413-14 (3d Cir. 1993). The test is whether the amendment would ***unfairly prejudice*** the non-moving party. *See Phoenix Technologies, Inc. v. TRW*, 834 F. Supp. 148 (E.D. Pa. 1993); *Bryn Mawr Hospital v. Coatesville Electric Supply Co*., 776 F. Supp. 181 (E.D. Pa. 1991) (court should refuse to allow amendment only if opposing party can show that it was unfairly disadvantaged or deprived of opportunity to present facts or evidence). Indeed, in *Adams v. Gould*, 739 F. 2d 858 (3d Cir. 1984), the Third Circuit held that the district court abused its discretion in denying leave to amend after summary judgment had been granted against plaintiff on an alternative theory of liability where no showing of prejudice, undue delay or bad faith was made.

Generally, leave to amend pleadings is freely given in the interest of justice, however, leave to amend should not be granted when it would cause undue delay, was brought in bad faith or as a dilatory tactic, would cause prejudice or when amendment would be futile. *Pharmaceutical Sales and Consulting Corp. v. J.W.S. Delavau Co. Inc.*, 106 F. Supp. 2d 761, 764 (D.N.J. 2000) (citation omitted). In disposing of Liebell's objections, *infra*, it is abundantly

clear that Liebell's grounds for objection do not exist, that that there is no undue delay, no bad

faith, no dilatory motive, no prejudice, and Dr. Manco's claims are not futile.

<u>**Plaintiff's Claims Against Liebell Are Not Futile**</u>

Liebell predicates her objections on assertions that Dr. Manco's claims are "futile".

When assessing the "futility" of a proposed amended, courts are to apply the same standard used

to decide whether to grant a motion to dismiss pursuant to Federal Rule of Civil Procedure

12(b)(6). As set forth by then, Judge Alito:

> A motion to dismiss pursuant to Rule 12(b)(6) may be granted only
> if, accepting all ***well pleaded allegations in the complaint as true,
> and viewing them in the light most favorable to plaintiff***, plaintiff
> is not entitled to relief. *Bartholomew v. Fischl*, 782 F.2d 1148,
> 1152 (3d Cir. 1986). "The issue is not whether a plaintiff will
> ultimately prevail but whether the claimant is entitled to offer
> evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232,
> 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974). (emphasis added)

Id at 1420.

In turning to the facts at Bar, and viewing them in a light most favorable to Dr. Manco,

***all well plead facts in Plaintiff's Amended Complaint are deemed admitted for purposes of***

***determining whether they are futile***, i.e., the Rule 12(b)(6) standard. Likewise, Liebell's

attempts to invite this Court to look beyond the Amended Complaint, editorialize and interject

her version of the facts is improper and should be disregarded. Indeed, Liebell, by her argument,

is inviting this Court to be distracted by Liebell's ineffectual hyperbole, short circuit the

pleadings and discovery, and move this Court to her version of the facts in essentially moving for

Summary Judgment. This is improper.

1. **Intentional Infliction of Emotional Distress "IIED"**

Under Pennsylvania law, in order to sustain a claim for an IIED claim, a plaintiff must prove, "(1) the conduct [of the defendant] must be extreme and outrageous; (2) it must be intentional and reckless; (3) it must cause emotional distress; [and] (4) that distress must be severe." *Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir. 1979) (in referencing Restatement (Second) of Torts § 46 as the basis for establishing an IIED claim under Pennsylvania law. Under the Restatement (Second) of Torts § 46, liability can only be found, "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. at 1274 (citing Restatement (Second) of Torts § 46, cmt. d). "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" *Kazatsky v. King David Memorial Park*, 515 Pa. 183, 191, 527 A.2d 988, 991, 1987 Pa. LEXIS 734, *12-13. "The term "outrageous" is neither value-free nor exacting. It does not objectively describe an act or series of acts; rather, it represents an evaluation of behavior. The concept thus fails to provide clear guidance either to those whose conduct it purports to regulate, or to those who must evaluate that conduct." *Id* at 195.

In *Chuy*, the Third Circuit Court of Appeals affirmed the jury's IIED award to the plaintiff. Id. at 1270. Plaintiff was a former football player for the Philadelphia Eagles who was misdiagnosed with a potentially fatal medical condition. *Id*. at 1269-70. Plaintiff's IIED claim centered around the Eagles team physician's single statement to the Philadelphia Bulletin which discussed plaintiff's purported condition and how the condition would affect plaintiff moving forward. *Id*. at 1273. After reading the Eagles team physician's statement after the story was

picked up nationally, plaintiff suffered from emotional disturbances in his day-to-day life, which continued even after he was informed that he did not have the medical condition at issue. *Id*. at 1270.

The *Chuy* Court affirmed the decision, holding, in part, when accepting the plaintiff's version of events as true, that the statements made by the Eagles team physician to the Philadelphia Bulletin constituted "intolerable professional conduct" due to the physician knowing the statement he gave was not true. *Id*. at 1274.

In turning to the facts of the case at Bar, *Chuy* vitiates many of Liebell's objections. Indeed, *Chuy* involved a single statement. Thus, Liebell's reliance upon the number tweets and statements referenced in the Amended Complaint, as being insufficient to sustain a claim for IIED, is misplaced. The *Chuy* plaintiff was not present when the Eagles team physician made the statement. Thus, Liebell's argument regarding Dr. Manco's lack of physical presence also fails. *Chuy* involved a statement where plaintiff was misdiagnosed with a potentially fatal medical condition. Akin to a fatal medical condition, and despite St. Joseph's outside investigator concluding that "there [was] no evidence" of racial bias in his classroom[2] towards Colbert nor towards any other students, Dr. Manco was publicly denounced and branded a racist, and lost his livelihood by joint conduct of all Defendants as alleged with specificity in Plaintiff's Amended Complaint. Indeed, being branded as a racist and having his professional career "cancelled" by all Defendants, as articulated in Plaintiff's Amended Complaint, is "outrageous" as defined by *Kazatsky* and contemporary norms. To suggest that Plaintiff's Amended Complaint fails to plead "outrageous" conduct[3], as defined by *Kazatsky,* is to ignore that warning of *Kazatsky* that

---

[2] See ¶ 69 of the Amended Complaint

[3] See allegations within Plaintiff's Amended Complaint at ¶¶ 91, 114, 115, 122, 123, 213, 215, 216 and 217

"outrageous" is "neither value-free nor exacting. It does not objectively describe an act or series of acts; rather, it represents an evaluation of behavior." *Id.* at 195.

### 2. Tortious Interference

To prove tortious interference with an existing or prospective contract under Pennsylvania law, Plaintiff must prove four elements: (1) the existence of a contractual relationship or prospective contractual relationship between the plaintiff and another party; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship or preventing the relationship from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage as a result of defendant's conduct. See, *Phillips v. Selig*, 2008 PA Super 244, 959 A.2d 420, 428-29 (Pa. Super. Ct. 2008); see also Restatement (Second) of Torts, § 766-766B (1979). *BP Envtl. Servs. v. Republic Servs.*, 946 F. Supp. 2d 402, 407, 2013 U.S. Dist. LEXIS 71536, *7-8, 2013 WL 2182740.

Liebell erroneously asserts that Dr. Manco's Amended Complaint "is completely devoid of even a hint of any factual assertions supporting a claim"[4] against her for tortious interference. Liebell's argument is misplaced.

In turning the facts of the case at Bar, the Amended Complaint is replete with facts which support the claim of tortious interference against Liebell, and how their joint and several conduct was the proximate cause of Dr. Manco's loss of employment.  The Amended Complaint alleges (1) the existence of a contractual relationship or prospective contractual relationship between the plaintiff and another party; (2) an intent on the part of Defendants to harm Dr. Manco by interfering with that contractual relationship or preventing the relationship from occurring; (3)

---

[4] See Document 32, p. 13

7

the absence of privilege or justification on the part of Defendants; and (4) the occasioning of

actual damage as a result of defendant's Defendants' conduct. As specifically plead:

¶ 91 of the Amended Complaint where it is alleged:

Through the period described above, Colbert, Lopez, Carman, Loue, Fahey, and Dr. Liebell all conspired and, in fact, communicated false statements about Dr. Manco in an effort to ***destroy his professional career***, his reputation in the community, and cause him personal humiliation, mental anguish and suffering. (emphasis added)

¶ 114 of the Amended Complaint where it is alleged:

Additionally, after Dr. Manco was cleared of any wrongdoing, Dr. Liebell tweeted that Dr. Manco was guilty of professional misconduct, specifically that he does not treat his students with equal respect.

¶ 115 of the Amended Complaint where it is alleged:

Dr. Liebell responded that due to privacy issues, other alumni, students, and faculty did not know these supposed facts about Dr. Manco

¶ 122 of the Amended Complaint where it is alleged:

Colbert, Loue, Carman, Fahey, McGrath and Dr. Liebell's statements were malicious, defamatory, and false.

¶ 214 of the Amended Complaint where it is alleged:

During the existence of the contractual relationship, Colbert, Loue, Carman, Liebell, Lopez, Fahey and McGrath engaged in activities, as described above, to have Dr. Manco suspended and his contract terminated.

¶ 215 of the Amended Complaint where it is alleged:

Colbert, Loue, Carman, Liebell, Lopez, Fahey and McGrath engaged in this activity with the specific intent to harm Dr. Manco's relationship with St. Joseph's.

¶ 216 of the Amended Complaint where it is alleged:

8

Colbert, Loue, Carman, Liebell, Lopez, Fahey and McGrath were neither privileged nor justified in acting in this manner.

¶ 217 of the Amended Complaint where it is alleged:

As a direct and proximate result of Colbert, Loue, Carman, Liebell, Lopez, Fahey and McGrath's actions, St. Joseph's suspended Dr. Manco and elected not to renew his contract.

Thus, Dr. Manco's Amended Complaint properly asserts a claim for tortious interference against Liebell.

**III.    Conclusion**

For the foregoing reasons, Liebell's objections to Dr. Manco's Amended Complaint are without merit and, consequently, Plaintiff's Motion for Leave should be granted.

ZARWIN, BAUM, DeVITO,
KAPLAN, SCHAER & TODDY, P.C.

/s/ Joseph M. Toddy
Joseph M. Toddy, Esq.
2005 Market Street, 16th Floor
Philadelphia, PA  19103
215.569.2800; Fax  215.569.1606
Attorneys for Plaintiff
jmtoddy@zarwin.com

Dated:  June 14, 2022

9

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREGORY V. MANCO, Ph.D., : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. 5:22-CV-00285 |
| : | |
| ST. JOSEPH'S UNIVERSITY, : | |
| HADASSAH COLBERT, KIERNAN : | |
| LOUE, LYNLY CARMAN, DR. SUSAN : | |
| LIEBELL, KARLEIGH LOPEZ, ERIN : | |
| FAHEY : | |
| : | |
| Defendants. : | |

I, Joseph M. Toddy, Esq. hereby certify that on, I made this document available for viewing

by all registered users of this Court's ECF system, including:

Leslie Miller Greenspan, Esq.
Tucker Law Group
1801 Market Street, Suite 2500
Philadelphia, PA 19103
Attorney for Defendants, St. Joseph's University

Deniz Uzel Reilly, Esq.
Fisher & Phillips LLP
100 N. 18th Street, 12th Floor
Philadelphia, PA 19103
Attorney for Defendants, Hadassah Colbert, Kiernan Loue, Karleigh Lopez, Erin Fahey

Kristen Lizzano, Esq.
March, Hurwitz & DeMarco
1100 North Providence Road
Media, PA 19063
Attorney for Defendant, Lynly Carman

Robert Drake, Esq.
Drake Speciale LLC
221 Chestnut Street, Suite 200
Philadelphia, PA 19106
Attorney for Defendant, Dr. Susan Liebell

ZARWIN, BAUM, DeVITO,
KAPLAN, SCHAER & TODDY, P.C.

/s/ Joseph M. Toddy
Joseph M. Toddy, Esq.
2005 Market Street, 16th Floor
Philadelphia, PA  19103
215.569.2800; Fax  215.569.1606
Attorneys for Plaintiff
jmtoddy@zarwin.com

Dated:  June 14, 2022