**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GREGORY V. MANCO, Ph.D., | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | CIVIL ACTION NO. 5:22-CV-00285 |
| ST. JOSEPH'S UNIVERSITY, ET AL. | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF**
**DEFENDANT HADASSAH COLBERT TO DISMISS PLAINTIFF'S COMPLAINT**
**AS TO DEFENDANT HADASSAH COLBERT**

## I.      INTRODUCTION

Plaintiff Gregory V. Manco, Ph.D. ("Plaintiff") is a former Professor of Mathematics at St. Joseph's University ("SJU"). At its core, the Second Amended Complaint ("Complaint") attempts to harass and blame several former students and colleagues for SJU's decision not to renew Plaintiff's contract. According to Plaintiff, after reviewing Plaintiff's public Twitter posts, Defendant Hadassah Colbert ("Colbert") submitted a report to SJU in January 2021 based on Plaintiff's racist and transphobic tweets and the fact that she experienced discrimination and a hostile learning environment in his classroom. Thereafter, in February 2021, she posted on social media about Plaintiff and her opinions on some of his tweets. Then, after Colbert was led to believe that Plaintiff's contract was not renewed, she posted one Instagram story about Plaintiff in August 2021 and engaged in a single discussion with Dr. Liebell. For engaging in these actions, Plaintiff alleges that Colbert committed several torts, including defamation, false light, tortious interference with contract, civil conspiracy, and intention infliction of emotional distress ("IIED"). However, Plaintiff fails to set forth sufficient facts to support each of the claims asserted because:

1. Colbert's submission of a report to SJU enjoys absolute privilege and cannot serve as a basis for any of the causes of action.

2. As to Count II (defamation), Colbert's statements lack defamatory meaning and many statements also lack application to Plaintiff.

3. As to Count VIII (false light), Plaintiff cannot premise this claim on Colbert's true statements. Further, Colbert's statements either lack publicity, are not highly offensive to a reasonable person, or are of legitimate concern to the public.

4. As to Count X (tortious interference with contract), Plaintiff fails to sufficiently plead facts demonstrating that Colbert acted to intentionally harm him or that Colbert's conduct was unjustified.

5. As to Count XI (IIED), the claim is improperly predicated on defamatory language and fails to plead extreme and outrageous conduct as to Colbert.

6. As to Count IX (civil conspiracy), Plaintiff fails to sufficiently plead an underlying cause of action. Even if Plaintiff has plead a cause of action, Plaintiff fails to allege any unlawful act, means, or purpose by Colbert or any agreement between Colbert and any person to act with a common purpose or an overt act.

Thus, the Complaint fails to state a claim against Colbert upon which relief can be granted and must be dismissed as to her, with prejudice, as no amendments can sure such issues.

## II.   FACTURAL AND PROCEDURAL BACKGROUND[1]

Plaintiff is a former Professor of Mathematics at SJU. ECF No. 51, ¶ 1 (hereinafter "Compl."). Colbert was a former student of Plaintiff's in Spring 2017. *Id.* at ¶ 47. Without identifying which facts are linked to which causes of action, Plaintiff raises claims of defamation, false light, civil conspiracy, tortious interference with contract, and IIED as to Colbert. *Id.* at ¶¶ 171-77, 207-31. The scattered, nonchronological, and often irrelevant factual allegations against Colbert are grouped into four categories: Colbert's (1) January 2021 report to SJU; (2) February 2021 social media posts; (3) August 2021 Instagram story; and (4) Discussion with Dr. Liebell.

### A.   Colbert's January 2021 Report to SJU

Plaintiff makes the following relevant allegations about Colbert's report to SJU:

49.   On January 22, 2021, Colbert submitted an email to [the] Associate Provost for Diversity, Equity, and Inclusion, [the] Dean of the College of Arts and Sciences,

---

[1] Colbert sets forth the relevant facts as alleged in the Complaint for purposes of this Motion only and reserves the right to respond to and deny all facts and allegations if this Motion is denied.

and Dr. Tapp, wherein she labeled [Plaintiff] as racist and transphobic.

50.     Colbert included selected screenshots of tweets of [Plaintiff], . . . adding for the first time that [Plaintiff] discriminated against her in class and fostered a hostile learning environment four (4) years earlier. Colbert stated that [Plaintiff] should not be allowed to coach or teach students.

51.     On January 26, 2021, Colbert met with Title IX Coordinator Lexi Morrison ("Morrison"), Intake Officer . . . and . . . Human Resources. Morrison identified this meeting as the "consultation process" . . . .

52.     During this "consultation process," Morrison, . . . conspired with Colbert by providing her with advice regarding how she could strengthen her complaint, specifically by telling her to find others who would corroborate her claims or who had similar experiences and to have them reach out to her.

109.     Colbert told SJU in her January 26, 2021 "consultation process" that [Plaintiff] would not "work with her" when she requested to take her final exam late due to her head injury, all of which was a false statement of fact.  To the contrary, [Plaintiff] granted Colbert permission to make up two (2) different exams, including the final exam [and] he granted her a makeup for the final exam by allowing her to pick the date and time . . . to take the exam late[.]

*Id.* at ¶¶ 49-52, 109. These allegations will be referred to as "**Colbert's SJU Report**."

> B. Colbert's February 2021 Social Media Posts

The Complaint references social media posts from February 19, 2021 as follows:

54.     Four weeks later [after Colbert's SJU Report], on February 19, 2021, Colbert followed Morrison's advice by cherry-picking tweets from [Plaintiff's] Twitter account and then spreading screenshots of those tweets on Instagram, along with her added defamatory comments that obstructed key parts of the tweets. Colbert did this as an appeal to her followers to complain to SJU so that [Plaintiff] would lose his teaching and coaching jobs.

*Id.* at ¶ 54.  Plaintiff provides *one* example of such a post by Colbert: "On February 19, 2021, while trying to convince and instigate others to report false statements of fact about [Plaintiff], Colbert posted on her Instagram account a screenshot of a tweet of [Plaintiff] with added

commentary at the bottom." *Id.* at ¶ 105.  The image to the right is a screenshot of Plaintiff's tweet with Colbert's added commentary in black and white.  *See id.* at ¶¶ 104 (hereinafter "**Plaintiff's February 19, 2021 Instagram Post**").



> Plaintiff references the following February 21, 2021 tweets:
>
> 111.   On February 21, 2021, with bias reports still being submitted to SJU about [Plaintiff], Colbert tweeted that [Plaintiff] "[allowed] his followers to send literal death threats to college students."
>
> 117.   Also on February 21, 2021, Colbert tweeted that [Plaintiff] told a narcoleptic student that they had to sit in the back of the classroom, which if true would be a violation of law and school policy:
>
> 118.   Colbert was provided this information from Lopez, after Lopez received it from Carman . . . . Lopez then submitted the message to SJU.

*Id.* at ¶¶ 111, 117-18 ("**Colbert's February 21, 2021 Tweets**").  Plaintiff alleges that these tweets were false.  *Id.* at ¶¶ 112-13, 119.  Per Plaintiff, as a result of the actions of Colbert and others, SJU began receiving complaints about Plaintiff through its online bias reporting form.  *Id.* at ¶ 58.

C.   Colbert's August 2021 Instagram Story

On June 10, 2021, Plaintiff was informed that SJU would not renew his contract.  *Id.* at ¶ 88.  In response to an August 2021 *Philadelphia Inquirer* ("*Inquirer*") article that referenced Plaintiff's removal from his teaching and coaching positions, Colbert allegedly "reveled in her accomplishment" by posting a story to her Instagram.  *Id.* at ¶ 102.  Five images depicting Colbert's Instagram Story are included in the Complaint at pages 21-25.  *Id.* ("**Colbert's Instagram Story**").

D.   Colbert's Discussion with Dr. Liebell

The August 2021 *Inquirer* article also caused a discussion between Colbert and Dr. Liebell:

> 125.   After [Plaintiff] was cleared of any wrongdoing, Dr. Liebell tweeted that [Plaintiff] was guilty of professional misconduct, specifically that he does not treat

FP 43574255.5

his students with equal respect[.]

126.    Colbert replied to Dr. Liebell repeating the debunked falsehoods that [Plaintiff] was guilty of racism and that he had bullied a disabled student by making her sit in the corner.  Dr. Liebell responded that due to privacy issues, other alumni, students, and faculty did not know these supposed facts about [Plaintiff].




*Id.* at ¶¶ 125-26 ("**Colbert's Discussion with Dr. Liebell**").  The remaining allegations against

Colbert are conclusions without factual support.  *See* Compl. ¶¶ 5-6, 9, 42, 103, 106, 133-36, 155-

56, 158.  Plaintiff has not met the federal pleading standards for any claim asserted against Colbert,

no amendment will cure this, and dismissal, with prejudice, is appropriate.

### III.    ARGUMENT

### A.  STANDARD OF REVIEW

Colbert moves to dismiss Counts II, VIII-XI of the Complaint for "failure to state a claim

upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a

[plaintiff's] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Courts in this circuit apply the following test:

First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts . . . "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" This "plausibility" determination will be "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).  Although Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," plaintiff must present more than "bald assertions" and "legal conclusions." A plaintiff "armed with nothing more than conclusions" is not entitled to discovery. *Iqbal*, 556 U.S. at 678-79.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

## B.  COLBERT'S SJU REPORT ENJOYS AN ABSOLUTE PRIVILEGE AND CANNOT SERVE AS THE BASIS FOR ANY OF PLAINTIFF'S CLAIMS

Colbert's SJU Report was pertinent and material to SJU's investigation into Plaintiff and premised on Colbert's purported attempts to initiate a quasi-judicial proceeding against Plaintiff. Thus, it is entitled to judicial privilege and cannot serve as the basis for any of Plaintiff's claims.[2] The judicial proceeding privilege provides immunity for communications: "(1) issued as a matter

---

[2] Courts have dismissed actions where the judicial privilege applied under similar circumstances. *See e.g.*, *Ortiz v. De. River Port Auth*., No. 09-6062, 2010 WL 1994911 (E.D. Pa. May 17, 2010) (dismissing defamation claims where complaints made in the course of an internal investigation were judicially privileged); *Giusto v. Ashland Chem. Co.*, 994 F. Supp. 587, 594 (E.D. Pa. 1998) (same); *Fogel v. Univ. of the Arts*, No. 18-5137, 2019 WL 1384577, at *8 (E.D. Pa. Mar. 27, 2019) (same); *The Weiser Law Firm, P.C. v. Hartleib*, No. 19-02728, 2022 WL 970757, *33 (E.D. Pa. Mar. 31, 2022) (extending judicial privilege to false light claim); *Schatzberg v. State Farm Mut. Auto. Ins. Co.*, 877 F. Supp. 2d 232, 248 (E.D. Pa. 2012) (same); *Doe v. Garabedian*, No. 19-1539, 2019 WL 4885969, at *7 (E.D. Pa. Oct. 2, 2019) (extending judicial privilege to IIED claim) *vacated in part on other grounds*, No. 19-1539, 2020 WL 1244126 (E.D. Pa. Mar. 13, 2020); *Orbital Eng'g, Inc. v. Buchko*, No. 20-593, 2021 WL 5280927, at *21 (W.D. Pa. Nov. 12, 2021) (extending judicial privilege to tortious interference claim); *Todi v. Stursberg*, No. 01-2539, 2001 WL 1557517 (E.D. Pa. Dec. 4, 2001) (same); *Church Mut. Ins. Co. v. All. Adjustment Grp.*, 708 F. App'x 64, 71 (3d Cir. 2017) (extending judicial privilege to civil conspiracy claim).

of regular course of the proceedings; or (2) pertinent and material to the proceedings." *Bochetto v. Gibson*, 580 Pa. 245, 252 (2004). "These two factors apply equally to communications made prior to the initiation of judicial proceedings." *Schatzberg*, 877 F. Supp. 2d at 247 (citations omitted). "[T]he privilege is absolute, meaning that, where it attaches, the declarant's intent is immaterial even if the statement is false and made with malice." *Schanne v. Addis*, 121 A.3d 942, 947 (Pa. 2015). This privilege also extends to quasi-judicial proceedings. *Milliner v. Enck*, 709 A.2d 417, 419 n.1 (Pa. Super. Ct. 1998). Whether a statement deserves absolute privilege is a question of law for the court. *Pawlowski v. Smorto*, 588 A.2d 36, 41 (Pa. Super. Ct. 1991).

This Court has specifically extended this privilege to reports made to a university about misconduct by one of its professors. *See Fogel*, 2019 WL 1384577. In *Fogel*, one of the defendants, a professor from a different university, reported purported sexual misconduct by the plaintiff to the university, sparking an investigation. *Id.* at *1-*4. Ultimately, the plaintiff was terminated and brought claims for defamation against the defendant professor. *Id*. This Court dismissed the defamation claims, in part, finding them barred by Pennsylvania's judicial proceeding privilege. *Id.* at *8. Specifically, the Court found the defendant professor's statements to the university were "pertinent and material" to the subsequent investigation and conclusions, and that they initiated quasi-judicial proceedings against the plaintiff that warranted the application of absolute privilege. *Id.* In its reasoning, the Court distinguished the situation to that of *Schanne*, 121 A.3d at 949:

> Unlike *Schanne* where the plaintiff reported misconduct to her friend without any expectation of disciplinary proceedings, [the former professor] reported [plaintiff's] misconduct to his school's Title IX coordinator 'initiating' an investigation against [plaintiff]. The policy rationale explained in the supreme court's opinion in *Schanne* applies here to 'incentivize' individuals like [the former professor] to speak freely in seeking to initiate proceedings . . . .

*Fogel*, 2019 WL 1384577, at *10.

Here, Colbert's SJU Report was part of a quasi-judicial proceeding and is entitled to

judicial privilege based on *Fogel*.  Colbert's SJU Report was "pertinent and material" to SJU's investigation.  *See* Compl. ¶ 49.  In fact, Plaintiff specifically asserts that Colbert's actions were the "direct and proximate" result of further bias reports, which resulted in Plaintiff being placed on an immediate administrative leave so that SJU could investigate the "biased or discriminatory nature" of his tweets.  *Id.* at ¶¶ 58-61.  Plaintiff *repeatedly* proclaims throughout the Complaint that Colbert intended to initiate a quasi-judicial proceeding against Plaintiff.  *Id.* at ¶¶ 9, 54, 103, 141, 158.  Additionally, by making the report directly to SJU, Colbert intended to initiate a quasi-judicial proceeding against Plaintiff.  *Compare Schanne*, 121 A.3d at 949.  Like the professor from another university in *Fogel*, who was protected by the judicial privilege for initiating proceedings against the plaintiff, Colbert should be protected by the privilege for reporting Plaintiff's misconduct directly to the school, intending to initiate investigation.  "Under such a predicate, there is a colorable nexus between immunity and the privilege's underlying policy pertaining to the unencumbered resolution of claims in a judicial (or quasi-judicial) setting." *Id.* at 559-60.

The privilege should also apply to this situation because there are strong public policy reasons to allow the privilege to apply to Colbert's SJU Report.  *See Schanne v. Addis*, 898 F. Supp. 2d 751, 757 (E.D. Pa. 2012) ("When courts choose to apply the privilege, they deem the policy concerns—encouraging open communication without fear of retributive lawsuits—to weigh the right to the defamation plaintiff to seek redress.") *vacated on other grounds*, 615 Fed.Appx. 759 (3d Cir. 2015). If a student feels a professor is creating a discriminatory, unsafe, hostile, or biased environment, this sort of report must be protected and encouraged.  As outlined in *Fogel*, the absolute privilege is in place to allow individuals like Colbert to honestly report behavior they find to be concerning to allow a school to further investigate.  *Fogel*, 2019 WL 1384577 at *10.  Thus, Colbert's SJU Report is judicially privileged and cannot serve as the basis for any of

Plaintiff's claims.

### C. PLAINTIFF FAILS TO STATE A CLAIM OF DEFAMATION AS TO DEFENDANT COLBERT (COUNT II)

In an action for defamation, Plaintiff has a burden of proving: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion. *Mallory v. S&S Publishers*, 168 F. Supp. 3d 760, 767 (E.D. Pa. 2016) (citation omitted). Plaintiff has not – and cannot – set forth the first element of this claim as to any of Colbert's alleged statements, and many of which do not even apply to Plaintiff, in contravention of the third element.

#### a. Colbert's statements lack defamatory meaning and/or are not applicable to Plaintiff.

Whether a statement is capable of defamatory meaning is a question of law. *See Byars v. Sch. Dist. of Phila.*, 942 F.Supp. 2d 552, 564 (E.D. Pa. 2013). If the statements are not capable of a defamatory meaning, dismissal is appropriate. *See, e.g.*, *P&I Ins. Servs., LLC v. Risk Averse Ins., LLC*, 2022 WL 103135, *7 (E.D. Pa. Jan. 11, 2022) (citation omitted); *MacElree v. Phila. Newspapers, Inc.*, 544 Pa. 117, 124 (1996). "A statement is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. But the statement must do more than merely embarrass or annoy the plaintiff; it must provoke the kind of harm which has grievously fractured [one's] standing in the community of respectable society." *Graboff v. Colleran Firm*, 744 F.3d 128, 136 (3d Cir. 2014) (citations and quotations omitted). Offensive, distasteful, annoying, embarrassing, and insulting communications are not defamatory if they do not provoke the kind of harm that

fractures one's standing in society.  *See Emekekwue v. Offor*, 26 F. Supp. 3d 348, 359 (M.D. Pa. 2014); *Beverly Enters. v. Trump*, 182 F.3d 183, 197 (3d Cir. 1999).   "The touchstone in determining whether a statement is capable of defamatory meaning is how the statement would be interpreted by the average person to whom it is directed." *Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 479 (E.D. Pa. 2020). The statements must be viewed "in context" to determine whether they "blacken a person's reputation or expose him to public hatred, contempt, or ridicule, or to injure him in his business or profession.'" *P&I Ins. Servs.*, 2022 WL 103135, at * 7 (citations omitted).

Moreover, "[o]nly statements of fact, not expressions of opinion, can support an action for defamation."  *Pace v. Baker-White*, 432 F. Supp. 3d 495, 512 (E.D. Pa. 2020).  When determining whether a statement is fact or opinion, courts will consider whether it is "provably false."  *See Northstein v. USA Cycling*, 499 F. Supp. 3d 101, 124 (E.D. Pa. 2020).  "Whether a statement is a fact or an opinion is a question of law" for the Court.  *Pace*, 432 F. Supp. 3d at 512.

*Colbert's SJU Report*: Even if Colbert's SJU Report is not found to be privileged, the statements made within it lack defamatory meaning, and thus, cannot serve as a basis for a defamation action.  Plaintiff alleges that Colbert's SJU Report included the following statements about him: (1) he was racist and transphobic; (2) he discriminated against her and fostered a hostile learning environment in Spring 2017; (3) he should not be allowed to coach or teach students; (4) he would not "work with her" when she requested to take her final exam late due to a head injury in Spring 2017.  Compl. ¶¶ 49-50, 109-10.  Each of these statements are opinions and none rise to the level of grievously fracturing Plaintiff's standing in the community.  Insulting communications do not arise to the level of defamation if they do not provoke the kind of harm to fracture one's societal standing.  *See Smith v. Sch. Dist. of Phila.*, 112 F. Supp. 2d 417, 429 (E.D. Pa. 2000) (school district officials' alleged public statements that high school student's parent was racist and

anti-Semitic were opinions that could not support defamation). An accusation of racism is not

enough; the accusation must imply more, such as suggesting the person broke the law to act in a

racist manner. *See McCafferty v. Newsweek Media Group, Ltd.*, 955 F.3d 352 (3d Cir. 2020).

*Colbert's February 19, 2021 Instagram Post*: Colbert's February 19, 2021 Instagram Post

shares a screenshot of Plaintiff's tweet to support Colbert's opinion that Plaintiff doesn't like black

people. Compl. ¶ 105. Pennsylvania courts have held that if an opinion is joined with the facts

that led someone to form that opinion, that opinion is not actionable defamation. *See Balletta v.

Spadoni*, 47 A.3d 183, 197 (Commw. Ct. 2012); Restatement (Second) of Torts § 566 comment

(c) ("[a] simple expression of opinion based on disclosed or assumed nondefamatory facts is not

itself sufficient for an action of defamation, no matter how unjustified and unreasonable this

opinion may be or how derogatory it is . . . ."). Colbert's February 19, 2021 Instagram Post presents

exactly the situation contemplated by Pennsylvania lawmakers in defining what constitutes an

opinion. That is, Plaintiff posted his opinions and beliefs for public consumption on Twitter;

Colbert reposted Plaintiff's tweets and expressed her pure opinion about their content. Because

this post includes the facts behind Colbert's opinion, it is not defamatory as a matter of law.

*Colbert's February 21, 2021 Tweets*: On February 21, 2021, Colbert purportedly tweeted

that Plaintiff allowed his followers to "send literal death threats to college students" and that

Plaintiff "told a narcoleptic student they had to sit in the back of the classroom." Compl. ¶¶ 111,

117. Any defamation claim based on these statements fails because both statements are verifiably

true. Courts in this jurisdiction have granted motions to dismiss where a plaintiff claims that a

verifiably true statement is defamatory. *See, e.g.*, *Wang v. Univ. of Pittsburgh*, No. 20-1952, 2021

WL 6051568, at *32-*33 (W.D. Pa. Dec. 21, 2021) (dismissing defamation claims based on

"verifiably true statements"). The first tweet, that Plaintiff's followers were sending death threats,

is verifiably true.  *See* Exhibit A, comprising of a true and correct copy of a death threat received by Defendant Lopez.[3]   The second tweet is also verifiably true by simply examining the screenshots in Plaintiff's Complaint of his email exchanges with Defendant Carman:

> I need for you again to make a better effort to not fall asleep in class, again because you are right in front of me and it brings me down a little. **I understand that it may be a medical condition but if you think it can or will happen again then I'd appreciate it if you could situate yourself in the back somewhere.**"

Compl. ¶ 119 (emphasis added). Plaintiff, referencing Ms. Carman's medical condition, asked her to sit in the back of class. Thus, Colbert's statement about this interaction is also not defamatory.

*Colbert's Instagram Story:* Colbert's Instagram Story, spread among five images, included in the Complaint at Paragraph 102, cannot be read to have "grievously fractured" Plaintiff's standing in any community.  Much of the content does not even concern Plaintiff.  Accordingly, it lacks defamatory meaning, warranting dismissal of any defamation claims that rely upon it.

In Images 1 and 2, Colbert shares an August 2021 *Inquirer* article[4] about Plaintiff's contract not being renewed.  Compl. at pp. 21-22.  Colbert seemingly circles a protestor's sign that says "RE-HIRE MANCO AND FIRE THE WOKESTERS," and adds: "Oooops….Did I do that….". *Id.* at p. 21.  On the same article, Colbert underlines the word "Gregory Manco" and "I'm hollering." *Id.* at p. 22.  These are not defamatory statements about Plaintiff.

In Image 3, Colbert shares a meme stating "Stay in yo lane, bitch" and adds: "That chrome dome fucked with the wrong student and found out!" *Id.* at p. 23.  This is not a defamatory statement.  The remaining statements are criticisms directed at SJU, not Plaintiff. *Id.*

---

[3] "As a general rule, a district court considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6) 'may not consider matters extraneous to the pleadings' without converting the motion into one for summary judgment. The rule, however, has three exceptions that permit courts to consider: (1) exhibits attached to the complaint; (2) matters of public record; and/or (3) undisputedly authentic documents integral to or explicitly relied upon in the complaint." *Bartell v. Cmty. Coll. of Phila.*, No. 2:19-cv-6056, at *13 n.7 (E.D. Pa. Apr. 21, 2021) (internal citations omitted).  Exhibit A comprises of an authentic document integral to and explicitly relied upon in the complaint.

[4] *See* Exhibit B, comprising of a true and correct copy of a corrected version the *Inquirer*'s August 2021 Article, a document that is public record and explicitly relied upon in the Complaint.

In Image 4, Colbert shares a meme stating: "I'm praying for you though" and adding:

> Too many fake ass black students didn't want to help me. Called me an angry black woman thought I was doing too much. And you sided with these white supremacist so you wouldn't look a certain way. And I'm not saying this to punch down but yall look even more dumb now. See what happens when you keep your foot on their neck?

*Id.* at p. 24.  This post is not defamatory and is directed to other black students, not Plaintiff.  *Id.* The mention of "white supremacist" is an insult lodged towards SJU as an institution, not Plaintiff, and is not defamatory in this context.  *See McCafferty*, 955 F.3d at 358 (derogatory characterizations, such as "accusations of racism," without more are not defamatory).

In Image 5, Colbert shares an image of a woman and adds: "Now all the white supremacist alumni is sick and showing their asses and proving my damn point. They don't really like black people, POC, or women at SJU.  *Id.* at 25.  These statements, about SJU and its alumni, are nondefamatory accusations of racism that do not apply to Plaintiff.  Colbert further adds:

> Anyways, when you do coonery, coonery finna do you! that's the lesson to learn from today kids! And when a white MFer trying to put some Jim Crow on you, open your mouth! Bc now Gregory Manco fat head waiting in the unemployment line

*Id.*  At most, this taunting call to arms is the kind of "rhetorical hyperbole" and "vigorous epithet" that is routinely found not to be capable of defamatory meaning.  *See Greenbelt Pub. Assn. v. Bresler*, 398 U.S. 6, 14 (1970) (finding criticism of defendant's negotiation proposals as "blackmail" could not possibly be understood as accusing defendant of committing a crime, noting "even the most careless reader must have perceived that the word was no more than rhetorical hyperbole, a vigorous epithet. . . ."); *see also Redco Corp. v. CBS, Inc.*, 758 F.2d 970, 972 (3d Cir. 1985) ("It is well settled that the use of catchy phrases or hyperbole does not necessarily render statements defamatory that would otherwise be non-actionable.").

Further, the *Inquirer* article that Colbert's Instagram Story was reacting to states:

> [The protesting alumni] were particularly upset that the university removed [Plaintiff], a visiting assistant math professor and assistant baseball coach, from the classroom after his anonymous posts on social media in February against reparations for slavery and race and bias training. The university ultimately did not renew his contract, even though an investigation found there was insufficient evidence to conclude definitively that bias was shown.

Compl. at p. 22. In this context, no reasonable viewer could understand Colbert as having accused Plaintiff of literally imposing Jim Crow-era rules in his classroom. If Colbert's Instagram Story contains any factual suggestion at all about Plaintiff, it is nothing more than the possibility that Plaintiff's contract was not renewed because of his social media posts. Plaintiff's deliberate omission of *Inquirer* or any other media outlet that covered his story from this lawsuit demonstrates his understanding that such a suggestion is not defamatory. Thus, the contents of Colbert's Instagram Story cannot be understood to have any defamatory meaning towards Plaintiff.

*Colbert's Discussion with Dr. Liebell:* Colbert's Discussion with Dr. Liebell lacks defamatory meaning. As set forth in the screenshots of this discussion, Colbert shared *Inquirer*'s article about Plaintiff on Twitter, and Dr. Liebell replied to the tweet to express her frustration that the reporter had only interviewed six white male alumni for the story. Compl. ¶¶ 125-26. Colbert wrote to Dr. Liebell: "I'm just still confused that people think it was just racism, ignoring the fact that white students also reported that [Plaintiff] was a bully in the classroom and not tolerant of disabilities I.e. making a narcoleptic student sit in the corner Bc they were a 'distraction.'" *Id.*

This statement is not defamatory for several reasons. First, Colbert is expressing her *opinion* that even though SJU's investigation found insufficient evidence of bias in Plaintiff's classroom, she believes there were other students who reported Plaintiff's bias to SJU. *Id.* This alone warrants dismissal. *See, e.g., Miller v. Ctr. Cnty.*, No. 15-1754, 2016 WL 2736084 at *20 (M.D. Pa. May 11, 2016) (dismissing defamation claim premised on defendant's statement that, although a grand jury had exonerated plaintiff on a forgery claim, the defendant still believed an

14

affiant who said plaintiff had forged the document) ("He has stated he chooses to believe the affiant over the finding of the grand jury. Statements of opinion are not defamation.").  Second, the statement is true.  After expressing her confusion, Colbert stated: "white students also reported that [Plaintiff] was a bully in the classroom and not tolerant of disabilities I.e. making a narcoleptic student sit in the corner Bc they were a 'distraction.'"  Compl. ¶¶ 125-26.  This is a fact.  White students *did* report Plaintiff for bullying behavior and making a narcoleptic student sit isolated in a classroom.  Third, the statements within the statement—i.e., that Plaintiff was a bully and told a narcoleptic student to sit in the corner—are not defamatory.  *Id.* at ¶ 117.  Plaintiff being a bully is an opinion.  Further, Plaintiff *did* ask a student to sit in the back of the classroom because, according to Plaintiff, her falling asleep in class "brings [him] down."  *Id.  See also* Sec. III.C.a.3.

Thus, for each of the above reasons, Colbert's statements cannot form the basis of a claim for defamation and dismissal of Count II against Colbert with prejudice is appropriate.

### D.  PLAINTIFF FAILS TO STATE A CLAIM OF FALSE LIGHT AS TO DEFENDANT COLBERT (COUNT VIII)[5]

To state a claim for false light, Plaintiff must allege: (1) publicity; (2) given to private facts; (3) that would be highly offensive to reasonable person; and (4) are not of legitimate concern to the public.  *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987 (Pa. Super. Ct. 1997).  Defendant must also publish material that is not true with knowledge or in reckless disregard of its falsity.  *See Graboff*, 744 F.3d at 136.  Said differently, unless a plaintiff can set forth actual malice by the defendant, a claim for false light should be dismissed.  *See, e.g. McCafferty*, 955 F.3d at 360.  None of the statements attributed to Colbert sufficiently set forth facts to support a false light claim.

#### a.  Colbert's SJU Report cannot serve as grounds for a false light claim.

---

[5] The Complaint is unclear as to which of statements Plaintiff is relying upon to establish false light.  For purposes of this argument, Colbert assumes Plaintiff erroneously believes all of her statements establish the claim.

FP 43574255.5

Even if it were not privileged (which it is), Plaintiff fails to show "publicity" as to Colbert's SJU Report. In the context of false light, "publicity" requires widespread dissemination, as opposed to the mere "publication" required for defamation. *Fanelle v. Lojack Corp.*, No. 99-4292, 2000 WL 1801270, at *9 (E.D. Pa. Dec. 7, 2000). Publicity is satisfied by a showing that false information was disseminated by communicating it to the public at large, or to so many persons that the matter is substantially certain to become public knowledge. *Kane v. Chester Cty.*, 811 F. App'x 65, 72 (3d Cir. 2020) (citations omitted). Plaintiff does not plead that Colbert's SJU Report was widely disseminated. Instead, he pleads only that it was discussed with SJU personnel. Compl. ¶¶ 49-52. Courts in this jurisdiction have dismissed claims for false light based on a failure to plead this element. *See, e.g.*, *Casselli v. City of Phila.*, 54 F. Supp. 3d 368, 381 (E.D. Pa. 2014); *Maloney v. Mt. Airy #1, LLC*, No. 18-2268, 2020 WL 1082598, *13 (M.D. Pa. Mar. 4, 2020); *Harris v. St. Joseph's Univ.*, No. 13-3937, 2014 WL 1910242, *20 (E.D. Pa. May 12, 2013).

### b.  None of the statements attributed to Colbert involved "private facts."

Facts not relating to an individual's personal or private life do not constitute "private facts" because the individual has no right of privacy in them. *See Avins v. Moll*, 610 F. Supp. 308, 325 (E.D. Pa. 1984), *aff'd Avins v. Dixon*, 774 F.2d 1150 (3d Cir. 1985). The statements attributed to Colbert did not involve "private facts," and were instead focused on either Colbert's interactions with a Plaintiff when she was a student in his classroom *or* her comments on his public tweets. Courts in this jurisdiction have dismissed claims for false light based on a failure to plead this element. *See, e.g.*, *Smith*, 112 F. Supp. 2d at 434 (dismissing plaintiff's false light claims the communication addressed an issue of public concern—namely, hiring policies with respect to teachers and staff in a school). Thus, dismissal on this count is appropriate as to Colbert.

### c.  Colbert's statements are of legitimate concern to the public.

Not only were Colbert's communications not private, but they are of legitimate concern to

the public and dismissal is appropriate as to this count for this reason. *See, e.g.*, *Warkevicz v. Berwick Area Sch. Dist.*, No. 15-07922, 2016 WL 3753108, *15-*16 (M.D. Pa. July 15, 2016).[6] Pennsylvania courts have recognized that student voices in private universities deserve the same kinds of protection as student voices in public schools. *See, e.g.*, *Small v. Juniata Coll.*, 452 Pa. Super. 410, 418-19 (1996) (recognizing student voices and opinions should be encouraged in the academic word, "even when those opinions are wrong or premised on untruths, half-truths, or the unverified hearsay testimony of other persons"); *Avins v. White*, 627 F.2d 637, 640-42 (3d Cir 1980) (finding Delaware Law School's struggle for accreditation constituted a legitimate public controversy because its success or failure would affect members of the bar and students).

Even further, speech that is "a subject of legitimate news interest" is "of general interest and of value and concern to the public." *Sundberg v. DiRocco*, No. 17-00063, 2017 WL 3394314, at *5 (M.D. Pa. Aug. 8, 2017). Simply "Googling" Plaintiff demonstrates why the circumstances of this litigation involve matters of public concern. Plaintiff's position on racism, the investigation into him, and the non-renewal of his contract have all been reported on by the media, including Plaintiff's *own articles that he, <u>himself</u>, has authored. See* true and correct copies of various news articles, attached as Exhibit C, as matters of public record. Thus, Plaintiff, himself, has made the issues surrounding this lawsuit subjects of legitimate news interest and the public has shown interest in it. *See generally id.*, and specifically at pp. 15-20, 37-38, 48, 52-54. In fact, before this litigation was filed, Plaintiff Tweeted about SJU's investigation, prompting hundreds of comments, over 1,000 re-tweets, and thousands of likes. *See* true and correct copy of Plaintiff's February 2021 Tweet, attached as Exhibit D, as a matter of public record. Thus, dismissal of Count

---

[6] The *Warkevicz* court dismissed a false light claim, recognizing that communications relating to a school district's board members taking action, the direction and vitality of the school district's football program, and the welfare of student-athletes, because they involve matters of legitimate concern to the public. 2016 WL 3753108 at *16.

VIII with prejudice is appropriate as to Colbert.

### E.  PLAINTIFF FAILS TO STATE TORTIOUS INTERFERENCE WITH CONTRACT CLAIM AS TO DEFENDANT COLBERT (COUNT X)

To establish tortious interference, Plaintiff must set forth: (1) the existence of a contractual or prospective contractual relationship between the plaintiff and a third party; (2) purposeful action by the defendant specifically intended to harm an existing or potential relationship; (3) the absence of privilege or justification on the part of the defendant; (4) legal damage to the plaintiff as a result of the defendant's conduct.  *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009).  Here, Plaintiff has failed to plead facts in support of the second and third elements, which are closely intertwined because "[t]o establish an absence of privilege or justification, a plaintiff must show not only that a defendant acted intentionally to harm the plaintiff, but also that those actions were improper" under the factors outlined in § 767 of the Restatement (Second) of Torts.  *E. Rockhill Twp. v. Richard E. Pierson Materials Corp.*, 386 F. Supp. 3d 493, 503 (E.D. Pa. 2019).  "**Pennsylvania courts require the plaintiff, as part of his prima facie case, to show that the defendant's conduct was not justified**.'"  *LuLu Shriners v. Twp. of Whitemarsh*, No. 20-1720, 2021 WL 3885127, at *12 (E.D. Pa. Aug. 31, 2021) (citing *Acumed*, 561 F.3d at 212) (citations omitted).  The failure of a plaintiff to "demonstrate a lack of privilege or justification as part of the prima facie case . . . results in dismissal of the claim."  *East Rockhill Twp.*, 386 F. Supp. 3d at 502.  *See also LuLu Shriners*, 2021 WL 3885127 (dismissing tortious interference claims because plaintiff failed to allege that defendants acted improperly and without justification).  Thus, dismissal of Plaintiff's claim under Count X as to Colbert, with prejudice, is appropriate.

> **a.  Colbert's Instagram Story and Colbert's Discussion with Dr. Liebell cannot support Plaintiff's claim because Plaintiff fails to plead that Colbert specifically intended to harm an existing contract or to prevent a contract from occurring.**

Pennsylvania adopts § 767 of the Restatement (Second) of Torts to assess whether an

actor's conduct intentionally interferes with a contract. *See Crivelli v. Gen. Motors Corp.*, 215 F.3d 386, 394 (3d Cir. 2000). Comment (d) states: "The defendant must not only have intended the interference, but must have acted in part at least for the purpose of accomplishing it." § 767, cmt (d) (1979). "The wrong ordinarily requires conduct intended to interrupt negotiations or prevent the consummation of a contract." *Glenn v. Point Park Coll.*, 441 Pa. 474, 481 (1971) (citations omitted). Because Colbert's Instagram Story and Discussion with Dr. Liebell, were instances where Colbert believed that Plaintiff had already been removed from SJU, they cannot support a claim of intentional interference with contract. *See* Exhibit B; Compl. at p. 22. Plaintiff has not set forth any facts suggesting that Colbert acted with the specific intent to prevent renewal of Plaintiff's contract with SJU or that she was substantially certain this would occur. Such a claim is nonsensical because Colbert thought the contract was *already* not renewed based on the *Inquirer* article. Compl. ¶ 102. Thus, Colbert's Instagram Story and her Discussion with Dr. Liebell cannot support this count. *Glenn*, 441 Pa. at 481 (affirming dismissal of claim for tortious interference because "[t]here [was] no allegation that the defendant acted for specific purpose of causing harm to the plaintiffs."); *B.T.Z., Inc. v. Grove*, 803 F. Supp. 1019, 1023-24 (M.D. Pa. 1992) (same).

> **b. Colbert's February 2021 social media posts cannot support Plaintiff's claim because Plaintiff fails to plead facts sufficient to demonstrate that Colbert's February 2021 social media posts were was unjustified.**

To analyze the third prong of the *prima facie* case, courts first consider whether the conduct at issue was privileged. *Dempsey v. Bucknell Univ.*, 76 F. Supp. 3d 565, 588 (M.D. Pa. 2015). If not, courts analyze the propriety of the defendant's conduct. *Id.* (citing *Silver v. Mendel*, 894 F.2d 598, 604-06 (3d Cir. 1990)). For the reasons set forth *supra*, Sec. III.B., Colbert's SJU Report is privileged and cannot support a claim for tortious interference. The only remaining speech allegedly supporting this claim are Colbert's February 19, 2021 Instagram Post and February 21,

2021 Tweets.  *See* Compl. ¶ 105 (Instagram post: "When I took this man for stat I had a feeling he didn't like black people but now reading his Twitter I know that he doesn't like black people;"); Compl. ¶¶ 111,117 (Tweets stating that Plaintiff: (1) allowed his followers to "send literal death threats to college students;" and (2) told a narcoleptic student to sit in the back of the classroom).

When considering the justification of Colbert's conduct, the Pennsylvania Supreme Court has held that "a line must be drawn and the interests evaluated" when making a "choice in values" between the interests of the plaintiff and the defendant's purpose of protecting a legitimate right or interest.  *Glenn*, 441 Pa. at 482.  In these situations, there is not a "precise definition" to be applied to each interest, but the central inquiry is whether a defendant's conduct is "sanctioned by the **rules of the game** which society has adopted."  *Id.* (emphasis added).

The "rules of the game" language from the *Glenn* decision has been referenced consistently when courts consider this analysis.  Particularly noteworthy, a Pennsylvania trial court, considering a situation where a terminated football coach sued his former employer college, administrators, and individual students who sent a letter to the college's vice president complaining about him, stated the following when conducting this analysis involving student voices in the academic world:

> **We believe strongly that the 'rules of the game' in the academic world encourage students to voice their opinions even when those opinions are wrong or premised on untruths, half-truths or the unverified hearsay testimony of other persons. It would be a sad day if this Court burdened college students with the possibility of tort liability for expressing their thoughts, including those motivated by pride, resentment and anger on any subject related to college life. In making this judgment, we assume that administrators and faculty are mature and wise enough to separate the wheat from the chaff.**

*Small*, 452 Pa. Super. at 418 (emphasis added).  On appeal, the Pennsylvania Superior Court in *Small* expressly agreed with the trial court's conclusion, quoted above, and further concluded "**student criticism of a college employee with whom the students must interact, when expressed to the administration, does not constitute intentional interference with an**

**employment relationship.**" *Id.* at 418-19 (emphasis added).  As such, Colbert's communications were justified as a matter of law.  Plaintiff's right to a contract does not outweigh Colbert's legitimate interest in engaging in the speech at issue.  *See also Phillips v. Selig*, 959 A.2d 420, 435 (Pa. Super. 2008) (recognizing that "expression of opinions, however annoying or embarrassing" are not "'improper' for purposes of a tortious interference claim").  Thus, Plaintiff fails to state a claim for tortious interference and dismissal of Count X, with prejudice, is proper as to Colbert.

## F. PLAINTIFF FAILS TO STATE A CLAIM OF IIED AS TO DEFENDANT LOPEZ (XI)

Count XI should be dismissed as to Colbert because it is improperly predicated on defamatory language and fails to plead extreme and outrageous conduct as to Colbert.

### a. The IIED claim is improperly predicated on defamatory language.

"[N]o Pennsylvania case law exists upholding an IIED claim which has been predicated upon defamatory language." *See Hill v. Cosby*, No. 15-1658, 2016 WL 491728, at *9 (W.D. Pa. Feb. 9, 2016, *aff'd*, 664 F. App'x 169 (3d Cir. 2016).  *See also Garabedian*, 2019 WL 4885969, at *7, *order vacated in part on other grounds*, No. 19-1539, 2020 WL 1244126 (E.D. Pa. Mar. 13, 2020) (wherein this Court recognizes the holding in *Hill*).  Thus, Plaintiff cannot base his IIED claim on Colbert's alleged defamatory statements.  *See also* discussion, *supra*, Sec. III.C.

### b. Colbert's conduct was not extreme and outrageous.

A claim for IIED requires a plaintiff to show conduct "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society." *Kornegey v. City of Phila.*, 299 F. Supp. 3d 675, 683 (E.D. Pa. 2018).  This occurs when "the case is one in which the recitation of the facts to an average member of the community would arouse resentment against the actor, and lead him to exclaim, 'outrageous.'" *Martin-McFarlane v. City of Phila.*, 299 F. Supp. 3d 658, 671 (E.D. Pa. 2017).

Pennsylvania courts are reluctant to find conduct so outrageous. *Miniscalco v. Gordon*, 916 F. Supp. 478, 480-81 (E.D. Pa. 1996). Claims for IIED are frequently dismissed for failure to meet this element. *See Moore v. Doe*, No. 21-05302, 2022 WL 866678, at *3 (E.D. Pa. Mar. 23, 2022) (Pennsylvania courts allow recovery for IIED "only in very egregious cases."). *See, e.g.*, *Garabedian*, 2019 WL 4885969, at *7 (dismissing IIED claim where "the statements at issue, while reprehensible, are not so extreme or outrageous as to go beyond all possible bounds of human decency."); *Ghrist v. CBS Broad, Inc.*, 40 F. Supp. 623, 626, 630-31 (W.D. Pa. 2014) (same).

In *Eck*, the plaintiffs, several high school students, alleged that a teacher used her position to bully and intimidate them and that their teacher attempted to encourage the plaintiffs' peers to do the same, including by making false statements about the plaintiffs being violent and posing a threat to the school. No. 19-1873, 2019 WL 3842399, at *8 (E.D. Pa. Aug. 15, 2019). The plaintiffs alleged that these actions resulted in the students' suspension from school. *Id.* Despite these allegations of false and threatening behavior by a teacher towards her students, the *Eck* court dismissed plaintiffs' complaint holding that the allegations "do not rise to the level of 'extreme and outrageous' conduct sufficient to support a claim for [IIED]." *Id.* "Under Pennsylvania law, **extreme and outrageous conduct is found 'only in the most egregious situations, such as mishandling of a corpse, reckless diagnosis of a fatal disease, and having sexual contact with young children**.'" *Id.* (emphasis added) (quoting *Cheney v, Daily News L.P.*, 654 F. App'x 578, 583-84 (3d Cir. 2016)).

In *Kessler v. Monsour*, a tenured high school teacher alleged IIED based on the following:

> Defendant Monsour ridiculed Dale Kessler's desire to spend School District funds to send students to an art competition; Dale Kessler was given an unsatisfactory job performance review on the wrong form and with inadequate observation; Dale Kessler was suspended when there were allegations of a criminal investigation by state and local police; Dale Kessler was suspended for events surrounding physical contact with a student; no hearing on the latter suspension was held; the defendant

unions did not support Dale Kessler in his grievances and complaints; and the
actions taken were in retaliation for Dale Kessler's exercise of his free speech rights.

865 F. Supp. 234, 241-42 (M.D. Pa. 1994).  The Court found, "[t]his conduct, whether the events

are viewed singly or in combination, does not rise to the level of extreme and outrageous conduct

contemplated by § 46."  *Id.* at 242 (referencing Section 46 of the Restatement (2d) of Torts).

Plaintiff alleges five actions taken by Colbert: (1) Colbert's SJU Report[7] (Compl. ¶¶ 49-

52, 109); (2) Colbert's February 19, 2021 Instagram Post (*Id.* at ¶ 105); (3) Colbert's February 21,

2021 Tweets (*Id.* at ¶¶ 111, 117); (4) Colbert's Instagram Story (*Id.* at ¶ 102); and (5) Colbert's

Discussion with Dr. Liebell (*Id.* at ¶¶ 125-26).  These actions are not "utterly intolerable in a

civilized society" and, as such, cannot support the first element of this claim.  *Kornegey*, 299 F.

Supp. 3d at 683.  *See Eck*, *Kessler*, *supra.*  Thus, Plaintiff fails to state a claim for IIED and

dismissal of Count XI, with prejudice, is proper as to Colbert.

## G. PLAINTIFF FAILS TO STATE A CLAIM AS TO CIVIL CONSPIRACY AS TO DEFENDANT COLBERT (COUNT IX)

First, if the preceding counts are dismissed, civil conspiracy should also be dismissed

because such a claim is derivative of an underlying claim.  "A civil action for conspiracy requires

an agreement by the conspirators to commit an unlawful act. [A]bsent a civil cause of action for a

particular act, there can be no cause of action for civil conspiracy to commit that act."  *Bartos v.*

*MHM Corr. Servs., Inc.*, 454 F. App'x 74, 11 (3d Cir. 2011) (internal citations omitted).

Should any claims against Colbert survive, Plaintiff still fails to substantively plead a claim

for civil conspiracy.  To succeed, Plaintiff must show: "(1) a combination of two or more persons

acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or

for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual

---

[7] Colbert's SJU Report cannot serve as grounds for IIED because it judicially privileged.  *See* Sec. III.B., *supra.*

legal damage." *Strickland*, 700 A.2d at 987-88 (internal citations omitted).  Here, Plaintiff has failed to allege facts sufficient to support elements (1) and (2) of this claim as to Colbert. Therefore, dismissal is appropriate. *See id.* (affirming dismissal of claim for civil conspiracy).

### a. Plaintiff's Complaint fails to allege any unlawful act, unlawful means, or unlawful purpose by Colbert.

Plaintiff fails to allege any unlawful conduct that could support any cause of action, let alone for conspiracy. It is not only lawful, but expected, to share someone else's social media content—that's the entire point. It is also not unlawful to express the opinion that you find someone's content to be offensive, racist, transphobic, or inappropriate.  It is certainly not unlawful to ask that a university look into its professor's self-identified, publicly available social media account for inflammatory remarks on the internet and to report personal experiences with that professor. If lawfully bringing attention to Plaintiff's public Twitter feed is all it takes to "destroy Plaintiff's reputation," Plaintiff has no one to blame but himself.  Dismissal is therefore appropriate. *See Goodwin v. Moyer*, 549 F. Supp. 2d 621, 629 (M.D. Pa. 2006) (affirming dismissal of civil conspiracy claim for failure to plead the first element).

### b. The Complaint fails to allege an agreement between Colbert and any person to act with a common purpose and, thus, no overt act.

Civil conspiracy requires a showing of "a combination of two or more persons acting with a common purpose." *See Ammlung v. City of Chester,* 494 F.2d 811, 814 (3d Cir.1974).  "[T]o allege . . . civil conspiracy, a plaintiff must make factual allegations of combination, agreement, or understanding among all or between any of the defendants [or coconspirators] to plot, plan, or conspire to carry out the alleged chain of events.  It is not enough that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." *Reese v. Pook & Pook, LLC.*, 158 F. Supp. 3d 271, 292 (E.D. Pa. 2016)

(internal citations omitted).  "The mere fact that two or more persons, each with the right to do a thing, happen to do that thing at the same time is not by itself an actionable conspiracy." *Thompson Coal v. Pike Coal Co.*, 412 A.2d 466, 473 (Pa. 1979) (citations omitted).

Plaintiff's allegation that Colbert became party to a "conspiracy" when a Title IX officer at SJU, investigating her claims of racism, transphobia, and discrimination, "advised" her to find others who could corroborate her claims or who had similar experiences is preposterous.  Compl. ¶¶ 51-52.  It is common for Title IX officer to conduct due diligence in investigating such claims. There is no allegation of a "plot, plan, or [conspiracy] to carry out the alleged chain of events." *Reese*, 158 F. Supp. 3d at 292.   Indeed, the Complaint does not even allege "agreement or understanding."  *Id.*  The Complaint does not allege that Ms. Morrison informed Colbert of a scheme to remove Plaintiff nor invite her to participate in one.  She simply asked Colbert to ask those with similar stories to reach out to her.  Compl. ¶ 52.  Beyond that sole allegation, Plaintiff's Complaint is devoid of any facts suggesting that Colbert worked in combination, agreement, or understanding with any other person, or that she plotted together with any other person.  "Mere suspicion or the possibility of guilty connection is not sufficient, nor proof of acts which are equally consistent with innocence."  *Fife v. Great Atl. & Pac. Tea Co.*, 52 A.2d 24, 27 (Pa. 1947) Because Colbert did not work in concert with anyone, it follows that there was no "overt act" committed in furtherance of a common purpose.  Dismissal is therefore appropriate.

Plaintiff fails to state a claim for civil conspiracy and no amendment can cure the issues identified.  Thus, dismissal of Count IX, with prejudice, is appropriate as to Colbert.

## IV.    CONCLUSION

For the foregoing reasons, Colbert respectfully requests that Counts II, VIII-XI of Plaintiff's Complaint be dismissed, with prejudice, as to Defendant Hadassah Colbert.

FP 43574255.5

**FISHER & PHILLIPS LLP**

*/s/ Deniz Uzel Reilly*
Michael R. Galey, Esquire
Deniz Uzel Reilly, Esquire
Two Logan Square, 12th Floor
100 N. 18th Street
Philadelphia, Pennsylvania 19103
mgaley@fisherphillips.com
dreilly@fisherphillips.com
*Attorney for Defendants*
*Hadassah Colbert, Kiernan Loue, Karleigh*
*Lopez, Erin Fahey, and Corinne McGrath*

Date:   December 21, 2022

FP 43574255.5