**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GREGORY V. MANCO, Ph.D., : | |
| : | |
| Plaintiff, : | |
| v. : | |
| : | CIVIL ACTION NO. 5:22-CV-00285 |
| ST. JOSEPH'S UNIVERSITY, ET AL. : | |
| : | |
| Defendants. : | |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF**
**DEFENDANT KIERNAN LOUE TO DISMISS PLAINTIFF'S COMPLAINT**
**AS TO DEFENDANT KIERNAN LOUE**

Defendant Kiernan Loue ("Defendant Loue"), by and through her undersigned counsel, hereby submits the following Memorandum of Law in Support of the Motion of Defendant Kiernan Loue to Dismiss Plaintiff's Second Amended Complaint as to Defendant Kiernan Loue for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.     INTRODUCTION

Plaintiff Gregory V. Manco, Ph.D. ("Plaintiff") is a former Professor of Mathematics at St. Joseph's University ("SJU").  At its core, the Second Amended Complaint ("Complaint") attempts to harass and blame several former students of SJU and colleagues of Plaintiff's for SJU's decision not to renew Plaintiff's contract.  Among those former students is Defendant Kiernan Loue, who has claims of defamation, false light, tortious interference with contract, civil conspiracy, and intention infliction of emotional distress ("IIED") asserted against her.  The 55-page, 231-paragraph Complaint, however, only asserts two substantive facts in support of its claims against Defendant Loue as follows:

123.   On February 25, 2021, Loue tweeted at SJU and accused Dr. Manco of violating the law. SJU even responded to Loue's defamatory tweet:



124.   Loue was never a student of Dr. Manco and knew this tweet to be false.

Thus, it is seemingly Plaintiff's position that Defendant Loue committed each of the alleged torts by posting a single Tweet on February 25, 2021.  Plaintiff fails to set forth sufficient facts to support each of the claims against Defendant Loue because:

1.  Defendant Loue's statement enjoys absolute judicial privilege and cannot serve as a basis for any of the causes of action.

2.  As to Count II (defamation), Defendant Loue's statements lack defamatory meaning and were not made with malice.

3.  As to Count VIII (false light), Defendant Loue's statements are predicated on opinion and were not made with malice.

4.  As to Count X (tortious interference with contract), Plaintiff fails to sufficiently plead facts demonstrating that Defendant Loue's conduct was unjustified.

5.  As to Count XI (IIED), Plaintiff fails to plead extreme and outrageous conduct as to Defendant Loue or facts that suggest medical evidence exists of his alleged emotional distress because of Defendant Loue's conduct.

6.  As to Count IX (civil conspiracy), Plaintiff fails to sufficiently plead an underlying

FP 49267309.3

cause of action.  Even if Plaintiff has plead a cause of action, Plaintiff fails to allege any unlawful act, means, or purpose by Defendant Loue or any agreement between Defendant Loue and any person to act with a common purpose or an overt act.

For these reasons, the Complaint fails to state a claim against Defendant Loue upon which relief can be granted and must be dismissed as to her, with prejudice, as no amendments can cure such issues.

## II.      <u>FACTURAL AND PROCEDURAL BACKGROUND</u>[1]

Plaintiff is a former Professor of Mathematics at SJU.  ECF No. 51, ¶¶ 1, 144 (hereinafter "Compl.").  In June 2021, following an investigation conducted into certain conduct by Plaintiff, SJU informed Plaintiff that his annual contract was not being renewed, but kept Plaintiff on staff as a part-time adjunct professor for the 2021-2022 school year.  Compl. ¶¶ 73-75; 88-89.  In May 2022, Plaintiff was informed that he was being removed from the courses he was scheduled to teach in the summer and fall of 2022 due to his "violation of certain University policies."  Compl. ¶ 144.

Defendant Loue was not a former student of Plaintiff's.  *Id.* at ¶ 124.  In the entire Complaint, the **_only_** action by Defendant Loue about which Plaintiff complains is the Tweet set forth above.  Compl. ¶¶ 123-24.  Every remaining allegation against Defendant Loue is a conclusion without factual support.  *See* Compl. ¶¶ 5-6, 9, 42, 87, 103, 133-36, 155-56, 158, 160-61.

Based on these limited allegations, Plaintiff summarily raises unsupported claims of defamation, false light, civil conspiracy, tortious interference with contract, and IIED as to Defendant Loue.  Compl.  ¶¶ 172-78, 207-31.  Plaintiff has not met – and cannot meet – the

---

[1] Defendant Loue sets forth the relevant facts as alleged in the Complaint for purposes of this Motion only and reserves the right to respond to and deny all facts and allegations if this Motion is denied.

pleading requirements as to his claims against Defendant Loue and dismissal of the claims against

her is appropriate.

### III.     ARGUMENT

#### A.  STANDARD OF REVIEW

Defendant Loue moves to dismiss Counts II, VIII-XI of the Complaint for "failure to state

a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "To survive a motion to

dismiss, a [plaintiff's] complaint must contain sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In the Third Circuit, district courts apply

the following test when considering a motion to dismiss:

> First, the factual and legal elements of a claim should be separated. The District
> Court must accept all of the complaint's well-pleaded facts as true, but may
> disregard any legal conclusions. Second, a District Court must then determine
> whether the facts alleged in the complaint are sufficient to show that the plaintiff
> has a "plausible claim for relief." In other words, a complaint must do more than
> allege the plaintiff's entitlement to relief. A complaint has to "show" such an
> entitlement with its facts . . . "[w]here the well-pleaded facts do not permit the court
> to infer more than the mere possibility of misconduct, the complaint has alleged-
> but it has not 'show[n]'-'that the pleader is entitled to relief.'" This "plausibility"
> determination will be "context-specific task that requires the reviewing court to
> draw on its judicial experience and common sense."

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

Although Federal Rule of Civil Procedure 8(a)(2) requires only a "short and plain statement

of the claim showing that the pleader is entitled to relief," a plaintiff must do more than present

"bald assertions" and "legal conclusions."  A plaintiff "armed with nothing more than conclusions"

is not entitled to discovery. *Iqbal*, 556 U.S. at 678-79 ("Rule 8 marks a notable and generous

departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the

doors of discovery for a plaintiff armed with nothing more than conclusions.").  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (*citing Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (*citing Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do[,]'" and "[n]or does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (internal citations omitted).

## B.  DEFENDANT LOUE'S STATEMENT ENJOYS ABSOLUTE PRIVILEGE

This Honorable Court addressed the applicability of judicial privilege to statements made by many of the student defendants in its well-reasoned January 25, 2024 Memorandum Opinion (the "Opinion"). *See* ECF No. 106.  There, the Court correctly recognized that the judicial privilege "is applicable when a student conveys information that commences an investigation pursuant to federal statute or regulations." *See id.* at p. 27.  Defendant Loue's Tweet was pertinent and material to SJU's investigation into Plaintiff and premised on her attempt to initiate a quasi-judicial proceeding against Plaintiff.  Thus, it is entitled to judicial privilege, cannot serve as grounds for any of Plaintiff's claims, and dismissal is appropriate as to Defendant Loue.[2]

The judicial proceeding privilege provides immunity for communications: "(1) issued as a matter of regular course of the proceedings; or (2) pertinent and material to the proceedings."

---

[2] *See e.g.*, *Ortiz v. De. River Port Auth.*, No. 09-6062, 2010 WL 1994911 (E.D. Pa. May 17, 2010) (dismissing defamation claims where complaints made in the course of an internal investigation were judicially privileged); *Giusto v. Ashland Chem. Co.*, 994 F. Supp. 587, 594 (E.D. Pa. 1998) (same); *Fogel v. Univ. of the Arts*, No. 18-5137, 2019 WL 1384577, at *8 (E.D. Pa. Mar. 27, 2019) (same); *The Weiser Law Firm, P.C. v. Hartleib*, No. 19-02728, 2022 WL 970757, *33 (E.D. Pa. Mar. 31, 2022) (extending judicial privilege to false light claim); *Schatzberg v. State Farm Mut. Auto. Ins. Co.*, 877 F. Supp. 2d 232, 248 (E.D. Pa. 2012) (same); *Doe v. Garabedian*, No. 19-1539, 2019 WL 4885969, at *7 (E.D. Pa. Oct. 2, 2019) (extending judicial privilege to IIED claim) *vacated in part on other grounds*, No. 19-1539, 2020 WL 1244126 (E.D. Pa. Mar. 13, 2020); *Orbital Eng'g, Inc. v. Buchko*, No. 20-593, 2021 WL 5280927, at *21 (W.D. Pa. Nov. 12, 2021) (extending judicial privilege to tortious interference claim); *Todi v. Stursberg*, No. 01-2539, 2001 WL 1557517 (E.D. Pa. Dec. 4, 2001) (same); *Church Mut. Ins. Co. v. All. Adjustment Grp.*, 708 F. App'x 64, 71 (3d Cir. 2017) (extending judicial privilege to civil conspiracy claim).

*Bochetto v. Gibson*, 580 Pa. 245, 252 (2004). "These two factors apply equally to communications made prior to the initiation of judicial proceedings." *Schatzberg*, 877 F. Supp. 2d at 247 (citations omitted). "[T]he privilege is absolute, meaning that, where it attaches, the declarant's intent is immaterial even if the statement is false and made with malice." *Schanne v. Addis*, 121 A.3d 942, 947 (Pa. 2015). This privilege also extends to quasi-judicial proceedings. *Milliner v. Enck*, 709 A.2d 417, 419 n.1 (Pa. Super. Ct. 1998). Whether a statement deserves absolute privilege is a question of law for the court. *Pawlowski v. Smorto*, 588 A.2d 36, 41 (Pa. Super Ct. 1991).

This Court has specifically extended this privilege to reports made to a university about misconduct by one of its professors. *See Fogel*, 2019 WL 1384577. In *Fogel*, one of the defendants, a professor from a different university, reported purported sexual misconduct by the plaintiff to the university, sparking an investigation. *Id.* at *1-*4. Ultimately, the plaintiff was terminated and brought claims for defamation against the defendant professor. *Id.* This Court dismissed the defamation claims, in part, finding them barred by Pennsylvania's judicial proceeding privilege. *Id.* at *8. Specifically, the Court found the defendant professor's statements to the university were "pertinent and material" to the subsequent investigation and conclusions, and that they initiated quasi-judicial proceedings against the plaintiff that warranted the application of absolute privilege. *Id.* In its reasoning, the Court distinguished the situation to that of *Schanne*, 121 A.3d at 949:

> Unlike *Schanne* where the plaintiff reported misconduct to her friend without any expectation of disciplinary proceedings, [the former professor] reported [plaintiff's] misconduct to his school's Title IX coordinator 'initiating' an investigation against [plaintiff]. The policy rationale explained in the supreme court's opinion in *Schanne* applies here to 'incentivize' individuals like [the former professor] to speak freely in seeking to initiate proceedings . . . .

*Fogel*, 2019 WL 1384577, at *10.

Here, Defendant Loue's Tweet about Plaintiff was made directly to SJU and was directly

6

"pertinent and material" to SJU's investigation.  Compl. ¶ 123.  Plaintiff suggests throughout the Complaint that Defendant Loue intended to initiate a quasi-judicial proceeding against Plaintiff through her actions.  *Id.* at ¶¶ 103, 141, 158.  Like the professor from another university in *Fogel*, who was protected by the judicial privilege for initiating proceedings against the plaintiff, Defendant Loue should be protected by the judicial privilege for tweeting to SJU about Plaintiff's misconduct, while intending to initiate investigation.  "Under such a predicate, there is a colorable nexus between immunity and the privilege's underlying policy pertaining to the unencumbered resolution of claims in a judicial (or quasi-judicial) setting."  *Schanne*, 121 A.3d at 559-60.

The privilege should also apply to this situation because there are strong public policy reasons to allow the privilege to apply to Defendant Loue's statement.  *See Schanne v. Addis*, 898 F. Supp. 2d 751, 757 (E.D. Pa. 2012), *vacated on other grounds*, 615 Fed. App'x 759 (3d Cir. 2015) ("When courts choose to apply the privilege, they deem the policy concerns—encouraging open communication without fear of retributive lawsuits—to weigh the right to the defamation plaintiff to seek redress.").  If a student feels a professor is creating a discriminatory, unsafe, hostile, or biased environment, this sort of report must be protected and encouraged.  Alumni should not feel chilled from speaking out about misconduct of professors for fear of a lawsuit.  As outlined in *Fogel*, the absolute privilege is in place to allow individuals like Defendant Loue to honestly report behavior they find to be concerning to allow a school to further investigate.  *Fogel*, 2019 WL 1384577 at *10.

Thus, Defendant Loue's statement is judicially privileged, and dismissal is appropriate as to Defendant Loue on this ground alone.  For purposes of completeness, however, Defendant Loue will address the many reasons why Plaintiff's claims are also substantively insufficient as to each individual count.

### C. PLAINTIFF FAILS TO STATE A CLAIM OF DEFAMATION AS TO DEFENDANT LOUE (COUNT II)

In an action for defamation, Plaintiff has a burden of proving: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion. *Mallory v. S&S Publishers*, 168 F. Supp. 3d 760, 767 (E.D. Pa. 2016) (citation omitted). Moreover, "[o]nly statements of fact, not expressions of opinion, can support an action for defamation." *Pace v. Baker-White*, 432 F. Supp. 3d 495, 512 (E.D. Pa. 2020). When determining whether a statement is fact or opinion, courts will consider whether it is "provably false." *See Northstein v. USA Cycling*, 499 F. Supp. 3d 101, 124 (E.D. Pa. 2020). "Whether a statement is a fact or an opinion is a question of law" for the Court. *Pace*, 432 F. Supp. 3d at 512.

Plaintiff's asserted facts are insufficient to meet his burden to sufficiently plead facts to support a claim for defamation because the complained of tweet lacks defamatory meaning and is a statement of opinion. Further, Plaintiff, as a limited purpose public figure, has failed to plead actual malice as to Defendant Loue's tweet.

#### a. Defendant Loue's tweet lacks defamatory meaning

Whether a statement is capable of defamatory meaning is a question of law. *See Byars v. Sch. Dist. of Phila.*, 942 F.Supp. 2d 552, 564 (E.D. Pa. 2013). If the statements are not capable of a defamatory meaning, dismissal is appropriate. *See, e.g.*, *P&I Ins. Servs., LLC v. Risk Averse Ins., LLC*, 2022 WL 103135, *7 (E.D. Pa. Jan. 11, 2022) (citation omitted); *MacElree v. Phila. Newspapers, Inc.*, 544 Pa. 117, 124 (1996). "A statement is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons

from associating or dealing with him.  But the statement must do more than merely embarrass or annoy the plaintiff; it must provoke the kind of harm which has grievously fractured [one's] standing in the community of respectable society." *Graboff v. Colleran Firm*, 744 F.3d 128, 136 (3d Cir. 2014) (citations and quotations omitted).  Offensive, distasteful, annoying, embarrassing, and insulting communications are not defamatory if they do not provoke the kind of harm that fractures one's standing in society.  *See Emekekwue v. Offor*, 26 F. Supp. 3d 348, 359 (M.D. Pa. 2014); *Beverly Enters. v. Trump*, 182 F.3d 183, 197 (3d Cir. 1999).  "The touchstone in determining whether a statement is capable of defamatory meaning is how the statement would be interpreted by the average person to whom it is directed." *Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 479 (E.D. Pa. 2020).  The statements must be viewed "in context" to determine whether they "blacken a person's reputation or expose him to public hatred, contempt, or ridicule, or to injure him in his business or profession.'" *P&I Ins. Servs.*, 2022 WL 103135, at * 7 (citations omitted).

In Defendant Loue's Tweet, she states that Plaintiff has "done nothing but contribute to a hostile learning environment with his racism, sexism, and transphobia[.]"  Compl. ¶ 123.  This statement, standing alone, is an opinion and does not rise to the level of grievously fracturing Plaintiff's standing in the community.  Insulting communications do not rise to the level of defamation if they do not provoke the kind of harm to fracture one's societal standing.  *See Smith v. Sch. Dist. of Phila.*, 112 F. Supp. 2d 417, 429 (E.D. Pa. 2000) (school district officials' alleged public statements that high school student's parent was racist and anti-Semitic were opinions that could not support defamation).

An accusation of racism is not enough; the accusation must imply more, such as suggesting the person broke the law to act in a racist manner.  *See McCafferty v. Newsweek Media Group, Ltd.*, 955 F.3d 352 (3d Cir. 2020).  *See also Puchalski v. Sch. Dist. of Springfield*, 161 F. Supp. 2d

395, 408, n. 7 (E.D. Pa. 2001) ("[C]haracterizing someone or something he has said as 'racist' is not alone actionable.").  Similarly, Defendant Loue's characterization of Plaintiff as sexist and transphobic are not, without more, defamatory.  *See, e.g.*, *Schumacher v. Argosy Educ. Grp., Inc.*, No. 05-531, 2006 WL 3511795, at *16 (D. Minn. Dec. 6, 2006) ("referring to [plaintiff] as 'homophobic' does not constitute defamation as a matter of law"); *McCaskill v. Gallaudet Univ.*, 36 F. Supp. 3d 145, 159 (D.D.C. 2014) ("[T]o the Court's knowledge no decision has found statements claiming that a person is anti-gay or homophobic to be actionable defamation."); *Behar v. Daily News, L.P.*, No. 154447/2022, 2023 WL 3075277, at *3 (N.Y. Sup. Ct. Apr. 24, 2023) ("[T]he mere use of the word 'sexist' does not give rise to actionable defamation.").

Thus, Defendant Loue's statement lacks defamatory meaning and is not actionable.

### b.  Plaintiff has failed to plead facts supporting a conclusion that Defendant Loue had actual malice.

Even if the Court were to find Defendant Loue's tweet to be defamatory, Plaintiff's defamation claim still fails because Plaintiff has not, and cannot, establish that Defendant Loue's tweet was published with actual malice.  Pennsylvania law requires that defamation claims must allege that the publisher acted "maliciously" when (1) the plaintiff is seeking punitive damages,[3] (2) the plaintiff is a private figure but complains of statements that are a matter of public concern; or (3) the plaintiff is deemed a public figure.  *See Johnson*, 860 F. Supp. at 221-22 (collecting cases).  Here, Plaintiff falls into the third category, as a limited purpose public figure.

This Court has found that "First Amendment protections require [that] defamation plaintiffs . . . prove by clear and convincing evidence the defendant defamed him with 'actual

---

[3] Plaintiff does not appear to be seeking punitive damages related to his defamation claim.  *See* Compl. at ¶ 177.  If, however, Plaintiff seeks to assert a punitive damages claim against Defendant Loue, his failure to plead actual malice would be futile to that claim. *See Johnson v. Res. for Human Dev., Inc.*, 860 F. Supp. 218, 221-22 (E.D. Pa. 1994) (citing *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 989 F.2d 914, 929 (3d Cir. 1990)).

FP 49267309.3

malice.'"  *Ralston v. Garabedian*, No. 19-1539, 2021 WL 6072881, at *14 (E.D. Pa. Dec. 23, 2021) (citations omitted).

> A person may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes.  Many politicians, for example, are all-purpose public figures.  More commonly, however, a person voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues.  These limited-purpose public figures assume public figure status only in the context of a particular public controversy.

*Id.* (citations omitted).  The standard for actual malice is subjective and is "based on the defendant's actual state of mind."  *Schiavone Constr. Co. v. Time, Inc.*, 847 F.2d 1069, 1089 (3d Cir. 1988).  "'Actual malice' is a term of art that does not connote ill will or improper motivation. Rather, it requires that the publisher either know that its article was false or publish it with 'reckless disregard' for its truth."  *McCafferty v. Newsweek Media Grp, Ltd.*, 955 F.3d 352, 359 (3d Cir. 2020) (citing *Am. Future Sys., Inc., v. Better Bus. Bureau of E. Pa.*, 923 A.2d 389, 399 n. 12 (Pa. Super. Ct. 2007)).  The law is "clear that reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing."  *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).  The First Amendment requires this demanding standard. *See N.Y. Times Co. v. Sullivan*, 376 U.S 254, 279-80 (1964).

The determination of whether a plaintiff is a public figure is a question of law and one that is proper to be resolved at the motion to dismiss stage.  *See McCafferty*, 955 F.3d at 361.  *See also Johnson*, 860 F. Supp. at 222 (citing *Marcone v. Penthouse Int'l Magazine for Men*, 754 F.3d 1072, 1081 n. 4 (3d Cir. 1985)).  To make this determination, the Court must examine: "(1) whether the alleged defamation involves a public controversy, and (2) the nature and extent of plaintiff's involvement in that controversy."  *Ralston*, 2021 WL 6072881 at *14.

Here, simply "Googling" Plaintiff will yield several examples of why Plaintiff is a limited purpose public figure.  Plaintiff's position on racism, the investigation into Plaintiff, and his non-

11

renewal of his contract have all been picked up by the news media, including some of Plaintiff's *own, published articles that he, <u>himself,</u> authored.*  *See* true and correct copies of various news articles, attached hereto as Exhibit A.[4]  Thus, Plaintiff, by his own design, has gained public notoriety as to the issues surrounding this lawsuit and the public has shown interest in it.  *See generally id.*, and specifically at pp. 15-20, 37-38, 48, 52-54.  In fact, before this litigation was filed, Plaintiff Tweeted about the investigation into him, prompting hundreds of comments, over 1,000 re-tweets, and thousands of likes.  *See* true and correct copy of Plaintiff's February 2021 Tweet, attached hereto as Exhibit B.[5]

Courts within this circuit have found that "adequately pleading malice is an onerous task," which requires a plaintiff to show the existence of actual malice is "plausible on its face."  *Earley v. Gatehouse Media Pa. Holdings, Inc.*, No. 12-1886, 2015 WL 1163787, at *2 (M.D. Pa. Mar. 13, 2015) (citations omitted).  *See Reese v. Pook & Pook, LLC*, 158 F. Supp. 3d 271, 289 (E.D. Pa. 2016) ("[M]erely alleging actual malice is insufficient; courts are not bound to accept as true legal conclusions couched as factual allegations.").  Thus, dismissal is appropriate where a plaintiff fails to sufficiently plead facts that suggest actual malice.  *See McCafferty*, 955 F.3d at 360 (affirming dismissal of the plaintiff's defamation claim and holding that "[b]ecause [plaintiff] has not adequately pleaded actual malice, he may not use discovery to probe [defendant's] state of mind.").

Here, Plaintiff has not sufficiently plead that Defendant Loue acted with actual malice in posting her single Tweet.  The bare allegation that the statements contained in the Tweet were false

---

[4] "As a general rule, a district court considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6) 'may not consider matters extraneous to the pleadings' without converting the motion into one for summary judgment. The rule, however, has three exceptions that permit courts to consider: (1) exhibits attached to the complaint; (2) matters of public record; and/or (3) undisputedly authentic documents integral to or explicitly relied upon in the complaint." *Bartell v. Cmty. Coll. of Phila.*, No. 19-6056, 2021 WL 1561912, at *13 n.7 (E.D. Pa. Apr. 21, 2021) (internal citations omitted). Exhibit A is comprised of matters of public record.

[5] Again, Plaintiff's tweet is a matter of a public record.

is insufficient to establish actual malice. *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012); *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 56 (1st Cir. 2012); *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989) ("Nor can the fact that the defendant published the defamatory material in order to increase its profits suffice to prove actual malice."); *Taha v. Bucks Cty.*, No. 12-6867, 2015 WL 9489586, at *5 (E.D. Pa. Dec. 30, 2015) (same). Moreover, actual malice cannot be established by a failure to reasonably investigate. *See e.g., Marcone*, 754 F.2d at 1089 (no actual malice for "failure to investigate"); *Fitzpatrick v. Phila. Newspapers, Inc.*, 567 A.2d 684, 688 (Pa. Super. Ct. 1989) ("Failure to investigate, without more, will not support a finding of actual malice, nor will ill will or a desire to increase profits.").

For the foregoing reasons, Plaintiff has not stated a claim for defamation and dismissal of Count II against Defendant Loue with prejudice is appropriate.

### D. PLAINTIFF FAILS TO STATE A CLAIM OF FALSE LIGHT AS TO DEFENDANT LOUE (COUNT VIII)

To state a claim for false light, Plaintiff "must allege facts showing that the published material is not true, is highly offensive to a reasonable person, and is publicized with knowledge or in reckless disregard for its falsity." *Mallory*, 168 F. Supp. 3d at 776 (quoting *Graboff*, 744 F.3d at 136). "[W]hether the communication is capable of bearing a particular meaning which is highly offensive to a reasonable person is a question for the Court." *Id.*, at 766 (quoting *Savely v. MTV Music Television*, 2011 WL 2923691, at *5 (D.N.J. 2011) (internal quotations omitted). Further, false light claims cannot be predicated on opinion. *See Pace*, 432 F. Supp. 3d 495, *aff'd,* 850 F. App'x 827 (analyzing claims of false light and defamation together and dismissing both claims finding that the statements in question were statements of opinion and, therefore, not actionable).

Here, this claim should be dismissed as to Defendant Loue because it is predicated on

Defendant Loue's opinion and Plaintiff has not plead actual malice.  *See* discussion, *supra*, at III.C.(a)-(b).

### E.  PLAINTIFF FAILS TO STATE TORTIOUS INTERFERENCE WITH CONTRACT CLAIM AS TO DEFENDANT LOUE (COUNT X)

To establish tortious interference, Plaintiff must set forth: (1) the existence of a contractual or prospective contractual relationship between the plaintiff and a third party; (2) purposeful action by the defendant specifically intended to harm an existing or potential relationship; (3) the absence of privilege or justification on the part of the defendant; (4) legal damage to the plaintiff as a result of the defendant's conduct.  *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009).

Here, Plaintiff has failed to plead facts in support of the third element.  "Pennsylvania courts require the plaintiff, as a part of his prima facie case, to show that the defendant's conduct was not justified.'"  *LuLu Shriners v. Twp. of Whitemarsh*, No. 20-1720, 2021 WL 3885127, at *12 (E.D. Pa. Aug. 31, 2021) (citing *Acumed*, 561 F.3d at 212) (internal citations omitted).  The failure of a plaintiff to "demonstrate a lack of privilege or justification as part of the prima facie case . . . results in dismissal of the claim."  *E. Rockhill Twp v. Richard E. Pierson Materials Corp.*, 386 F. Supp. 3d 493, 502 (E.D. Pa. 2019).  *See also LuLu Shriners*, 2021 WL 3885127.  In analyzing whether the plaintiff has met this burden, the Court first considers whether the conduct at issue was privileged.  *Dempsey v. Bucknell Univ.*, 76 F. Supp. 3d 565, 588 (M.D. Pa. 2015).  If not, the next step under the third prong of the *prima facie* analysis is to analyze the propriety of the defendant's conduct.  *Id*. (citations omitted).

For the reasons set forth in Section III.B., *supra*, Defendant Loue's statement is subject to the judicial privilege and therefore dismissal is appropriate.  *See Orbital Eng'g, Inc.*, 2021 WL 5280927, at *21 (dismissing tortious interference claim based on judicially privileged statements);

*Todi*, 2001 WL 1557517, at *1 (E.D. Pa. Dec. 4, 2001) (same).  Although the analysis should end here, for purposes of completeness, it is noteworthy that Defendant Loue's conduct was also justified.

When considering the justification of Defendant Loue's conduct, the Pennsylvania Supreme Court has advised that "a line must be drawn and the interests evaluated" when making a "choice in values" between the interests of the plaintiff and the defendant's purpose of protecting a legitimate right or interest.  *Glenn v. Point Park Coll.*, 441 Pa. 474, 482 (1971).  In these situations, there is not a "precise definition" to be applied to each interest, but the central inquiry is whether a defendant's conduct is "sanctioned by the **rules of the game** which society has adopted."  *Id.* (emphasis added).  The "rules of the game" language from the *Glenn* decision has been referenced consistently when courts consider this analysis.  Notably, a Pennsylvania trial court in deciding a motion for summary judgment, considering a terminated football coach's suit against his former employer college, administrators, and individual football players who sent a letter to the college complaining about him, stated the following relating to student voices in the academic world:

> **We believe strongly that the 'rules of the game' in the academic world encourage students to voice their opinions even when those opinions are wrong or premised on untruths, half-truths or the unverified hearsay testimony of other persons. It would be a sad day if this Court burdened college students with the possibility of tort liability for expressing their thoughts, including those motivated by pride, resentment and anger on any subject related to college life. In making this judgment, we assume that administrators and faculty are mature and wise enough to separate the wheat from the chaff.**

*Small v. Juniata Coll.*, 452 Pa. Super. 410, 418, 682 A.2d 350, 354 (1996) (emphasis added).  On appeal, the Pennsylvania Superior Court in *Small v. Juniata College* expressly agreed with the trial court's conclusion, quoted above, and further concluded "**student criticism of a college employee with whom the students must interact, when expressed to the administration, does not**

**constitute intentional interference with an employment relationship.**" *Id.* at 418-19 (emphasis

added).  As such, Defendant Loue's statement was not unlawful.  Plaintiff's right to a contract

does not outweigh Defendant Loue's legitimate interest in engaging in the speech at issue.  *See*

*also Phillips v. Selig*, 959 A.2d 420, 435 (Pa. Super. 2008) (recognizing that "expression of

opinions, however annoying or embarrassing" are not "'improper' for purposes of a tortious

interference claim").

Thus, Plaintiff cannot state a claim for tortious interference as to Defendant Loue and

dismissal of Count X is appropriate.

## F. PLAINTIFF FAILS TO STATE A CLAIM OF IIED AS TO DEFENDANT LOUE (XI)

As recognized by the well-reasoned Opinion, Plaintiff has not plead extreme and

outrageous conduct:

> Here, Manco broadly alleges that all the parties to this lawsuit participated in
> 'extreme and outrageous conduct' but does not specify what conduct was extreme
> or outrageous. . . . . As to the student Defendants, it is doubtful that any of their
> conduct could be considered 'extreme and outrageous.'

ECF No. 106 at pp. 43-44.  Further, the Opinion recognized that Plaintiff's Complaint is devoid

of competent medical evidence, as required by Pennsylvania law:

> Even assuming Plaintiff had pled extreme and outrageous conduct as to the student
> defendants, his [IIED] claim must still be dismissed because Manco has not pled
> facts that support his assertion that all defendants' conduct caused severe emotional
> distress with any 'competent medical evidence,' as required by Pennsylvania law.
> *Paith v. County of Washington*, 394 Fed. Appx. 858, 861 (3d Cir. 2010) (affirming
> summary judgment on IIED claim for failure to meet this requirement) (citing
> *Kazatsky v. King David Mem'l Park, Inc.*, 515 Pa. 183, 197 (1987)).  Nowhere in
> his Second Amended Complaint has Manco pled facts that suggest that he has
> suffered from let alone has any medical evidence of the "severe" distress he alleges.
> Rather, he merely alleges in conclusory fashion that he suffered from "pain and
> suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss
> of life's pleasures." (Sec. Am. Compl. at ¶¶ 159, 169, 177, 205, 215). As such, this
> is separate grounds for dismissal of Manco's IIED claim against all defendants, as
> it has been held that things like agitation, loss of sleep, anxiety, fear, and pain and
> suffering do not amount to physical injury sufficient to sustain an IIED claim. See

> *Selig v. Sloyer*, 2014 WL 3907131, * 3-4 (Pa. Commw. Ct. Aug. 12, 2014); *Rolla v. Westmoreland Health System,* 651 A.2d 160 (Pa. Super. 1994) (sustaining demurrer to intentional infliction of emotional distress claim because plaintiff failed to allege physical injury resulting from his alleged humiliation, embarrassment, and mental anguish).

*See* ECF No. 106 at pp. 44-45.  Both of these findings are independent grounds to dismiss this claim as to Defendant Loue and these holdings should also extend to Defendant Loue because Plaintiff has failed to plead extreme and outrageous conduct as to Defendant Loue or that Defendant Loue's conduct caused severe emotional distress.

A claim for IIED requires a plaintiff to show conduct "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society."  *Kornegey v. City of Phila.*, 299 F. Supp. 3d 675, 683 (E.D. Pa. 2018).  This occurs when "the case is one in which the recitation of the facts to an average member of the community would arouse resentment against the actor, and lead him to exclaim, 'outrageous.'"  *Martin-McFarlane v. City of Phila.*, 299 F. Supp. 3d 658, 671 (E.D. Pa. 2017).  Pennsylvania courts are reluctant to find conduct so outrageous.  *Miniscalco v. Gordon*, 916 F. Supp. 478, 480-81 (E.D. Pa. 1996).  Claims for IIED are frequently dismissed for failure to meet this element.  *See Moore v. Doe*, No. 21-05302, 2022 WL 866678, at *3 (E.D. Pa. Mar. 23, 2022) (Pennsylvania courts allow recovery for IIED "only in very egregious cases.").  *See, e.g.*, *Garabedian*, 2019 WL 4885969, at *7 (dismissing IIED claim where "the statements at issue, while reprehensible, are not so extreme or outrageous as to go beyond all possible bounds of human decency."); *Ghrist v. CBS Broad, Inc.*, 40 F. Supp. 623, 626, 630-31 (W.D. Pa. 2014) (same).

In *Eck v. Oley Valley School District*, the plaintiffs, several high school students, alleged that a teacher used her position to bully and intimidate them and that their teacher attempted to encourage the plaintiffs' peers to do the same, including by making false statements about the

plaintiffs being violent and posing a threat to the school.  No. 19-1873, 2019 WL 3842399, at *8 (E.D. Pa. Aug. 15, 2019).   The plaintiffs alleged that these actions resulted in the students' suspension from school.   *Id.*   Despite these allegations of false and threatening behavior by a teacher towards her students, the *Eck* court dismissed plaintiffs' complaint holding that the allegations "do not rise to the level of 'extreme and outrageous' conduct sufficient to support a claim for [IIED]."  *Id.*   "Under Pennsylvania law, **extreme and outrageous conduct is found 'only in the most egregious situations, such as mishandling of a corpse, reckless diagnosis of a fatal disease, and having sexual contact with young children**.'"  *Id.* (emphasis added) (quoting *Cheney v. Daily News L.P.*, 654 F. App'x 578, 583-84 (3d Cir. 2016)).

In *Kessler v. Monsour*, a tenured high school teacher alleged IIED based on the following:

> Defendant Monsour ridiculed Dale Kessler's desire to spend School District funds to send students to an art competition; Dale Kessler was given an unsatisfactory job performance review on the wrong form and with inadequate observation; Dale Kessler was suspended when there were allegations of a criminal investigation by state and local police; Dale Kessler was suspended for events surrounding physical contact with a student; no hearing on the latter suspension was held; the defendant unions did not support Dale Kessler in his grievances and complaints; and the actions taken were in retaliation for Dale Kessler's exercise of his free speech rights.

865 F. Supp. 234, 241-42 (M.D. Pa. 1994).  The Court found, "[t]his conduct, whether the events are viewed singly or in combination, does not rise to the level of extreme and outrageous conduct contemplated by § 46."  *Id.* at 242 (referencing Section 46 of the Restatement (2d) of Torts).

Defendant Loue's single tweet is not so "utterly intolerable in a civilized society" and, as such, cannot support the first element of this claim.  *Kornegey*, 299 F. Supp. 3d at 683.  *See Eck*, *Kessler*, *supra*.  Further, Plaintiff's lack of competent medical evidence is fatal to this claim.

Thus, Plaintiff fails to state a claim for IIED as to Defendant Loue and dismissal of Count XI, with prejudice, is proper as to Defendant Loue.

FP 49267309.3

### G. PLAINTIFF FAILS TO STATE A CLAIM AS TO CIVIL CONSPIRACY AS TO DEFENDANT LOUE (COUNT IX)

First, if the preceding counts are dismissed, civil conspiracy should also be dismissed because such a claim is derivative of an underlying claim.  "A civil action for conspiracy requires an agreement by the conspirators to commit an unlawful act.  [A]bsent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act."  *Bartos v. MHM Corr. Servs., Inc.*, 454 F. App'x 74, 11 (3d Cir. 2011) (internal citations omitted).

Should any claims against Defendant Loue survive, Plaintiff still fails to substantively plead a claim for civil conspiracy.  To succeed, Plaintiff must show: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage."  *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987-88 (Pa. Super. Ct. 1997) (internal citations omitted).  Here, Plaintiff has failed to allege facts sufficient to support elements (1) and (2) of this claim as to Defendant Loue.  Therefore, dismissal is appropriate.  *See id.* (affirming dismissal of claim for civil conspiracy).

This Honorable Court has already dismissed the civil conspiracy claim as to all other defendants in its well-reasoned Opinion and this holding should also extend to Defendant Loue for the reasons set forth below.  *See* ECF 106 at pp. 37-40.

### a.  Plaintiff's Complaint fails to allege any unlawful act, unlawful means, or unlawful purpose by Defendant Loue.

As correctly noted by the Opinion: "Manco has entirely failed to plead that any of the defendants acted with the sole intent to injure or harm him."  *Id.* at p. 40.  Indeed, Plaintiff fails to allege any unlawful conduct that could support any cause of action, let alone for conspiracy.  It is not unlawful to express the opinion that you find someone to be racist, transphobic, or sexist.  It is certainly not unlawful for Defendant Loue to ask SJU if it plans to fire Manco for being racist,

transphobic, or sexist.  Dismissal is therefore appropriate.  *See Goodwin v. Moyer*, 549 F. Supp. 2d 621, 629 (M.D. Pa. 2006) (affirming dismissal of civil conspiracy claim for failure to plead the first element).

> **b.  The Complaint fails to allege an agreement between Defendant Loue and any person to act with a common purpose and, thus, no overt act.**

Civil conspiracy requires a showing of "a combination of two or more persons acting with a common purpose." *See Ammlung v. City of Chester,* 494 F.2d 811, 814 (3d Cir.1974).  "[T]o allege . . . civil conspiracy, a plaintiff must make factual allegations of combination, agreement, or understanding among all or between any of the defendants [or coconspirators] to plot, plan, or conspire to carry out the alleged chain of events.  It is not enough that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." *Reese*, 158 F. Supp. 3d at 292 (internal citations omitted).  "The mere fact that two or more persons, each with the right to do a thing, happen to do that thing at the same time is not by itself an actionable conspiracy." *Thompson Coal v. Pike Coal Co.*, 412 A.2d 466, 473 (Pa. 1979) (citations omitted).

Here, the Complaint is devoid of **<u>any facts</u>** suggesting that Defendant Loue worked in combination, agreement, or understanding with any other person, or that she plotted, planned, or conspired together with any other person.  The Complaint simply states that Defendant Loue posted a single tweet on Twitter directed to SJU, containing information that she knew to be false. Compl. ¶¶ 123-24.  "Mere suspicion or the possibility of guilty connection is not sufficient, nor proof of acts which are equally consistent with innocence." *Fife v. Great Atl. & Pac. Tea Co.*, 52 A.2d 24, 27 (Pa. 1947) ("It must be kept in mind that the term 'conspiracy' retains, in Pennsylvania at least, its derivative meaning of 'breathing together.' Some of the decisions in other jurisdictions seem to require but a mere pursuit of the same object to warrant a finding that a conspiracy existed,

but this is not the law in this state.").  Dismissal is therefore appropriate.  *See Goodwin*, 549 F.

Supp. 2d at 629 (affirming dismissal of civil conspiracy claim for failure to plead the first element).

Because there are not facts alleged to support that Defendant Loue worked in concert with any

other individual, it logically follows that there was also no "overt act" committed in furtherance of

a common purpose or design.

Plaintiff fails to state a claim for civil conspiracy and no amendment can cure the issues

identified.  Thus, dismissal of Count IX, with prejudice, is appropriate as to Defendant Loue.

## IV.   CONCLUSION

For the foregoing reasons, Defendant Loue respectfully requests that Counts II, VIII-XI of

Plaintiff's Complaint be dismissed, with prejudice, as to Defendant Loue.

**FISHER & PHILLIPS LLP**

*/s/ Deniz Uzel Reilly*
 Deniz Uzel Reilly, Esquire
 Two Logan Square, 12th Floor
 100 N. 18th Street
 Philadelphia, Pennsylvania 19103
 dreilly@fisherphillips.com
 *Attorney for Defendants*
 *Hadassah Colbert, Kiernan Loue, Karleigh*
 *Lopez, Erin Fahey, and Corinne McGrath*

Date:   February 14, 2024