**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GREGORY V. MANCO, Ph.D., | ; | |
| Plaintiff, | ; | |
| v. | : | CIVIL ACTION NO. 5:22-CV-00285 |
| | ; | |
| ST. JOSEPH'S UNIVERSITY, ET AL | ; | |
| Defendants | ; | |

---

**PLAINTIFF GREGORY V. MANCO'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT KIERNAN LOUE'S MOTION TO
DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

---

Plaintiff Gregory V. Manco, Ph.D. ("Plaintiff" or "Dr. Manco"), by and through his

attorneys, Zarwin Baum DeVito Kaplan Schaer & Toddy, P.C., respectfully submits this

Memorandum of Law in Support of Plaintiff's Response in Opposition to the Motion to Dismiss

the Second Amended Complaint of Defendant Kiernan Loue ("Loue" or "Moving Defendant").

For the reasons that follow, Plaintiff respectfully requests that this Honorable Court enter an Order

denying the instant Motion to Dismiss in its entirety with prejudice.

**I.     INTRODUCTION**

Defendant Loue, despite never being a student of Dr. Manco's, posted on Twitter that Dr.

Manco, "…has done noting but contribute to a hostile learning environment with his racism,

sexism and transphobia…"  In turn, Defendant St. Joe's responded to her tweet, stating, "Saint

Joseph's continues to strive to be a welcoming, diverse, and inclusive community.  The University

Acts quickly to investigate reports of bias, harassment, and other incidents."

Loue files this Instant Motion to Dismiss following this Honorable Court's January 25,

2024 Order, wherein this Court held that Plaintiff had sufficiently pled in their Second Amended

Complaint their claims of Defamation, False Light, and Tortious Interference against the

individual former St. Joe's student Defendants.   Despite that, Loue regurgitates the same arguments made by those same Defendants that this Court already determined were meritless.

Additionally, Loue has unsuccessfully tried to remove herself from this litigation previously when she attempted to argue Plaintiff had failed to properly serve her.  Despite her claims that she was never served with this lawsuit, Loue was able to retain counsel.

In the instant Motion to Dismiss, Loue, like many of the other individual defendants in this case, claims that her report to SJU is protected by judicial privilege. It is not. Nowhere in the Second Amended Complaint does Plaintiff allege that Loue's tweet, on a public forum, was meant to initiate a quasi-judicial proceeding against Dr. Manco. This alone is fatal to Loue's already suspect defense. For these reasons, and if nothing else, there is a material dispute of fact that precludes the dismissal of Plaintiff's claims at this stage in the proceedings.

Moving Defendant's efforts to dismiss Plaintiff's individual claims against her are equally lackluster and unpersuasive. First, Loue's arguments in favor of the dismissal of Plaintiff's defamation claim asserted against her are insufficient insofar as Plaintiff alleges the requisite elements to assert a *prima facie* claim for relief, including, among other things, that Loue's defamatory statements about Dr. Manco were knowingly false and made with malice.

Second, Moving Defendant's efforts to dismiss Plaintiff's false light invasion of privacy claim also misses the mark.  Plaintiff's claim should survive dismissal at this early stage in the proceedings because the statement she made about Dr. Manco would be highly offensive to any reasonable person. Further, her contention that Plaintiff's claim must fail because he failed to plead *malice* in the Second Amended Complaint, frankly, defies logic. The Second Amended Complaint is a 254-paragraph dissertation of all the malicious acts these defendants, including Moving Defendant, carried out in an effort to ruin Plaintiff's life.

Turning to Plaintiff's tortious interference claim against Moving Defendant, the Court should reject Loue's arguments to dismiss this claim due to the well-pled allegations in the Second Amended Complaint. Plaintiff alleges in his Second Amended Complaint that Loue acted intentionally and, further, that her actions were carefully designed to facilitate Dr. Manco's termination from SJU. As such, Plaintiff has alleged sufficient facts to establish a *prima facie* claim for relief, and those facts must be accepted as true for purposes of the instant motion.

Finally, Plaintiff has alleged a viable cause of action for civil conspiracy against Moving Defendant. Plaintiff adequately alleges in the Second Amended Complaint that Loue participated in the scheme with the other defendants, all of whom worked toward the common goal of *canceling* Dr. Manco. More specifically, and as alleged in the Second Amended Complaint, Loue personally acted in furtherance of the civil conspiracy when she spread misinformation about Dr. Manco on social media. Her efforts in this regard allowed SJU to vilify, cancel, and otherwise ruin Dr. Manco.[1]

## II.      COUNTERSTATEMENT OF FACTS

Moving Defendant, a recent alumna of SJU, was never a student of Dr. Manco. (Doc. 51, ¶124). Despite that, on February 25, 2021, in response to a tweet from SJU's twitter account which read, "Today is the Saint Joseph's Annual Day of Dialogue.  Follow along in the conversations all day using #SJUDialogue and check your sessions here[,]" Loue responded, "but are you gonna fire Greg Manco who has done nothing but contribute to a hostile learning environment with his racism, sexism, and transphobia?" (Doc. 51, ¶123).  SJU then responded to her tweet, stating, "Saint's Joseph's continues to strive to be a welcoming, diverse and inclusive community.  The University acts quickly to investigate reports of bias, harassment and other incidents."  (*Id.*).

---

[1] In light of the Court's January 25, 2024 Order, Plaintiff will not be responding to Loue's argument regarding their IIED claim and concedes this claim will not be moving forward.

Despite having no first hand experience inside of Dr. Manco's classroom, Loue made these baseless accusations on a public forum without any regard for how they would impact Dr. Manco's professional and personal lives.

### III.     LEGAL ARGUMENT

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), courts must accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. *United States ex rel. Bergman v. Abbot Labs.*, 995 F. Supp. 2d 357, 363-64 (E.D. Pa. 2014) (Jones II, J.). Under the Federal Rules, the resolution of a motion to dismiss is confined to the sufficiency of the allegations in the complaint or, in this particular case, the Second Amended Complaint. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) (holding that to survive a motion to dismiss, a plaintiff must aver only "enough facts to state a claim to relief that is plausible on its face."). Unlike at trial, a plaintiff opposing a Fed. R. Civ. P. 12(b)(6) motion to dismiss need not prove the allegations in the complaint. *In re Dreyfus Mut. Funds Fee Litig.*, 428 F. Supp. 2d 342, 346 (W.D. Pa. 2005). Accordingly, all that matters for purposes of Moving Defendant's instant Motion to Dismiss is that the Seconded Amended Complaint as pled is plausible in the absence of proof. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although Plaintiff has abundant proof, this is not the motion to proffer it.

### A.     Loue's Report to SJU is Not Protected by Judicial Privilege

Loue argues her report to SJU is protected by judicial privilege and thus cannot serve as the basis for any of Plaintiff's claims. Loue's argument is without merit. This Court has previously held that the quasi-judicial privilege does not apply to private grievance procedures at universities that do not involve a government actor. *See Overall v. Univ. of Pa.*, 412 F.3d 492, 498-99 (3d Cir.

2005) (Alito, J.). Alternatively, it is premature to make a determination on Loue's intentions when tweeting at SJU's Twitter account, thereby precluding the privilege from applying at this stage in the proceedings. *See Weinik v. Temple Univ. of the Comm. Sys. of Higher Educ.*, No. 19-350, 2020 U.S. Dist. LEXIS 121340 at *14 (E.D. Pa. July 10, 2020) (Goldberg, J.) (finding it was premature at the motion to dismiss stage to determine if statements were made with the intent to initiate a quasi-judicial process based off the language of the Complaint).

Under Pennsylvania law, "…statements made by judges, attorneys, witnesses and parties in the course of or pertinent to any stage of judicial proceedings are absolutely privileged, and therefore cannot form the basis for liability for defamation." *Id.* at *14. That same privilege has been extended to quasi-judicial proceedings, which are defined as "…**any hearing before a tribunal which performs a judicial function**, including many **administrative officers, boards, and commissions**, so far as they have the powers of discretion in applying the law to the facts which are regarded as judicial or quasi-judicial in character." *Id.* at *14-15 (emphasis added). Additionally, "…government involvement is also a necessary condition for affording quasi-judicial status to grievance procedures." *Id.* at *15 (citing *Overall*, 412 F.3d at 497). It is Moving Defendant's duty to establish that the quasi-judicial privilege applies by establishing "(1) the allegedly defamatory statements were issued during the regular course of judicial proceedings **and** (2) the statements were pertinent and material to those proceedings." *Id*. (emphasis added). "In order to determine whether an individual is entitled to quasi-judicial immunity, [the Court] must [also] examine the nature of the actions complained of to ascertain whether they were performed within the quasi-judicial adjudicatory function." *Id*. at *21.

The reliance Loue places on *Fogel v. Univ. of the Arts*, No. 18-5137, 2019 U.S. Dist. LEXIS (E.D. Pa. Mar. 27, 2019) (Kearney, J.), and *Schanne v. Addis*, 121 A.3d 942 (Pa. 2015) is

misplaced. In *Fogel*, Judge Kearney, relying on *Schanne*, discussed how public policy favored affording absolute privilege to those initiating quasi-judicial proceedings when alleging sexual misconduct. *Fogel*, 2019 U.S. Dist. LEXIS at *26.[2] Other than *Fogel* and *Schanne*, Loue cites no other case that has held that the privilege applies in the context of private university proceedings that do not involve allegations of sexual misconduct. (Doc. 62, pp. 4-6).

Consistent with Justice Alito's holding in *Overall*, public-policy considerations disfavor Moving Defendant's statements about Plaintiff from being privileged in this case. This is true because SJU's Interim Policy failed to provide any of the safeguards (*i.e.*, a hearing, sworn testimony, a binding decision, etc.) routinely afforded in a governmental proceeding. *Overall*, 412 F.3d at 498. Instead, and as pled in the Second Amended Complaint, SJU's investigation, after meeting with Dr. Manco to inform him that he was being placed on administrative leave, consisted of hiring an outside investigator, who in turn interviewed Dr. Manco. (Doc. 51, ¶¶73-77). There is nothing in Plaintiff's Second Amended Complaint that alleges, or even suggests, that any hearing took place as part of the workplace investigation, let alone a hearing complex or involved enough to meet the definition of a "quasi-judicial proceeding." Further, Loue's comments were made on Twitter, a public forum, almost a week after Dr. Manco was placed on administrative leave. (Id., ¶¶59-61). Thus, Loue's tweet could not have been intended to initiate a quasi-judicial proceeding as Dr. Manco was already placed on leave. It follows that Loue's comments are not to this privilege.

---

[2] In *Schanne*, on appeal, the Third Circuit certified a single question for the Pennsylvania Supreme Court: "Does the absolute judicial privilege apply to an allegation of sexual misconduct against a teacher by a former student, which allegation was made prior to the commencement of any quasi-judicial proceeding and without an intent that the allegation lead to a quasi-judicial proceeding?" *Schanne*, 121 A.3d at 945. Thus, their holding was based on the narrow issues of sexual misconduct allegations.

**B.**     **Plaintiff Has Made a *Prima Facie* Case of Defamation**

Loue contends that her public comments, without context, that Dr. Manco was racist, sexist, and transphobic, despite never having him as a teacher, are not defamatory. However, Plaintiff has sufficiently pled a claim for defamation in his Second Amended Complaint. *See Bell Atlantic Corp.,* 127 S.Ct. at 1974; *Ashcroft*, 129 S.Ct. at 1947.

**1.     Standard of Law**

To succeed on a claim for defamation under Pennsylvania law, Dr. Manco must prove the following seven (7) elements:

(1) The defamatory character of the communication;
(2) Its publication by the defendant;
(3) Its application to the plaintiff;
(4) The understanding by the recipient of its defamatory meaning;
(5) The understanding by the recipient of it as intended to be applied to the plaintiff;
(6) Special harm resulting to the plaintiff from its publication; and
(7) Abuse of a conditionally privileged occasion.

42 Pa. C.S. § 8343(a). "A statement is defamatory if it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating with him." *Shadle v. Nexstar Broad. Group, Inc.*, No. 3:13-CV-02169, 2014 U.S. Dist. LEXIS 98876 at *10 (M.D. Pa. July 21, 2014) (Mariani, J.). (quoting *Tucker v. Fischbein*, 237 F.3d 275, 283 (3d. Cir. 2001)). It is a question of law for this Court to determine if a statement is capable of defamatory meaning. *Byars v. Sch. Dist. of Philadelphia*, 942 F.Supp. 2d 552, 564 (E.D. Pa. 2013) (Goldberg, J.). When determining if a statement can be defamatory, the court must examine it in its context and must "evaluate the effect it is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it was intended to circulate." *Tucker*, 237 F.3d at 282 (quoting *Corabi v. Curtis Publ'g Co.*, 273 A.2d 899, 904 (Pa. 1971)).

In factually analogous previous cases, this Court has adopted the doctrine of "defamation by implication" which occurs when "the defendant juxtaposes [a] series of fact[s] so as to imply a defamatory connection between them, or [otherwise] creates a defamatory implication…he may be held responsible for the defamatory implication, unless it qualifies as an opinion, even though particular facts are correct." *Shadle*, 2014 U.S. Dist. LEXIS 98876 at *14 (quoting *Fanelle v. LoJack Corp.*, No. 99-4292, 2000 U.S. Dist. LEXIS 17767 at *3 (E.D. Pa. Dec. 7, 2000) (Reed Jr., J.). Importantly, where, "there is a innocent [sic] interpretation and an alternative defamatory interpretation, the issue must proceed to the jury." *Franklin Prescriptions, Inc. v. New York Times Co.*, 267 F.Supp. 2d 425, 434 (E.D. Pa. 2003) (citing *Tucker v. Merek & Co., Inc.*, No. 02-2421, 2002 U.S. Dist. LEXIS 23062 at *18 (E.D. Pa. Dec. 2, 2002) (Giles, J.). It is not enough to argue that a statement is an opinion even if the statement provides context when the facts surrounding the statement are, "either incorrect or incomplete, or if [the speaker's] assessment of them is erroneous." *Milkovich v. Lorain Journal Co.*, 110 S.Ct. 2695, 2706 (1990) (holding a speaker is not immune from liability by arguing a statement is an opinion).

This Court was recently faced with a similar situation in *Goldfarb v. Kalodimos*, 539 F. Supp. 3d 435 (E.D. Pa. 2021) (Slomsky, J.). In *Goldfarb*, the defendant defamed a former teaching colleague on Twitter and alleged that the plaintiff had attempted to silence students from discussing sexual and racial harassment at the University of Pennsylvania Medical School. *Id* at. 444-46. While the defendant attempted to argue that his tweets were not defamatory because they disclosed truthful facts, as Loue has done here, this Court disagreed and held that the tweets were actionable. *Id*. at 455. In its holding, the *Goldfarb* Court relied on the Third Circuit's distinction between actionable and non-actionable opinions:

> Although there may be no such thing as a false opinion, an opinion which [sic] is
> unfounded reveals its lack of merit when the opinion-holder discloses the factual

basis for the idea. If the disclosed facts are true and the opinion is defamatory, a listener may choose to accept or reject it on the basis of an independent evaluation of the facts. However, if an opinion is stated in a manner that implies that it draws upon unstated facts for its basis, the listener is unable to make an evaluation of the soundness of the opinion.

*Id*. at 457 (quoting *Redco Corp. v. CBS, Inc*., 758 F.2d 970, 972 (3d Cir. 1985). In reviewing the five (5) tweets at issue in *Goldfarb* and applying this distinction, the Court discussed how, in the context of a tweet discussing events that happened in the classroom, it can be interpreted by a reader who was not present in the classroom as being susceptible to defamatory meaning. *Id*. at 459-60.

### 2.     A Reasonable Person Would Find the Postings Are Either False Statements or Opinions Based on Undisclosed Facts.

Loue contends that Plaintiff has failed to allege the defamatory character of her communications with respect to Dr. Manco and its application to him. However, as Judge Goldberg noted in *Goldfarb*, context matters. *Id*. at 457-60. Thus, the defamatory statement Loue made about Dr. Manco was rooted on false statements or opinions based on undisclosed facts.  Thus, Plaintiff has set forth a *prima facie case* of defamation based on the plain language of the Second Amended Complaint.

Consistent with this Honorable Court's decision in *Goldfarb*, Loue's tweet is defamatory insofar as it was premised on events that may or may not have happened inside of Dr. Manco's classroom and are thus susceptible of a defamatory meaning. Loue, who, once again, never had Dr. Manco as a professor and lacks any first-hand knowledge of his classroom behavior, provided absolutely no context whatsoever as to why she made this statement, meaning anyone who read her tweet could – and likely did -- interpret them as factual as opposed to not merely opinions. Accusing anyone, let alone a college professor who interacts with students of all races and genders,

of being racist, sexist and transphobic would lead people to believe that Dr. Manco exhibited unlawful bias in his classroom.

As Plaintiff pled in his Operative Complaint, the accusations levied against Dr. Manco are devoid of a basis in law or fact. Dr. Manco had received positive feedback from students and administrators since he began teaching at SJU in 2005. (Doc. 51, ¶38). From 2005 through January 2021, at no point was Dr. Manco ever accused of exhibiting bias inside or outside his classroom. (*Id*., ¶48). While Loue disingenuously attempts to manipulate the facts in her favor throughout her moving papers, the actual, verifiable facts and accompanying context do not support her contentions. *See Goldfarb*, 539 F. Supp. 3d at 457 ("Although there may be no such thing as a false opinion, an opinion which is unfounded reveals its lack of merit when the opinion-holder discloses the factual basis for the idea. If the disclosed facts are true and the opinion is defamatory, a listener may choose to accept or reject it on the basis of an independent evaluation of the facts. However, if an opinion is stated in a manner that implies that it draws upon unstated facts for its basis, the listener is unable to make an evaluation of the soundness of the opinion."). Therefore, Loue cannot shield herself from liability by claiming that her statements were either opinions or based on facts and thus not actionable.

Moreover, Moving Defendant's second argument in favor of dismissal, which would require this Court to determine whether Dr. Manco is a limited-purpose public figure or a private figure, fails as a matter of law given the matter is still in the early stages of proceedings. Contrary to Moving Defendant's postulations in her moving papers, it is improper for this Court at this stage in the proceedings to determine Dr. Manco's status as a public or private figure. *Goldfarb*, 539 F. Supp. at 455 (holding on a motion to dismiss that a determination of whether an individual is a public or private figure should not be decided until the record is more fully developed); *see also*

*Woods Servs. v. Disability Advocates, Inc.*, No. 18-296, 2018 U.S. Dist. LEXIS 77752, *6 (E.D. Pa. May 9, 2018) (Baylson, J.). Rather, the law in this District is clear that such a determination is not proper until discovery has been exchanged. *Id*.; *Woods Servs.*, 2018 U.S. Dist. LEXIS 77752 at *6. Based on the foregoing, Loue's argument for dismissal is premature or otherwise not yet ripe for adjudication. *See id.*

Accordingly, and consistent with its holding in *Goldfarb*, this Honorable Court must find that Loue's statement on Twitter about Dr. Manco is susceptible of a defamatory meaning and therefore actionable under the law. *See id*. at 457-60.

## C.    Plaintiff Has Adequately Alleged a *Prima Facie* Claim for False Light Invasion of Privacy

To allege a claim for false light invasion of privacy, Plaintiff must show that a person or entity published material "that is not true, is highly offensive to a reasonable person, and is publicized with knowledge or in reckless disregard of falsity." *Shadle v. Nexstar Broad. Group, Inc.,* 2014 U.S. Dist. LEXIS 98876, *28 (M.D. Pa. July 21, 2014). Here, Plaintiff's false light claim must survive dismissal. It is abundantly clear that a reasonable person could understand Loue's public tweet to mean that Dr. Manco was "racist, sexist and transphobic."

In *Graboff v. Colleran Firm*, 744 F.3d 128, 136 (3d. Cir. 2014), the Court of Appeals held that a plaintiff can establish falsity "by showing that a defendant selectively printed or broadcast true statements or pictures in a manner which created [a] false impression." *Id*. The *Graboff* Court further held that "…even where a publication is literally true, discrete presentation of information in a fashion which renders the publication susceptible to inferences casting on in a false light entitles the grievant to recompense for the wrong committed." *Id*. at 136-37. Like the plaintiff's defamation claim, the *Goldfarb* Court held that the plaintiff's false light invasion of privacy claim had been properly pled. *Goldfarb*, 539 F. Supp. 3d at 462-63. In so holding, the *Goldfarb* Court

11

reasoned that even if the defendant's tweets were true, "the discrete presentation with which [the defendant] provided information on [the undisclosed facts gave] rise to a susceptible inference of presenting [the plaintiff] in a false light." *Id.* at 462. Further, the *Goldfarb* Court reaffirmed the prior holding from the *Graboff* Court that even a true statement can allow for a false light claim when it is "broadcast in a way that creates a false impression." *Id.* at 463 (citing *Graboff*, 744 F.3d at 136).

Thus, Plaintiff has set forth sufficient facts to establish a *prima facie* claim for false light invasion of privacy against Loue. A jury could find, and as pled in the Second Amended Complaint, that Loue's statement was knowingly false when she made them. Further, accusing an individual of being a "racist" could be found to be highly offensive to a reasonable person. *See McCafferty v. Newsweek Media Grp., Ltd.,* 955 F.3d 352, 358 (3d Cir. 2020); *MacElree v. Philadelphia Newspapers*, 674 A.2d 1050, 1055 (Pa. 1996) (holding a statement accusing an individual of being racist can be actionable where the individual's reputation, based on said statement, could be lowered in the community or deter third parties from associating with him)). As Plaintiff has sufficiently set forth a prima facie claim of false light, written discovery is necessary to determine how widespread Loue's allegations concerning Dr. Manco were on campus.

### D. Plaintiff Has Adequately Pled a *Prima Facie* Claim for Tortious Interference

To establish a cause of action for intentional interference with an existing or prospective contract, a plaintiff must show:

(1) the existence of a contractual, or prospective contractual relation between the plaintiff and a third party;
(2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring;
**(3) the absence of privilege or justification on the part of the defendant;** and
(4) the occasioning of actual legal damage as a result of the defendant's conduct.

*Crivelli v. GMC*, 215 F.3d 386, 394 (3d Cir. 2000) (emphasis added).

Here, Loue argues Plaintiff failed to satisfy the third element of his claim. (Doc. 112-1,

p.14).   Moving Defendant's arguments are unpersuasive for myriad reasons. For starters, and as

discussed in detail above, Loue's defamatory communications are not subject to judicial privilege.

Furthermore, Plaintiff alleges repeatedly throughout the Second Amended Complaint that the

allegations levied against him by Loue's publicly were demonstrably false.  (Doc.51, ¶¶123-24).

This Court has previously held that the third element of a tortious interference claim was

sufficiently pled when, as here, the plaintiff alleged that the defendants were personally motivated

to get them fired, which in turn interfered with the plaintiff's employment contract, and that the

defendant's actions were retaliatory in nature. *See Hall v. Easton Area Sch. Dist.*, No. 10-7603,

2012 U.S. Dist. LEXIS 20695 (E.D. Pa. Feb. 17, 2012) (Goldberg, J.) (denying the defendant's

12(b)(6) motion to dismiss for failure to state a claim).

Reviewing the allegations in the Second Amended Complaint in the light most favorable

to Plaintiff while applying this Court's holding in *Hall*, Plaintiff alleges in the Second Amended

Complaint that Moving Defendant, perhaps incensed by SJU's egregious mishandling of similar

incidents on campus in the past, was without question personally motivated to get Dr. Manco fired,

which in turn not only interfered with his employment contract but soured his entire longstanding

and otherwise incident-free 16-year employment relationship with SJU. Like the defendant in *Hall*,

Loue's actions in this regard were undoubtedly retaliatory in nature. *See id.* at *23-24; (Doc. 51,

¶57). Simply put, Loue was out for blood, and she made it her mission to ensure that SJU held Dr.

Manco to account and disciplined for his alleged *crimes against humanity – i.e.*, his political

dissidence*. (Doc. 51, ¶57). Finally, as pled in Plaintiff's Second Amended Complaint, Loue's

efforts paid dividends not only because SJU terminated his employment but also because he is, for

all intents and purposes, now unemployable. (*Id.*, ¶¶103, 220-25). Thus, Plaintiff has set forth a sufficient cause of action for tortious interference with respect to Loue and the claim can proceed forward.

### E.        Plaintiff Has Adequately Pled a *Prima Facie* Claim of Civil Conspiracy

To set forth a claim for civil conspiracy, a plaintiff must set forth the following elements: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damages." *Meyer v. Del. Valley Lift Truck, Inc.*, 392 F. Supp. 3d 483, 496 (E.D. Pa. 2019). Plaintiff must also prove malice, which in this context requires, "the conspirators act with the sole purpose of injuring the plaintiff." *Williams v. Roc Nation, LLC*, No. 20-03387, 2020 U.S. Dist. LEXIS 195173 at \*19 (E.D. Pa. Oct. 21, 2020) (Robreno, J.).

Moving Defendant contends that Plaintiff has failed to satisfy elements one and two. (Doc. 62, pp. 22-24). This Court has held that a motion to dismiss fails where a plaintiff has pled that two or more people engaged in an online campaign with the intent to injure a person's reputation and discourage others from engaging in contractual relations with them. *See Cannella v. Brennan*, No. 12- 1247, 2014 U.S. Dist. LEXIS 107944 at \*37-39 (E.D. Pa. Aug. 5, 2014) (Joyner, J). Plaintiff details in the Second Amended Complaint how Loue conspired with SJU and the alumnae defendants to harm Dr. Manco's reputation with the goal of having him removed from the university. (Doc. 51, ¶¶46-58; 216-219). Plaintiff discussed in painstaking detail the timeline of events that transpired beginning with Colbert's initial email SJU. Plaintiff further alleges verifiable facts with respect to SJU violating its own policies and procedures, specifically the Interim Policy, and how SJU and Colbert and conspired to strengthen her claims by encouraging Colbert to solicit

14

bias reports from other current students and former students, including Loue. (*Id.*, ¶¶51-54). As stated above, the conspiracy between Loue and SJU is ongoing, as SJU is paying for Loue's legal defense. (*Id.*, ¶¶156-57). Thus, consistent with this Court's decision in *Canella*, Plaintiff has sufficiently pled their civil conspiracy claim. *Cannella,* 2014 U.S. Dist. LEXIS 107944 at *37-39.

## IV.    CONCLUSION

Plaintiff Gregory v. Manco, Ph.D. respectfully requests that this Honorable Court enter the attached Order denying Defendant Kiernan Loue's Motion to Dismiss in its entirety with prejudice.

Respectfully submitted,

**ZARWIN, BAUM, DeVITO,
KAPLAN, SCHAER & TODDY, P.C.**

Dated: February 23, 2024            By: _____
JOSEPH M. TODDY, ESQ.
JOHN P. McAVOY, ESQ.
SCOTT ZLOTNICK, ESQ.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GREGORY V. MANCO, Ph.D., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :     CIVIL ACTION NO. 5:22-CV-00285 |
| | : |
| ST. JOSEPH'S UNIVERSITY, | : |
| HADASSAH COLBERT, KIERNAN | : |
| LOUE, LYNLY CARMAN, KARLEIGH | : |
| LOPEZ, ERIN FAHEY, DR. SUSAN | : |
| LIEBELL, CORRINE MCGRATH AND | : |
| DR. CHERYL MCCONNELL | : |
| | : |
| Defendants. | : |

I, John P. McAvoy, Esq. hereby certify that I made this document available for viewing by

all registered users of this Court's ECF system, including:

> Leslie Miller Greenspan, Esq.
> Tucker Law Group
> 1801 Market Street, Suite 2500
> Philadelphia, PA 19103
> *Attorney for Defendants, St. Joseph's*
> *University and Dr. Cheryl McConnell*
>
> Deniz Uzel Reilly, Esq.
> Fisher & Phillips LLP
> 100 N. 18th Street, 12th Floor
> Philadelphia, PA 19103
> *Attorney for Defendants, Hadassah Colbert, Kiernan Loue,*
> *Karleigh Lopez, Erin Fahey and Corrine McGrath*
>
> Kristen Lizzano, Esq.
> March, Hurwitz & DeMarco
> 1100 North Providence Road
> Media, PA 19063
> *Attorney for Defendant, Lynly Carman*

**ZARWIN, BAUM, DeVITO,
KAPLAN, SCHAER & TODDY, P.C**.

/s/ John McAvoy
John McAvoy, Esq.
2005 Market Street, 16th Floor
Philadelphia, PA  19103
215.569.2800; Fax  215.569.1606
Attorneys for Plaintiff
jmcavoy@zarwin.com

Dated:  February 23, 2024