UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREGORY V. MANCO, Ph.D., : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : CIVIL ACTION NO. 5:22-CV-00285 <br> ST. JOSEPH'S UNIVERSITY, ET AL. : <br> : <br> Defendants. : | |

### REPLY BRIEF IN FURTHER SUPPORT OF THE MOTION OF DEFENDANT KIERNAN LOUE TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Per the Second Amended Complaint (the "Complaint"), Kiernan Loue posted a ***single Tweet*** on February 25, 2021, asking Saint Joseph's University ("SJU") if it was going to fire Plaintiff for contributing to a hostile learning environment with his racism, sexism, and transphobia. For engaging in this lawful action, Plaintiff seeks to hold Loue liable for defamation, false light, tortious interference with contract, and civil conspiracy[1]. In opposing Loue's Motion to Dismiss ("Loue's Motion"), Plaintiff fails to address the factual and legal inadequacy of his claims. Instead, Plaintiff's Opposition suggests that Loue should be viewed in a vacuum with the other student defendants and that this Court should reach the same conclusion on the claims raised against Loue that it did with the other student defendants. *See* ECF 120 (hereinafter "Manco Opp.") at pp. 1-2. However, this approach is not appropriate. Loue's claims are tied to her own personal speech and the claims against her should be assessed separately and distinctly. The January 25, 2024 Opinion of this Court appropriately gave separate and distinct consideration to all of the speech at issue in this matter and did not specifically assess the speech engaged in by Loue or the individual claims raised against her based on that speech. Thus, the substantive claims

---

[1] Defendant Loue does not address Plaintiff's claim for intentional infliction of emotional distress because Plaintiff has abandoned that claim as to Defendant Loue. *See* Manco Opp. at p. 3, n. 1.

raised against Loue are brought before this Court for the first time in the instant motion.[2]

The Complaint should be dismissed in its entirety as to Loue for the reasons that follow.

## I. LOUE'S STATEMENT ENJOYS ABSOLUTE PRIVILEGE

Plaintiff argues that Loue's statements are not entitled to judicial privilege because: (1) the Complaint doesn't allege that Loue intended to initiate a quasi-judicial proceeding; (2) it is premature to determine if Loue's statements were made with the intent to initiate a quasi-judicial process; (3) the quasi-judicial privilege does not apply to private grievance procedures at universities that do not involve a government actor; (4) reliance on *Fogel* and *Schanne* is misplaced; and (5) Plaintiff was not provided with procedural safeguards that are routinely afforded in a governmental proceeding and quasi-judicial proceeding. However, none of these arguments can defeat Defendant Loue's well-plead arguments for the reasons that follow.

1. **It can be gleaned from the Complaint that Loue's statements were intended to initiate a quasi-judicial proceeding.**

Plaintiff's first two arguments are disingenuous, even when considering the Complaint in the light most favorable to Plaintiff. Plaintiff asks us to believe that Loue was acting with the goal of interfering with Plaintiff's employment, but ***not*** to initiate a quasi-judicial proceeding. This does not logically follow, and Plaintiff cannot have it both ways. Instead, Plaintiff's allegations against Loue in the Complaint can be read logically as asserting that Loue intended to have SJU look into her allegations and initiate a quasi-judicial proceeding against Plaintiff. *See* Loue Mot. at pp. 5-7. There is no further discovery that needs to be done to glean Loue's intent.

Even if this Court finds that Loue lacked the intent to initiate a quasi-judicial proceeding

---

[2] Of interest, Plaintiff's currently proposed Third Amended Complaint does not include a single new fact against Defendant Loue, so whether the Court grants leave for Plaintiff to amend the Second Amended Complaint should have no bearing on the relief sought by Defendant Loue in the instant Motion.

against Plaintiff, Pennsylvania law would still extend absolute privilege to her statements. *See Schanne v. Addis*, 121 A.3d 942, 949 (Pa. 2015). As explained in *Schanne*, "[w]here a declarant has no intention of initiating proceedings or otherwise obtaining a remedy, clothing his or her statement with immunity cannot serve this goal." *Id*. Gratuitous statements may not implicate privilege, but those seeking a consequence do. Loue specifically asked SJU if it was going to fire Plaintiff. Plaintiff claims a wide-ranging conspiracy by Loue and many others who had the alleged objective of terminating his employment. Indeed, Plaintiff asserts that Loue's statement was ***meant*** to obtain a remedy in the form of his termination. Compl. ¶ 222 (". . . Loue . . . engaged in activities, as described above, to have Dr. Manco suspended and his contract terminated."). Even if Loue did not intend to initiate proceedings, the fact that she spoke out to obtain a remedy affords an adequate justification for treating her statements as privileged. Thus, applying judicial privilege to Loue's statement serves a strong public policy objective of "incentivizing individuals to speak freely within a judicial (or quasi-judicial) context…" *Schanne*, 121 A.3d at 949.

Plaintiff asserts that because Loue's comments were made almost a week after Plaintiff was placed on administrative leave, she could not have intended to initiate a quasi-judicial proceeding as Plaintiff was already on leave. However, this argument is unpersuasive as this Court has already found that the communications that Defendant Lopez and Defendant Fahey had with SJU were judicially privileged, even though those submissions were made after Defendant Colbert purportedly initiated the quasi-judicial proceeding. *See* ECF No. 107 at pp. 27-29.

2. **Quasi-judicial proceedings can occur at private universities.**

Plaintiff's third and fourth arguments suggest that because SJU is a private university and there is no government actor, there can be no quasi-judicial proceeding. In making this argument, Plaintiff ignores this Court's January 25, 2024 holding that "Plaintiff misconstrues *Overall v. Univ.*

3

*of Pa.*, as that case states that 'Pennsylvania cases finding quasi-judicial privilege consistently involve proceedings before federal, state, or local governmental bodies, or **proceedings held pursuant to a statute or administrative regulation.'** . . . The limitation set forth in *Overall* does not apply quasi-judicial immunity only to communications to government actors, rather it also covers communications that commence proceedings pursuant to Title IX or other federal statutes." ECF 107 at p. 22 (emphasis in original). Further, in *Boye v. McCarthy*, the Pennsylvania Superior Court recognizes that the *Overall* decision overlooked key Pennsylvania state court precedent that expressly allowed the quasi-judicial privilege to extend to the private colleges and therefore found that *Overall* was not persuasive authority. 238 A.3d 381, *4-*6 (Pa. Super. Ct. 2022) (citing *Beckman v. Dunn*, 419 A.2d 583, 587 (Pa. Super. 1980)).

Plaintiff's argument also improperly sets aside the on-point precedent established in *Fogel v. University of the Arts*, which squarely demonstrates that the fact that SJU is a private institution holds no bearing to this assessment. No. 18-5137, 2019 WL 1384577, at *10 (E.D. Pa. Mar. 27, 2019). *See also Ralston v. Garabedian*, No. 19-1539, 2021 WL 6072881, at *11 (E.D. Pa. Dec. 23, 2021) (recognizing that a Title IX investigation is quasi-judicial because it involves an administrative body with discretionary decision-making authority). Despite Plaintiff's assertion to the contrary, the *Fogel* and *Schanne*[3] decisions are directly on point relating to these issues.

---

[3] Plaintiff incorrectly interprets the question certified by the Third Circuit for the Pennsylvania Supreme Court on appeal in *Schanne*. The question, "Does the absolute judicial privilege apply to an allegation of sexual misconduct against a teacher by a former student, which allegation was made prior to the commencement of any quasi-judicial proceeding and without an intent that the allegation lead to a quasi-judicial proceeding?", was intended to settle whether an alleged defamatory statement is required to be part of a larger plan to initiate a (quasi-)judicial proceeding to qualify for the absolute judicial privilege. The operative piece of the question was the *intent* behind the statement, *not* the type of misconduct being reported. The Third Circuit summarized the Pennsylvania Supreme Court's answer as "holding that the judicial privilege did not protect . . . statements made prior to the commencement of any quasi-judicial proceeding." *Schanne*, 615 F. App'x 759. Further, the Eastern District of Pennsylvania in *Fogel* also made no mention of sexual misconduct in its summary of and reliance on *Schanne*. Instead, the *Fogel* court explained the

3. **Plaintiff improperly conflates the question of whether the proceedings were quasi-judicial with the question of due process.**

Plaintiff's fifth argument challenges whether SJU's investigation was a quasi-judicial proceeding because it purportedly lacked procedural safeguards and deprived him of due process. Manco Opp. p. 6. In doing so, Plaintiff essentially complains that the investigative process was a sham, as in *Weinik v. Temple University of the Commonwealth System of Higher Education*, 19-0350, 2020 WL 3892963, at *8 (E.D. Pa. July 10, 2020). However, that argument, as explained by this Court, conflates the question of whether the proceedings were quasi-judicial with the question of due process. *See Weinik*, 2020 WL 3892963, at *8 (explaining that lack of due process has no bearing on whether the proceeding itself was quasi-judicial for purposes of the quasi-judicial privilege). The issue of whether Plaintiff was afforded due process throughout the investigation does not detract from the quasi-judicial character of the investigation itself. Since Loue's statements were made in connection with SJU's quasi-judicial investigation into Plaintiff, her statements are entitled to judicial privilege. *See* Loue Mot. pp. 5-7.

## II.   LOUE'S STATEMENT CANNOT SUPPORT A DEFAMATION CLAIM

Loue moves to dismiss the defamation claim because her statement does not hold a defamatory meaning and, as a limited purpose public figure, Plaintiff has failed to plead actual malice[4]. Plaintiff advances three arguments in opposition. First, he argues Loue's statement was

---

Pennsylvania Supreme Court's holding that "the privilege's application to statements made before the commencement of an investigation helps incentivize individuals to speak freely in seeking to initiate judicial or quasi-judicial proceedings," and distinguished *Schanne* from cases where "statements were made in a directed effort to initiate proceedings or otherwise obtain relief from school officials for harm stemming from a school employee's alleged misconduct." *Fogel*, 2019 WL at *9. Again, these decisions do not hinge on the nature of the misconduct being reported. The clearly stated intent of the privilege is to protect and incentivize statements regarding misconduct that are made with the intent to initiate further proceedings.

[4] Besides conclusory statements indicating that the Complaint detailed the malicious acts that all Defendants engaged in, Plaintiff's Opposition fails to meaningfully to address Loue's argument that Plaintiff has failed to plead facts specific to her that sufficiently establish *actual malice*.

defamatory because it was based on undisclosed facts, relying on *Goldfarb v. Kalodimos*, 539 F. Supp. 3d 435 (2021). Second, he argues Loue's statements are not verifiably true. Finally, he argues that it is premature for this Court to make a decision as to whether Plaintiff is a limited purpose public figure. Plaintiff's arguments cannot withstand Loue's Motion.

### 1. Loue's statement is not capable of defamatory meaning.

Plaintiff's reliance on *Goldfarb* is misplaced. In *Goldfarb*, this Court assessed five tweets to determine whether they were capable of defamatory meaning and found that four were capable of defamatory meaning and that one was not. 539 F. Supp. 3d at 461. The four tweets that were capable of defamatory meaning included direct representations of statements that the plaintiff had purportedly made at a 2016 lecture to the Penn Medicine Graduating Class and a 2019 Wall Street Journal Article that were provably false misstatements of the plaintiff's words. *Id.* Further, the defendant in *Goldfarb* falsely indicated that the plaintiff was "forced out of Penn" when that was simply untrue, given that the plaintiff was still a professor at Penn Medicine. *Id.* The fifth tweet, which was found not to be capable of a defamatory meaning, because it was deemed true. *Id.*

Loue's Tweet was not based on undisclosed facts. Instead, it simply included her opinion that Plaintiff contributed to a hostile learning environment with racism, sexism, and transphobia. Courts in this jurisdiction have held that classification of someone as racist, sexist, or anti-gay or homophobic are not defamatory, without more. *See* Loue Mot. pp. 9-10. Contrary to Plaintiff's representation, and unlike the tweets in the *Goldfarb* matter, nowhere in Loue's Tweet did she suggest that she had Plaintiff as a teacher or that she witnessed any events inside of Plaintiff's classroom. Further, Loue did not make any provably false misstatements of Plaintiff's words.

---

Instead, Plaintiff attempts to circumvent this analysis by simply arguing that it's premature for this Court to make a decision as to whether Plaintiff is a limited purpose public figure. As set forth at length throughout Loue's Motion "malice" alone is insufficient. Loue's Motion, pp. 10-13.

Thus, Loue's Tweet, standing alone, is an opinion, and otherwise lacks defamatory meaning.

### 2. It is appropriate for the Court to decide at this stage whether Plaintiff is a limited purpose public figure.

Plaintiff's Opposition claims that the Court cannot make a finding that Plaintiff is a limited purpose public figure at this stage. Manco Opp. pp. 10-11. This argument ignores the facts of this case. Plaintiff relies on *Goldfarb*, and *Woods Services, Inc. v. Disability Advocates, Inc.*, No. 18-296, 2018 WL 2134016 (E.D. Pa. May 9, 2018). Both *Goldfarb* and *Woods* rely on *Trivedi v. Slawecki*, No. 11-02390, 2012 WL 5987410 (M.D. Pa. Nov. 28, 2012), which states simply that public figure analysis, "is *more appropriately* resolved at the summary judgment stage on the basis of record evidence." *Id.* at *3 (emphasis added). However, no court in the jurisdiction has prohibited making a public figure determination at the motion to dismiss stage when the analysis is not so fact-intensive and would not greatly benefit from discovery. In fact, the case cited in *Trivedi* to support the assertion that the public figure question is more appropriately resolved in summary judgment stated that the court in that instance **_could_** properly decide the issue "where undisputed facts admit to but one conclusion." *Rosanova v. Playboy Enters., Inc.,* 580 F.2d 859, 862 (5th Cir.1978). The timing of the determination is purely based off the need for further factual investigation. Here, there's no need for discovery as to Loue's Tweet.

The most common class of public figures are those, such as Plaintiff, who "have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved. … [T]hey invite attention and comment." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974). "In the typical limited purpose public figure case, the plaintiff actively participates in the public issue in a manner intended to obtain attention." *Marcone v. Penthouse Int'l Magazine for Men*, 754 F.2d 1072, 1083 (3d Cir. 1985). Further, "the plaintiff's action may itself invite comment and attention, and even though he does not directly try or even want to attract

7

the public's attention, he is deemed to have assumed the risk of such attention." *Id.*

Here, Plaintiff has sufficiently, willingly, and consistently thrust himself into the topics at issue in this litigation, including issues of racism, reparations, "cancel culture," and has generated attention through his own actions, as clearly set forth in Loue's Motion at Section III.C.b. and Exhibits A and B, attached thereto. These are the exact same topics addressed in the backlash against Plaintiff that he alleges are defamatory. "An individual may voluntarily become a limited-purpose public figure by actively participat[ing] in the public issue in a manner intended to obtain attention." *Ralston v. Garabedian*, No. 19-1539, 2021 WL 6072881, at *16 (E.D. Pa. Dec. 23, 2021). However, intent is not required. *Id.* ("An individual may also become a limited-purpose public figure even though an individual does not intend to attract attention by his actions."). Plaintiff must have simply undertaken "a course of conduct that invites attention," to qualify him to achieve limited-purpose public figure status within the scope of the controversy. *Id.* Plaintiff has "assume[d] the risk and the consequent fairness" of his actions and the varied response to them. *Id.* These facts are not disputed and warrant no further discovery. The Court is permitted to make a determination based on these undisputed facts that point to only one possible conclusion: that Plaintiff has held himself out and assumed the risk for attention by voluntarily thrusting himself into these public disputes.[5]

---

[5] Indeed, many other jurisdictions have made this determination at this stage. *See, e.g., Biro v. Conde Nast (Biro II)*, 963 F.Supp.2d 255 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015), and *aff'd*, 622 F. App'x 67 (2d Cir. 2015) ("Where the question whether a plaintiff is a public figure can be determined based upon the pleadings alone, the Court may deem a plaintiff a public figure at the [12(b)(6) stage."); *Jones v. Scripps Media, Inc.*, No. 16-12647, 2017 WL 1230481 (E.D. Mich. Apr. 4, 2017) (addressing whether plaintiff is a public figure at the motion to dismiss stage); *Resolute Forest Prod., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1017 (N.D. Cal. 2017) (same); *Heller v. NBCUniversal, Inc.*, No. 15-09631-MWF-KS, 2016 WL 6573985, at *5 (C.D. Cal. Mar. 30, 2016) (same); *Shive-Ayala v. Pacelle*, No. 21-704, 2022 WL 782412 (D.D.C. Mar. 15, 2022) (same); *Peterson v. Gannett Co. Inc.*, No. 20-00106-PHX-MTL, 2020 WL 1935520, at *11-12 (D. Ariz. Apr. 22, 2020) (noting that numerous other courts have found limited-purpose public figures at the motion to dismiss stage).

### III. LOUE'S STATEMENT CANNOT SUPPORT A FALSE LIGHT CLAIM

In Loue's Motion, she argues that Plaintiff's claim for false light should be dismissed as to Loue because this claim cannot be predicated on Loue's opinions[6] and Plaintiff has not plead actual malice. Rather than focusing on the "actual malice" argument, Plaintiff's Opposition focuses on the element Loue did not dispute in Loue's Motion (offensive to a reasonable person). Plaintiff argues that he has plead enough for this claim because a reasonable person could understand Loue's Tweet to mean that Plaintiff was racist, sexist, and transphobic. This is not enough to set forth reckless disregard of falsity or actual malice.

Plaintiff inaccurately cites to *McCafferty v. Newsweek Media Group, Ltd.* for the proposition that accusing an individual of being 'racist' could be found to be highly offensive to a reasonable person. Manco Opp. p. 12; 955 F.3d 352 (3d Cir. 2020). The *McCafferty* opinion does not support this proposition. Rather, in *McCafferty*, the Third Circuit Court of Appeals affirmed the District Court's dismissal of claims for defamation and false light that were based on speech that constituted an opinion based on disclosed facts. 955 F.3d 352. Of significance, the Third Circuit in *McCafferty* distinctly recognized that a simple accusation of racism, without more, is not enough to set forth defamation or false light. *Id.* at 358.

### IV. LOUE'S STATEMENT CANNOT SUPPORT A CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT

Plaintiff fails to plead sufficient facts to establish that Loue acted without privilege or justification. His reliance on *Hall* in this effort is misplaced. *See* Manco Opp. pp. 13-14.

---

[6] *See Pace v. Baker-White*, 432 F. Supp. 3d 495 (E.D. Pa. 2020), *aff'd,* 850 F. App'x 827 (3d Cir. 2021) (analyzing claims of false light and defamation together and dismissing both claims finding that the statements in question were statements of opinion and, therefore, not actionable). *See also McCafferty v. Newsweek Media Group, Ltd.*, 955 F.3d 352, 360 (3d Cir. 2020) ("In Pennsylvania, falsity means the same thing for false light as it does for defamation. In both contexts an opinion based on disclosed facts cannot be false.").

Specifically, *Hall* did not address the lack privilege or justification in the Defendants' actions, but rather focused on how the Defendants acted with the specific intent to harm the Plaintiff.  No. 10-7603, 2012 WL 526287, at *8 (E.D. Pa. Feb. 17, 2012).

### V.  PLAINTIFF HAS NOT PLEAD A CIVIL CONSPIRACY.

Plaintiff's Complaint is devoid of facts that demonstrate that Loue: (1) engaged in an unlawful act, or a lawful act by unlawful means or for an unlawful purpose; (2) acted in concert with anyone else, or (3) acted with malice.  A conspiracy requires more than two people doing the same thing at the same time.  Loue Mot. pp. 14-16.

Plaintiff cites to *Cannella v. Brennan* for the proposition that allegations concerning two or more individuals engaged in an online campaign with the intent to injure a person's reputation and discourage others from engaging in contractual relations with them is sufficient to defeat a motion to dismiss.  No. 12-1247, 2014 WL 3855331, at *11–*13 (E.D. Pa. Aug. 6, 2014); Manco Opp. pp. 14-15.  However, the facts in *Cannella* are drastically different from the facts alleged by Plaintiff here. In *Cannella,* the plaintiffs alleged that the defendants conspired to create the websites www.TruthaboutCannella.com and www.TruthaboutCannella.net for the primary purpose of disseminating false and misleading statements about Plaintiffs and their services.  *Id.* at *1.  The Plaintiffs further alleged that for almost two years, the defendants intentionally posted false, deceptive, and harmful information on those websites with the intention of harming the Plaintiffs' business and discouraging others to engage in business with Plaintiffs. *Id*.  As no such facts exist here, Plaintiff's reliance on *Cannella* is misplaced.

### VI.  CONCLUSION

For the reasons set forth in Loue's Motion and the instant Reply Brief in support of Loue's Motion, all claims against her should be dismissed.

                                                **FISHER & PHILLIPS LLP**

                                                */s/ Deniz Uzel Reilly*
                                                Deniz Uzel Reilly, Esquire
Julia Clark, Esquire
Jack O'Connor, Esquire
Two Logan Square, 12th Floor
100 N. 18th Street
Philadelphia, Pennsylvania 19103
dreilly@fisherphillips.com
jclark@fisherphillips.com
joconnor@fisherphillips.com
*Attorney for Defendants Hadassah Colbert, Kiernan Loue, Karleigh Lopez, Erin Lopez, Corinne McGrath, and Lynly Carman*

Date: March 1, 2024

11

FP 49739003.1

**CERTIFICATE OF SERVICE**

I, Deniz Uzel Reilly, Esquire, hereby certify that on this 1st day of March 2024, a true and correct copy of the foregoing Defendant Kiernan Loue's Reply Brief in Further Support of her Motion to Dismiss Plaintiff's Second Amended Complaint was served upon the following counsel of record through the Court's ECF system:

>Scott Zlotnick, Esquire
>John McAvoy, Esquire
>ZARWIN, BAUM, DeVITO,
>KAPLAN, SCHAER & TODDY, P.C.
>2005 Market Street, 16th Floor
>Philadelphia, PA  19103
>*Counsel for Plaintiff, Gregory Manco*
>
>Leslie Miller Greenspan, Esquire
>TUCKER LAW GROUP
>1801 Market Street, Suite 2500
>Philadelphia, PA  19103
>*Counsel for Defendants St. Joseph's University and Cheryl McConnell*

By: */s/ Deniz Uzel Reilly*
Deniz Uzel Reilly, Esquire