## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREGORY V. MANCO, Ph.D., : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. 5:22-CV-00285 |
| : | |
| ST. JOSEPH'S UNIVERSITY, : | |
| HADASSAH COLBERT, KIERNAN : | |
| LOUE, LYNLY CARMAN, DR. SUSAN : | |
| LIEBELL, KARLEIGH LOPEZ, ERIN : | |
| FAHEY, CORRINE MCGRATH AND DR. : | |
| CHERYL MCCONNELL | |
| : | |
| Defendants. : | |

### ORDER

**AND NOW**, this _____ day of _____, 2024, upon

consideration of the Petition of Plaintiff, Gregory V. Manco, for Permission to Seek Interlocutory

Appeal under 28 U.S.C. § 1292(b), and any response thereto, it is hereby **ODERED** that the

Petition is **GRANTED**. It is further **ORDERED** that the Order August 19, 2024 (ruling on

Plaintiff's Motion for Partial Reconsideration and/or for Leave to File a Third Amended

Complaint, and the Order dated January 24, 2024 (ruling on Defendants' Rule 12(b)(6) Motion to

Dismiss), are amended as being certified under 28 U.S.C. § 1992(b) because the issues they

address, as relating to Plaintiff's conspiracy claims, involve controlling questions of law as to

which there are substantial grounds for difference of opinion, and an immediate appeal from the

orders may materially advance the ultimate termination of this litigation.

_____

J.

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GREGORY V. MANCO, Ph.D., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :   CIVIL ACTION NO. 5:22-CV-00285 |
| | : |
| ST. JOSEPH'S UNIVERSITY, | : |
| HADASSAH COLBERT, KIERNAN | : |
| LOUE, LYNLY CARMAN, DR. SUSAN | : |
| LIEBELL, KARLEIGH LOPEZ, ERIN | : |
| FAHEY, CORRINE MCGRATH AND DR. | : |
| CHERYL MCCONNELL | |
| | : |
| Defendants. | : |

## PETITION OF PLAINTIFF GREGORY V. MANCO, Ph.D. FOR PERMISSION TO SEEK INTERLOCUTORY APPEAL

Plaintiff Gregory V. Manco, Ph.D. ("Plaintiff" or "Dr. Manco"), by and through his attorneys, Zarwin Baum DeVito Kaplan Schaer Toddy, PC, hereby petitions this Court under 28 U.S.C. § 1292(b) for permission to seek interlocutory appeal of the Court's Orders relating to the Court's dismissal with prejudice of Plaintiff's conspiracy claims against Defendants and the Court's subsequent denial of Plaintiff's request for reconsideration and/or leave to amend Plaintiff's complaint as to the conspiracy claims. In support of this motion, Plaintiff submits the attached Memorandum of Law, the exhibits thereto, and the proposed form of Order.

Respectfully submitted,

**ZARWIN, BAUM, DeVITO,
KAPLAN, SCHAER & TODDY, P.C.**

Dated: September 5, 2024                    By: *Joseph M. Toddy*
                                                                       JOSEPH M. TODDY, ESQUIRE
                                                                       JOHN P. McAVOY, ESQUIRE
                                                                       SCOTT ZLOTNICK, ESQUIRE

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GREGORY V. MANCO, Ph.D., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : CIVIL ACTION NO. 5:22-CV-00285 |
| | : |
| ST. JOSEPH'S UNIVERSITY, | : |
| HADASSAH COLBERT, KIERNAN | : |
| LOUE, LYNLY CARMAN, DR. SUSAN | : |
| LIEBELL, KARLEIGH LOPEZ, ERIN | : |
| FAHEY, CORRINE MCGRATH AND DR. | : |
| CHERYL MCCONNELL | : |
| | : |
| Defendants. | : |

**MEMORANDUM OF LAW IN SUPPORT OF THE PETITION OF PLAINTIFF**
**GREGORY V. MANCO, Ph.D. FOR PERMISSION TO SEEK**
**INTERLOCUTORY APPEAL**

Plaintiff Gregory V. Manco, Ph.D. ("Plaintiff" or "Dr. Manco"), by and through his attorneys, Zarwin Baum DeVito Kaplan Schaer Toddy, PC, hereby petitions this Court under 28 U.S.C. § 1292(b) for permission to seek interlocutory appeal of the Court's Orders relating to the Court's dismissal with prejudice of Plaintiff's conspiracy claims against Defendants and the Court's subsequent denial of Plaintiff's request for reconsideration and/or leave to amend Plaintiff's complaint as to the conspiracy claims, and, in support thereof, states as follows:

## I.   <u>INTRODUCTION</u>

Pursuant to 28 U.S.C. § 1292(b), Plaintiff seeks permission from this Court to seek interlocutory appeal of the Court's rulings relating to the dismissal with prejudice of Plaintiff's conspiracy claims against the Defendants, St. Joseph's University ("St. Joseph's"), Hadassah Colbert, Kiernan Loue, Lynly Carman, Karleigh Lopez, Erin Fahey, Corrine McGrath and Dr. Cheryl McConnell, on the grounds that (a) there is a split within the Pennsylvania District Courts

as to the proper test to be applied relative to Plaintiff's conspiracy claim, with some courts applying "the sole motive" and other applying the "mixed motive" test; and (b) this Court's dismissal with prejudice of Plaintiff's conspiracy claims based upon the "sole motive" test, along with its misapplication of *Twombly's* plausibility standard and its refusal to freely grant Plaintiff leave to amend his conspiracy claim, involve controlling issues in this case as to which there are substantial grounds for difference of opinion, and an immediate appeal will materially advance this action.

Moreover, this petition meets this timeliness standard that applies to a § 1292(b) petition, given that only recently, on August 19, 2024, did the Court deny Plaintiff's Motion for Reconsideration and/or Leave to Amend. *See P & G U.S. Bus. Servs. Co. v Estate of Rolison*, 2021 U.S. Dist. LEXIS 66402, *10 *(E.D. Pa. 2021) ("neither § 1292(b) nor interpretive case law set any time constraints on when a party must file a motion for permission to seek prompt review of a non-final order [but] the entire procedure for departing from the normal course of appealing only final orders suggests a need for timeliness") (internal citations omitted).

## II.   <u>FACTUAL BACKGROUND</u>

On January 21, 2022, Plaintiff, a longstanding economics professor and baseball coach at St. Joseph's University, initiated this lawsuit by filing a Complaint against the Defendants stemming from the wrongful and retaliatory actions taken against him relative to his employment. *See* Doc. 1. The Complaint asserted various state and federal law claims, including a conspiracy claim.

Subsequently, on May 25, 2022 and October 13, 2022, Plaintiff sought leave to file both a First and the Second Amended Complaint, which this Court granted. *See* Docs. 28 and 49. The basis for seeking leave to file a First Amended Complaint was that on March 15, 2022, Plaintiff received his Right to Sue Letter from the EEOC. The basis for seeking leave to file a Second

Amended Complaint was that on July 15, 2022 (following St. Joseph's May 3, 2022, wrongful termination of Plaintiff) the EEOC issued a separate Right to Sue Letter.

The First and Second Amended Complaints were predicated upon Defendants' ongoing wrongful conduct and the identification of additional Defendants involved in the wrongful conduct. Otherwise, there were no materially significant changes from the initial Complaint or the conspiracy claims that had been originally pleaded.

On December 21, 2022, Defendants filed Rule 12(b)(6) Motions to Dismiss, which Plaintiff opposed. *See* Docs. 61-68. With regard to Plaintiff's conspiracy claim, Plaintiff alleged, *inter alia*, that the "sole purpose" test was not the proper test and that, rather, the "mixed motive" test was the appropriate test. Plaintiff also argued that he satisfied both tests under Twombly's plausibility standard.

On January 25, 2024, nearly a year later, this Court issued an Order and accompanying Memorandum, granting in part, and denying in part, Defendants' Motions to Dismiss. *See* Doc. 106. As part of its Order and Memorandum, the Court dismissed Plaintiff's conspiracy claim with prejudice. *Id*. at pp. 37-40. In its opinion resolving the Motions to Dismiss, this Court acknowledged the existence of a split within the Pennsylvania District Courts relative to the proper test to be applied to a conspiracy claim. *Id*. at p. 39. ("Courts in this district disagree as to whether 'motivations of personal or professional gain negate malice for the purpose of establishing civil conspiracy.'").

In so ruling, this Court did not apply the "mixed motive" test yet alluded to it when it mentioned that district courts disagree with respect to the proper test to apply. Instead, the Court confined its analysis to the "sole purpose" test. As to St. Joe's, the Court found that the sole motive test could not be satisfied because his injury "was incidental to another purpose," that other purpose

being St. Joe's investigation. *Id*. at p. 39. The Court then stated: "Manco provided no facts to support his claim; he merely labels the University's actions as a conspiracy without anything more." *Id* at pp. 39-40. As to Colbert, the Court found that the "sole motive" test was not satisfied because Manco's harm "was incidental to Colbert's desire to fight alleged discrimination at SJU." *Id*. at p.40.

On February 7, 2024, Plaintiff filed a Motion for an Extension to file a Motion for Partial Reconsideration and/or Leave to File a Third Amended Complaint ("TAC") (Doc. 108), which this Court granted. *See* Doc. 109. As a result, on February 19, 2024, Plaintiff filed a Motion for Partial Reconsideration and/or Leave to File a Third Amended Complaint (a copy of which was attached as an exhibit), and the parties briefed the matter. *See* Doc. 119. The proposed Third Amended Complaint alleged additional facts to establish conspiracy--even though, as Plaintiff noted, it believed the Court had misapplied the *Twombly* plausibility standard and misapplied the substantive law by applying the "sole motive" test as to Plaintiff's conspiracy claims. Further, Plaintiff noted that, significantly, there had been no Court Order or ruling which had dismissed his conspiracy claim and therefore, the dismissal should not have been with prejudice. Thus, Plaintiff argued that, if the Court were unwilling to reconsider its ruling, the Court should at the very least have granted Plaintiff's motion for leave to amend under the Federal Rule of Civil Procedure 15(a), which mandates that "[l]eave shall be freely given when justice so requires." Plaintiff argued that the fact that it took the Court one year to issue its ruling on Defendants' Motion to Dismiss should not be held against Plaintiff under Rule 15(a)'s liberal leave to amend standard.

Plaintiff's proposed TAC set forth facts which he believes more than plausibly demonstrate a conspiracy by Defendants, who intentionally acted with malice towards him and intending to harm him. The facts set forth in the proposed TAC include the following:

4

- SJU had a long-standing, well-publicized, white-on-black racism problem on its campus, which appeared to be intractable;

- SJU and its administration were looking for a scapegoat to make it appear that they were tough on white-on-black racism;

- Colbert had a long-standing animus toward whites and she was looking for a white scapegoat to blame for which the harm which she claimed other whites had caused her;

- Colbert was already well-known to the SJU administration for her views, including her animus toward whites;

- Even though SJU's discrimination reporting and investigation polices only applied to students and not to Colbert, who was no longer enrolled at SJU, SJU feared backlash if they did not address the complaints Colbert made against Dr. Manco in an email dated January 22, 2021;

- Colbert had reported claims to SJU about Dr. Manco's tweets, which SJU later admitted was the basis for placing him on administrative leave;

- SJU and its administrators placed Dr. Manco on administrative leave, even though Dr. Manco's tweets involved contractually protected free speech and thus did not fall within SJU's discrimination policies;

- In fact, SJU's Interim Policy and its Handbook contain contractual academic freedom provisions, adopted from the AAUP, which, as the Court in *McAdams v. Marquette University*, 914 N.W. 2d 708 (Wis. 2018) noted, clearly extend to extramural speech, including a professor's blog post;

- SJU held a secret meeting with Colbert, at which time they conspired with her by advising and instructing Colbert how to further her--and what had now become their—efforts to conspire to punish and eventually get Dr. Manco fired.

- Following that meeting, and as part of their conspiracy to wrongfully cancel and get Dr. Manco fired, other named Defendants were enlisted, who also deliberately made false claims against Dr. Manco in order to punish him and get him fired;

- During the entire time that Defendants were conspiring to punish Dr. Manco and get him fired, SJU repeatedly violated its own policies in order to ensure that Defendants accomplished their goal—even after an investigator cleared Dr. Manco of violating SJU's policy; and

- The investigative summary contained the following statements (none of which SJU mentioned in its subsequent defamatory media statement):

    - "Colbert did not provide any direct evidence of discrimination or harassment while she was a student in Manco's class, and there is **no evidence** that Manco treated Colbert differently because of her race." (page 7, paragraph 1);

    - "Overall, the Respondent's account of his classroom practices and his interaction with students was consistent with his testimony and the documentary evidence. Therefore, I find that there is **no evidence** that Manco treated students unfairly based on race or any other protected characteristic while they were a student in his class." (page 7, paragraph 6)

    - "**The majority of the bias reports were submitted anonymously and were not able to be confirmed**. With respect to the bias reports related to Manco's alleged classroom conduct,

6

I find that Manco credibly explained or contradicted the claims
alleged in the reports." (page 8, paragraph 2)

- "... I find that the responses provided by Respondent during his
interviews exhibited consistency and detail. ... Importantly, there
is **no evidence** of discrimination, bias, or unfair treatment noted
or referenced in the qualitative student evaluations. " (page 8,
paragraph 5)

- "**I do not find** that these posts rise to the level of an "unlawful
distinction, preference, or detriment to an individual" sufficient to
constitute discrimination in violation of University policy." (page
10, paragraph 1)

- "These Twitter posts appear to represent Manco's own personal
opinions, and do not suggest in any way that they represent the
views of the University." (page 9, paragraph 5)

- "I further conclude that the Twitter comments at issue on Manco's
Twitter account **do not** constitute harassment and **did not** create
an intimidating or hostile learning environment under University
policy." (page 10, paragraph 1)

- "Further, there is **no evidence** that Manco administered grades or
conducted himself in class that reveals any bias – racial or
otherwise – or harassment, towards students based on his personal
views." (page 10, paragraph 1).

*Id.*, ¶ 128.

The proposed TAC further alleged that not only was Dr. Manco wrongly placed on
administrative leave and caused to lose classes and his position with the baseball team at SJU due
to Defendants' concerted actions and common goal of causing him harm both personally and
professionally; but, then, when Dr. Manco filed a complaint with the EEOC and obtained the right
to sue, he was retaliated against and fired by SJU, at which point Colbert publicly gloated over the
fact that she had been involved in getting Manco fired. *Id.*

Further facts in support of the background and context for Plaintiff's conspiracy claims appear, *inter alia*, and without limitation, in paragraphs 45-128 of Plaintiff's proposed TAC, and they incorporated herein by reference. Additional facts supporting Plaintiff's conspiracy claim--as Defendants' concerted efforts against him did not stop--appear in paragraphs 135-262 of the proposed TAC, and they, too, are incorporated by reference. *Id*.

On August 7, 2024, Plaintiff's counsel sought permission to file a supplemental brief to bolster the pending Motion for Reconsideration by introducing newly uncovered evidence from discovery that demonstrated Defendants' concerted intent to harm Dr. Manco.[1] This new evidence included: an investigative report revealing no formal complaint had been lodged before Dr. Manco was placed on leave; an email from Defendant Colbert confirming that SJU's Title IX Coordinator had directed her to recruit others to corroborate her allegations; and social media posts by Colbert overtly expressing an intention to damage Dr. Manco's reputation. Furthermore, the discovery timeline suggests that SJU intentionally delayed taking any action until Defendant Colbert gathered support for her claims, reinforcing Plaintiff's position that Defendants coordinated their efforts to cause harm. This evidence underscores the errors in the Court's original dismissal of the conspiracy claim, confirming that Plaintiff's claim should never have been dismissed at the pleading stage.

On August 19, 2024, the Court denied Plaintiff's request to file an additional brief. *See* Doc. 143. Therein, in a footnote, the Court stated: "Plaintiff's civil conspiracy claim [in the Second Amended Complaint] was dismissed due to the failure to allege that defendants acted with malicious intent, defined as meaning "solely to injure." The Court also stated that the allegations in the Second Amended Complaint "clearly show that the alleged injury to Plaintiff was "incidental

---

[1] A true and correct copy of Plaintiff's letter request is attached hereto as **Exhibit A**.

to another purpose." *Id*., fn 1. In the same footnote to its August 19, 2024 Order, the Court further stated that Plaintiff "presents no argument for why these 107 paragraphs were not included in any of his previous versions of the complaint." *Id*., fn. 1. This statement, however, is inaccurate because Plaintiff's counsel had explained, in good faith, that they believed a conspiracy claim had been more than sufficiently pled in the already extensive Second Amended Complaint (which had totaled 231 paragraphs), and that they did not believe they needed to allege additional facts in order to satisfy the notice pleading requirements of the Federal Rules of Civil Procedure or the *Twombly* plausibility standard for the conspiracy claim. However, following the Court's January 25, 2024 Order, wherein the Court (inexplicably from Plaintiff's counsel's point of view) stated that Second Amended Complaint lacked sufficient facts to prove malice in relation to the conspiracy allegations, Plaintiff promptly sought leave to file a TAC.

### III.   LEGAL ARGUMENT

#### A.   *Standard of Review*

28 U.S.C. § 1292(b) sets forth the procedure for an interlocutory appeal. This section states that:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28  U.S.C. § 1292(b).

The Third Circuit Court of Appeals has defined a controlling question of law is one which: "(1) if decided erroneously, would lead to reversal on appeal; or (2) is 'serious to the conduct of the litigation either practically or legally.'" *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974), *cert. denied*, 419 U.S. 885 (1974); *LM Gen. Ins. Co. v Lebrun*, 2020 U.S. Dist. LEXIS 244364, *10-12 (E.D. Pa. 2020); *Aluminum Bahr B.S.C. v. Dahdaleh*, 2012 U.S. Dist. LEXIS 153457, *4 (W.D. Pa. 2012).

A substantial ground for difference of opinion exists when there are "one or more difficult and pivotal questions of law not settled by controlling authority." *See LM Gen. Ins. Co. v Lebrun*, 2020 U.S. Dist. LEXIS 244364, *15 (internal citations omitted). This standard is met when: the question is difficult, novel and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions; the question is difficult and of first impression; a difference of opinion exists within the controlling circuit; or the circuits are split on the question. *See LM Gen. Insur. Co., supra; Aluminum Bahr*, 2012 U.S. Dist. LEXIS 153457, *5; *see also Cooper-Std. Auto v. SFA Sols Czestochowa SP. Z.O.O.*, 2023 U.S. Dist. LEXIS 186391, *6 (E.D. Mich. 2023).

In determining whether an appeal "materially advances the litigation", the District Court should consider factors such as whether an appeal could eliminate the need for trial, or expedite or shorten the litigation, or otherwise save judicial resources and litigant expense. *See LM Gen. Ins. Co. v Lebrun*, 2020 U.S. Dist. LEXIS 244364, *17-18; *Aluminum Bahr*, 2012 U.S. Dist. LEXIS 153457, *5. "A key consideration to this determination is the avoidance of harm to a party from a possibly erroneous interlocutory order and the 'avoidance of possibly wasted trial time and litigation expense.'" *Aetna Life Ins. Co. v. Found Surgery Affiliates, LLC*, 2016 U.S. Dist. LEXIS 10322, *11 (E.D. Pa. 2016) (internal citations omitted).

B.   *The "Mixed Motive" Test*

There is a split within the Pennsylvania District Court, which even this Court acknowledged, regarding whether a "sole motive" or "mixed motive" test should be applied to a conspiracy claim. Numerous cases discuss this split and favor the application of the "mixed motive" test for a conspiracy claim and/or otherwise state that malice can be inferred from the facts and that the words "sole purpose" do not have to be alleged. Thus, there is clearly a substantial ground for a difference of opinion as to which test should be applied and even as to how the test should be applied, as the following salient cases make this clear: *Glob. Maint., Inc. v. Boeing*, 2023 U.S. Dist. LEXIS 97969 (E.D. Pa. 2023) (applying mixed motive test); *Kretulskie v. Madison Nat'l Life Ins. Co.*, 2021 U.S. Dist. LEXIS 113333 (M.D. Pa. 2021) (applying both sole purpose and mixed motive tests); *Piazza v. Young*, 403 F. Supp. 3d 421, 440-441 (E.D. Pa. 2019) (there is no requirement that the complaint alleged the words "sole motive" to establish the requisite malice for a conspiracy claim; moreover, the court can infer that the various defendants who each may have had different roles in planning and operating a fraternity bid acceptance night had an implicit or explicit agreement whose purpose was to humiliate and endanger prospective fraternity members); *Aetna v. Insys. Therapeutics, Inc.*, 324 F. Supp. 3d 541, 557-558- (E.D. Pa. 2018) ("The parties, and courts in this District, disagree over whether motivations of personal or professional gain negate malice for purposes of establishing civil conspiracy….While some courts have construed this language [from the Pennsylvania Supreme Court in *Thompson*] as requiring proof that the alleged conspirators acted 'solely to injure' the plaintiffs, with no objective of personal gain, such an interpretation does not comport with the decision's reasoning."); *PDC Machs. Inc. v. Nel Hydrogen A/S*, 2018, 2018 U.S. Dist. LEXIS 100506, *13-16 (E.D. Pa. 2018) ("The proper interpretation of *Thompson Coal* is a matter of some debate among federal district courts in

Pennsylvania…. Given the *Thompson* court's definition of malice, this Court is persuaded that the fact that a defendant may benefit economically from improper actions undertaken as part of a conspiracy does not necessarily preclude a finding that the defendant acted with malice, and that the Complaint in this case sufficiently alleges malice on the part of Defendants."); *Ozburn-Hessey Logistics, LLC v. 721 Logistics, LLC*, 40 F. Supp. 3d 437 (E.D. Pa. 2014) ("Several judges in this district, myself included, have stated that Pennsylvania law requires a plaintiff to show that 'the sole purpose of the conspiracy was to injure the plaintiffs.'" This may not be true….*Thompson* does not address whether defendants may be liable if they act with mixed motives.").

In *Glob. Maint., Inc. v. Boeing*, 2023 U.S. Dist. LEXIS 97969, * 16-17 (E.D. Pa. 2023), the Court summed it up best when, in applying the mixed motive test, it explained its rationale for denying a motion to dismiss plaintiff's conspiracy claim:

> Boeing's strongest argument for dismissal of the conspiracy count is that Plaintiff has failed to adequately plead malice. While Cenova maintains that Boeing's conduct was inherently malicious for interfering with its exclusive contract with Skookum, Boeing contends that its actions were "entirely consistent with ordinary business practice and thus 'negate[] a finding of malice.'" The lead Pennsylvania case on civil conspiracy is *Thompson Coal, 412 A.2d at 472*, and there are divergent views regarding its requirement of malice. Some courts have required that, to find malice, "the sole purpose of the conspiracy" must be to injure the plaintiff. *See e.g., Festa v. Jordan, 803 F. Supp. 2d 319, 327 (M.D. Pa. 2011)*. But even judges who once adhered to that standard have evolved in their views. *See Aetna Inc. v. Insys Therapeutics, Inc., 324 F. Supp. 3d 541, 558 (E.D. Pa. 2018)* (Rufe, J.) ("The court [in *Thompson Coal*] does not hold that a defendant's interest in economic gain would, in itself, justify or negate specific intent to cause injury, particularly if the intended means for achieving such gain were unlawful or illegitimate."); *Ozburn-Hessey Logistics, LLC v. 721 Logistics, LLC, 40 F. Supp. 3d 437, 454 n.4 (E.D. Pa. 2014)* (Restrepo, J.) ("*Thompson* does not address whether defendants may be liable if they act with mixed motives."). I am persuaded that the better view comes from these cases. With that understanding, I conclude that Boeing's potential interest in more competitive pricing does not necessarily negate a finding of malice, especially where Cenova

repeatedly showed a willingness to lower its prices to meet Boeing and Skookum's needs.

In the instant matter, under the mixed-motive test, a jury could easily conclude that Defendants acted with malice in conspiring against Plaintiff. *Glob. Maint.*, *supra*; *Aetna, supra*; *PDC, supra*; *Ozburn-Hessey Logistics, supra.* Thus, the Second Amended Complaint should not have been dismissed and/or Plaintiff should have been permitted to file his proposed TAC. In fact, Plaintiff believes that even under the "sole purpose" test, as applied in cases such as *Piazza*, Plaintiff met his burden in alleging conspiracy against the Defendants.

As discussed below, Plaintiff has satisfied the three elements for a permissive interlocutory appeal.

C.     ***The Elements for a Permissive Interlocutory Appeal Under 18 U.S.C. § 1292(b) Are Satisfied***

Under 28 U.S.C. § 1292(b), the District Court may certify its order for interlocutory appeal if (1) the order involves a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and 3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1992(b).

In the instant matter, all three prongs of § 1292(b) are satisfied. The first prong of the § 1292(b) test has been satisfied because the issues relating to this Court's dismissal with prejudice of Plaintiff's conspiracy claim and failure to grant leave to amend involve serious, controlling questions of law in the case, which, if decided erroneously, they would lead to reversal on appeal.

The second prong has been satisfied because substantial grounds for a difference of opinion exist when, as here: (i) there is a disagreement within the Pennsylvania district courts as whether the "sole purpose" or "mixed motive" test applies to a conspiracy claim; and (ii) even when the "sole purpose" test is applied, there is a disagreement as to how the test should be applied in terms

13

of whether these exact words must be alleged in the complaint and whether malice can be inferred by the court.[2]

The third element of the § 1292(b) test has been satisfied because an interlocutory appeal will materially advance the case by preserving judicial and party resources and ultimately avoiding wasted trial time and litigation expense.

Finally, it should be emphasized that Plaintiff wants this case to move forward as much, if not more, than any of the other parties and thus is not requesting a stay pending appeal. Instead, Plaintiff believes that discovery may continue in this action pending any appeal because all or nearly all of the same core operative facts apply to the various state and federal law claims, including the conspiracy claim.

## IV.   **CONCLUSION**

For the foregoing reasons, Plaintiff Gregory V. Manco, Ph.D. respectfully requests that this Court grant his Petition for Permission to Seek Interlocutory Appeal under 28 U.S.C. § 1292(b) and enter the attached proposed Order certifying the issues relating to Plaintiff's conspiracy claim for interlocutory appeal.

Respectfully submitted,

**ZARWIN, BAUM, DeVITO,
KAPLAN, SCHAER & TODDY, P.C.**

Dated: September 5, 2024        By: _Joseph M. Toddy_____
                                                      JOSEPH M. TODDY, ESQUIRE
                                                      JOHN P. McAVOY, ESQUIRE
                                                      SCOTT ZLOTNICK, ESQUIRE

---

[2] Relative to Plaintiff's conspiracy claim, there are also substantial grounds for difference of opinion with regard to the intertwined issues relating to the Court's application of the *Twombly* plausibility test and its denial of Plaintiff's right to freely amend where justice requires under Rule 15(a).