UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREGORY V. MANCO, Ph.D., <br><br> Plaintiffs, <br><br> v. <br><br> ST. JOSEPH'S UNIVERSITY, HADASSAH COLBERT, KIERNAN LOUE, LYNLY CARMAN, DR. SUSAN LIBELL, KARLEIGH LOPEZ, ERIN FAHEY, CORRINE MCGRATH, CHERYL MCCONNELL, <br><br> Defendants. | Civil Action No. 5:22-CV-00285 |

**BRIEF IN SUPPORT OF NON-PARTY'S MOTION TO QUASH SUBPOENA OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER**

**INTRODUCTION**

On Friday May 2, 2025, Devin Yingling, a former student reporter with St. Joseph's University student newspaper, *The Hawk*, was made aware that a subpoena addressed to her had been dropped off at her place of work while she was not there.  The subpoena was issued by Plaintiff in the instant civil lawsuit, *Manco v. St. Joseph's University*, No. 5:22-cv-00285 (E.D. Pa. Jan. 21, 2022) (hereinafter the "Manco Lawsuit").  The Manco Lawsuit concerns an employment discrimination dispute between Plaintiff and St. Joseph's University (the "University"), and claims against individual Defendants related to social media posts they made when they were students at the University.  Until one day ago, the complete scope of the lawsuit was unclear, as a non-party

such as Ms. Yingling was unable to access the Complaint, First Amended Complaint and Second Amended Complaint due to a court-ordered seal.[1]

Ms. Yingling's only possible connection with the underlying suit is tenuous at best—she served as the news editor of *The Hawk* during the time in which the University launched an investigation into Plaintiff. *The Hawk* is not a defendant in the Manco Lawsuit. *The Hawk*'s reporting about the University's investigation into the Plaintiff is not the basis for any of the pending claims. Ms. Yingling, who graduated from the University in 2022, no longer has custody or control over her email or records related to her role as news editor. The only possible purpose in requiring Ms. Yingling to testify is to gain insight into her reporting process and editorial decisions—areas of inquiry that are prohibited by the reporter's privilege under the First Amendment and Pennsylvania's statutory journalism shield law, 42 Pa. Cons. Stat. § 5942(a).

Accordingly, pursuant to Federal Rule of Civil Procedure 45(d), Ms. Yingling respectfully moves this Court for an order quashing the subpoena on the grounds that (i) service of the subpoena was improper; (ii) the subpoena imposes an undue burden on a non-party; and (iii) the subpoena seeks privileged or other protected matter, specifically, Ms. Yingling's journalistic work product and information about her communications with sources—information shielded from compelled disclosure by Pennsylvania statute and the First Amendment. In the alternative, at minimum, the Court should enter a protective order limiting the scope of Ms. Yingling's testimony to specific factual matters that Plaintiff's counsel can demonstrate to this Court are relevant to a claim or defense in the Manco Lawsuit and cannot be obtained from another source. Such a protective order is necessary to ensure that Ms. Yingling is not subjected to undue burden or broad-ranging,

---

[1] ECF Docket entries 1, 45 and 51 were placed under seal by Order of Court dated November 8, 2023. ECF No. 103. On the evening of May 8, 2028, St. Joesph's University's counsel provided a redacted version of the Second Amended Complaint to Ms. Yingling's counsel.

2

invasive questioning about her sources and First Amendment-protected newsgathering activities. In addition, should the Court grant her Motion, Ms. Yingling respectfully requests an award of reasonable attorney's fees pursuant to Rule 45(d).

## BACKGROUND

In January 2022, Gregory Manco filed suit against his former employer, St. Joseph's University, and a variety of individuals associated with the University. The three different versions of the complaint filed by Manco are all under seal. *See supra* n.1.

On May 2, 2025, an unidentified man delivered a folder to Pennsylvania State Senator Maria Collett's office at 1035 Virginia Drive Suite 201, Fort Washington, PA 19034. The folder was addressed to Devin Yingling, who serves as Senator Collett's Deputy Communications Director; only Ms. Yingling's name written on the outside of the folder. Ms. Yingling was working from home that day, and the man left the folder with Veronica Yeakel. Another Collett staffer, Bailey Landis, texted Ms. Yingling that a man had dropped off something at the office with her name on it. Ms. Yingling requested that her colleague open the folder. Upon learning it was a subpoena to testify in this matter, Ms. Yingling asked Ms. Landis to send her a copy of the material. The copy of the subpoena Ms. Yingling received from Ms. Landis via fax is attached and incorporated herein as **Exhibit A**.

The subpoena is dated April 16, 2025, and calls for Ms. Yingling to appear and provide deposition testimony at 1:00 pm on May 13, 2025 via Zoom and to produce on May 13, 2025 "any and all documents, including text messages, voicemails, emails, social media posts and social media direct messages, in your possession referencing Dr. Gregory Manco," and "Any and all documents, including emails and text messages, referencing Dr. Gregory Manco in your possession from your role with the Hawk." Ex. A. The subpoena indicates that it is to be delivered to Ms.

Yingling at an address for the residence of one of her relatives; it is neither the address where the subpoena was delivered, nor is it Ms. Yingling's residential address. *Id.*

According to the docket in the above-captioned proceeding, by Order of April 9, 2024, ECF No. 131, discovery was originally slated to close on October 24, 2024. The deadline was extended several times, and the current discovery deadline is May 14, 2025. ECF No. 175.

## ARGUMENT

I. **This Court should quash the subpoena because service was improper, and the subpoena does not meet the requirements of Rule 45.**

Improper service of a subpoena is a sufficient ground for quashing a subpoena. *E. Aaron Enters. v. WebPlus*, No. 2:07-cv-0585-LDD, 2009 WL 10640571, *2 (E.D. Pa. Mar. 31, 2009) (citing *Firefighters' Inst. for Racial Equal. v. City of St. Louis*, 220 F.3d 898, 903 (8th Cir. 2000)). "Personal service is required" when non-party individuals are being subpoenaed under Rule 45. *Whitmer v. Lavida Charter, Inc.*, No. 91–0607, 1991 WL 256885, at *2 (E.D. Pa. Nov. 26, 1991); F. Rule Civ. Pro. 45(b)(1). Indeed, the rules for serving a subpoena on a non-party to litigation are "stricter standards" than service rules found at Fed. R. Civ. P. 4(d)(1) as it "permits *only* personal" service. *Davis v. Musler*, 713 F.2d 907, 913 (2d. Cir. 1983) (emphasis added).

Here, service was improper. Ms. Yingling only knows that she is being asked to sit for a deposition because her co-workers happened to be in the office at the time a subpoena was dropped off there. The person who delivered the subpoena did not attempt to come back another day to personally serve Ms. Yingling. Further, there is no evidence that Plaintiff attempted service at the address listed on the subpoena, which is the residence of one of Ms. Yingling's family members. Service would be proper *only* if the papers were handed directly to Ms. Yingling. *Whitmer*, 1991 WL 256885, at *2. Dropping the papers off with her employer, on a day she was not in office,

4

without even attempting to find her in person does not constitute effectuated service under the Federal Rules and the subpoena should be quashed on these grounds.

Further, the Federal Rules require that a subpoena "set out the text of Rule 45(d) and (e)." Fed. R. Civ. P. 45(a)(1)(A)(iv).  This is a "prerequisite" that must be met in order for the subpoena "to be effective." *Lawsin v. Travelers Home & Marine Ins. Co.*, No. 12-CV-3839, 2013 WL 12155802, *1 n. 1 (E.D. Pa. June 6, 2013).  The subpoena received by Ms. Yingling mentions that these rules "are attached" but failed to include the text of the rules in the subpoena.  The Federal Rules include only four requirements for what must be included in a subpoena and Plaintiff failed to comply with those requirements.

An individual must also be granted "reasonable time" to comply with a subpoena or the subpoena must be quashed.  Fed. R. Civ. P. 45(d)(3)(A)(i).  "Although Rule 45 does not define 'reasonable time,' many courts have found fourteen days from the date of service as presumptively reasonable." *Grant Heilman Photography. v. John Wiley & Sons, Inc*., No. 11-CV-1665, 2011 WL 5429005, at *7 (E.D. Pa. Nov. 7, 2011).  And, "[f]ederal courts have also found that seven days is clearly unreasonable." *Verisign, Inc. v. XYZ.com*, LLC, No. CV 15-MC-175-RGA-MPT, 2015 WL 7960976, at *3 (D. Del. Dec. 4, 2015) (citation omitted).  Ms. Yingling, who is a non-party and was unaware her testimony was being sought in this lawsuit, obtained a copy of the subpoena on May 2, only ten days from its compliance date.  And, because the subpoena was delivered on a Friday morning, Ms. Yingling had even fewer business days to find a lawyer to assist her.  And even once she identified counsel, undersigned counsel was not provided with a copy of any of the complaints in this matter until the evening of May 8, 2025.[2]  Accordingly, not only did Ms.

---

[2] Undersigned counsel spoke with an attorney at Plaintiff's law firm on May 6, 2025 and asked to be provided with copies of the complaint and amended complaints.

5

Yingling only have only ten days to respond, she and her lawyers remained completely in the dark for nearly a week after the subpoena was served about what claims were brought and what those claims have to do with her and her journalistic work product.

Given the defective service and defects on the face of the subpoena, the Court should grant Ms. Yingling's motion to quash.

II. **This Court should quash the subpoena pursuant to Rule 45(d) because enforcing compliance would place an undue burden on a non-party who was working as a journalist.**

A court must quash a subpoena that subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3)(A)(iv). Factors to determine if an undue burden exists include "relevance, the need for the information requested, whether the information can be obtained by other means, burdens the subpoena may impose, the status of the recipient as a non-party, and the costs of compliance." *Rardon v. Falcon Safety Prods.*, No. 23-1594, 2023 WL 5347298, at *2 (3d Cir. Aug. 21, 2023). Similarly, under Rule 26, a party is only entitled to take discovery to the extent that the burden it seeks to impose is "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The "standards for non-party discovery require a stronger showing of relevance than for party discovery." *See In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 240 (E.D. Pa. 2014) (quoting *Zukoski v. Phila. Elec. Co.*, No. CIV. A. 93-4780, 1994 WL 637345, at *3 (E.D. Pa. Nov. 14, 1994)). Here, the subpoena indisputably imposes an undue burden on non-party Ms. Yingling.

It is unclear how Ms. Yingling's testimony is relevant to Plaintiff's claims or defenses. Neither Ms. Yingling nor *The Hawk* are defendants in this action. Plaintiff has yet to explain how *any* information that could be provided by Ms. Yingling would support his defamation claims against other individuals or his employment discrimination case against his former employer. The burden falls on the requesting party to show that the information sought through a subpoena is

relevant to the party's claim or defenses. *Green v. Cosby*, 314 F.R.D. 164, 169 (E.D. Pa 2016). The fact that the deposition is scheduled to occur one day before the discovery deadline in this matter reflects how unimportant it is to Plaintiff's case; had Ms. Yingling's testimony had even a scintilla of relevance or import, Plaintiff had ample opportunity to identify her as a witness and secure her testimony in a reasonable fashion. Instead, the rushed and buzzer-beater deposition seemingly is sought only to "embarrass or harass" Ms. Yingling, *Owens v. QVC*, 221 F.R.D. 430, 432 (E.D. Pa. 2004), and not add genuine value to Plaintiff's case.

The material sought through the subpoena can also be gathered from other means, most notably the actual defendants in this case. Plaintiff's counsel on May 6, 2025 informed undersigned counsel that Plaintiff became interested in Ms. Yingling because discovery revealed text messages between Ms. Yingling and Hadassah Colbert, a defendant in the case. Clearly, Plaintiff already has documentation about Ms. Yingling via the discovery provided by a party. Seeking duplicative discovery from Ms. Yingling—at the last chance before expiration of a discovery deadline—and documents likely already in Plaintiff's possession, would improperly "require[] a non-party to use [her] time and resources locating, reviewing, and compiling the requested information that would also be available through discovery with a party to the litigation." *Diodato v. Wells Fargo Ins. Servs. USA, Inc.*, No. 1:12-CV-02454, 2013 WL 6054824, at *2 (M.D. Pa. Nov. 15, 2013).

There is also no indication that Plaintiff sought depositions from any of the other student reporters or editors who contributed to the February 23, 2021 article about the University's investigation into Plaintiff.[3] The Article's byline did not list a particular author but rather states

---

[3] Upon information and belief, the article of interest about Plaintiff was published by *The Hawk* on February 23, 2021, *University Initiates Investigation of Math Professor*, The Hawk (Feb. 23, 2021), https://sjuhawknews.com/21464/news/university-initiates-investigation-of-math-

7

that it was prepared by "The Hawk Staff." Although the student newspaper's online staff listing does not archive to the 2021 school year, the current staff for *The Hawk* is comprised of more than thirty individuals, including writers, copy editors, and a faculty advisor.[4]

While the discovery sought from Ms. Yingling can be found from other sources, making the subpoena wholly unnecessary, it is also incredibly burdensome. The subpoena requests text messages, voicemails, emails, social media posts, and social media direct messages that reference Plaintiff—both on Ms. Yingling's personal devices and those made in connection with her time as a staff member of *The Hawk*. Ex. A. Ms. Yingling graduated from the university three years ago and no longer has access to her university email account or the email account or other documents and records associated with the newsroom.

Taken as a whole, the request for Ms. Yingling's testimony and production of documents imposes an undue burden on a non-party to search for and produce a vast scope of documents of dubious relevance that are just as likely—indeed, more likely—to be found from parties to this case. The additional benefit of Ms. Yingling's testimony, whatever that may be, is grossly disproportionate to the burden that would be placed on her should she be required to sit for a deposition and produce documents. The subpoena should be quashed.

### III. This Court should quash the subpoena pursuant to Rule 45(d) because it seeks privileged or other protected matter under Pennsylvania and Third Circuit law.

#### A. Pennsylvania has recognized the First Amendment reporter's privilege.

The Pennsylvania Supreme Court has assumed that Pennsylvania recognizes a First Amendment reporter's privilege. *Commonwealth v. Bowden*, 838 A.2d 740, 753 n.10 (Pa. 2003).

---

professor/ (hereinafter "the Article"). As is evident from the face of the Article, non-party Ms. Yingling does not have a byline on the story.
[4] *Spring 2025 Staff*, The Hawk, https://sjuhawknews.com/staff/ (last visited May 9, 2025).

This privilege is crucial and exists to "promote the free flow and exchange of ideas and information to the news media," which is "essential to the existence of a democratic republic." *Castellani v. Scranton Times, L.P.*, 916 A.2d 648, 653 (Pa. Super. Ct. 2007) (citing to *Hatchard v. Westinghouse Broad. Co.*, 532 A.2d 346, 350 (Pa. 1987)). The protection extends beyond just confidential sources, but also applies to "a reporter's resource material" and other "unpublished information." *United States v. Cuthbertson*, 630 F.2d 139, 147 (3d Cir. 1980).

In evaluating that privilege, a court "must balance on one hand the policies which give rise to the privilege and their applicability to the facts at hand against the need for the evidence sought to be obtained in the case at hand." *Bowden*, 838 A.2d at 754. The party that is seeking to overcome this privilege must show that: "(i) it has made an effort to obtain the information from other sources; (ii) the information is only accessible through the reporters and their sources; and (iii) the information is crucial to the case." *Id.* at 755. The First Amendment privilege applies to all information, including published information. The privilege protects reporters from having to testify to verify the accuracy of published material. *McMenamin v. Tartaglione*, 590 A.2d 802, 811 (Pa. Commw. Ct. 1991) (where, based on First Amendment, court refused to compel reporter's testimony to verify that candidate made statements at press conference that were part of a television news report), *aff'd without op.*, 590 A.2d 753 (Pa. 1991); *see also Commonwealth v. Farley*, 27 Med. L. Rep. 1544 (Jefferson Cnty. Ct. Com. Pl. Jan. 12, 1999) (quashing subpoena and holding that First Amendment reporter's privilege applies to published material sought by the Commonwealth).

Here, Plaintiff has failed to show how the testimony sought from Ms. Yingling, who was working as a journalist at *The Hawk* in 2021, is material, relevant, and necessary to the instant matter. *See McMenamin*, 590 A.2d 802; *United States v. Criden*, 633 F.2d 346 (3d Cir. 1980);

9

*Cuthbertson*, 630 F.2d 139; *Riley v. City of Chester*, 612 F.2d 708 (3d Cir. 1979). Nor could he. The extent of *The Hawk's* reporting on Plaintiff's termination is limited to a single, eleven-paragraph story published more than four years ago. Plaintiff has failed to establish, and the subpoena as issued does not indicate, how the testimony sought is crucial to Plaintiff's claims. *Id*. Plaintiff has not made a strong showing, and the subpoena as issued does not indicate, that the information sought cannot be obtained by alternative means. *Id*. The information contained in the story consists solely of public information, such as the dates tweets were posted or statements given to newspapers. Consequently, the subpoena should be quashed insofar that it seeks information and testimony that is protected by the reporter's privilege.

    **B. The Pennsylvania Shield Law prevents Plaintiff from forcing Ms. Yingling to share any sources she used through the course of her reporting.**

Pursuant to the Pennsylvania Shield Law, 42 Pa. Cons. Stat. § 5942(a), no individual who is "engaged on, connected with, or employed by any newspaper of general circulation or any press association or any radio or television station, or any magazine of general circulation, for the purpose of gathering, procuring, compiling, editing or publishing news, shall be required to disclose the source of any information procured or obtained by such person, in any legal proceeding, trial or investigation before any government unit." This law creates an absolute privilege for a "confidential source's identity, or any information which could expose the source's identity." *Castellani v. Scranton Times, L.P.*, 956 A.2d 937, 954 (Pa. 2008). The Shield Law aims to maintain the "free flow of information to members of the news media." *Bowden*, 838 A.2d at 750.

The identity of any confidential source who Ms. Yingling spoke with in the course of her reporting, and the information that they shared with her or other student reporters, is completely protected by the Shield Law. 42 Pa. Cons. Stat. § 5942(a); *Castellani*, 916 A.2d 648 (applying the

Shield Law to the discovery process and holding that a reporter could not be required to testify in front of a grand jury). The broad definition included in the Shield Law applies to Ms. Yingling's work as a student staff member, news editor, and eventual editor-in-chief of *The Hawk*. Accordingly, Plaintiff is precluded by law from seeking to discover, through document production or testimony, to obtain the identities of any confidential sources.

C. **In the alternative, should this Court refuse to quash the subpoena, Ms. Yingling's testimony should be limited solely to information appearing in the published Article.**

In the unlikely event that the Court determines that Plaintiff's failures to comply with Rule 45 do not require that the subpoena be quashed, and the Court determines that the First Amendment, and Pennsylvania Shield Law arguments are unavailing, then Ms. Yingling seeks alternative relief in the form of a protective order limiting Ms. Yingling's testimony solely to what was printed in the published Article at issue and barring any questioning as to any sources, discussions, notes, documents or other materials gathered or created as part of her functions and duties in preparation for publishing the Article.

## CONCLUSION

For the foregoing reasons, Ms. Yingling respectfully requests that the Court grant her motion and quash the subpoena calling for her testimony and production of documents at a deposition on May 13, 2025. The relief sought may be granted due to improper service; undue burden on a non-party; and unwarranted intrusion into Ms. Yingling's journalistic work product and information about her communications with sources. In the alternative, Ms. Yingling respectfully requests that a ruling on the subpoena be made only upon a showing by the Plaintiff that he can meet his burden to overcome the reporter's privilege with respect to Ms. Yingling's newsgathering material.

| | |
|---|---|
| Dated: May 9, 2025 | */s/ Paula Knudsen Burke* <br> Paula Knudsen Burke <br> REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS <br> PA ID: 87607 <br> 4000 Crums Mill Rd., Ste. 101 <br> Harrisburg, PA 17112 <br> (717) 370-6884 <br> pknudsen@rcfp.org <br><br> *Counsel for Non-Party Devin Yingling* |

# EXHIBIT A



**ZARWIN BAUM**
DEVITO KAPLAN SCHAER TODDY

**JOSEPH M TODDY**
jmtoddy@zarwin.com

April 16, 2025

**VIA SERVICE PROCESSOR**
Devin Yingling
18 Oakland Ave,
West Grove, PA 19390

   Re: **Dr. Gregory Manco v. St. Joseph's University et al.,
      Docket No. 5:22-CV-00285**

Dear Ms. Yingling:

Enclosed please find a *Subpoena To Testify* which requires you to appear for deposition via zoom *(video conference)* on May 13, 2025, at 1:00 pm. A zoom access link will be forwarded to you via email a week prior to the deposition.

Please note that you must also bring with you to the deposition the following documents: **All documents, including text messages, voicemails, emails, social media posts and social media direct messages, in your possession referencing Dr. Gregory Manco. All documents, including emails and text messages, referencing Dr. Gregory Manco in your possession from your role with the Hawk.**

Kindly reach out to my office at 215-569-2800 upon receipt of this subpoena to further discuss the details of your appearance at deposition. We thank you in advance for your cooperation.

           Very truly yours,

           /s/ Joseph M. Toddy
           **JOSEPH M. TODDY**

JMT/mara
Enclosure *-Federal Subpoena to Testify*

2005 MARKET STREET ♦ 16TH FLOOR ♦ PHILADELPHIA, PA 19103 ♦ (215) 569-2800 ♦ FAX (215) 569-1606 ♦ WWW.ZARWIN.COM
NEW JERSEY OFFICES: JERSEY CITY ♦ MT. LAUREL ♦ DELAWARE OFFICE: WILMINGTON

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Eastern District of Pennsylvania

| | |
|---|---|
| GREGORY V. MANCO, Ph.D  *Plaintiff*  v.  ST. JOSEPH'S UNIVERSITY, ET AL  *Defendant* | Civil Action No. 5:22-CV-00285 |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:  Devin Yingling 18 Oakland Ave, West Grove, PA 19390

*(Name of person to whom this subpoena is directed)*

☐ Testimony: YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place: The deposition will take place via zoom video call. (A link to access the video deposition will be provided to all parties via email) | Date and Time: 05/13/2025 1:00 pm |
|---|---|

The deposition will be recorded by this method:  Court Stenographer

☐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: Any and all documents, including text messages, voicemails, emails, social media posts and social media direct messages, in your possession referencing Dr. Gregory Manco. Any and all documents, including emails and text messages, referencing Dr. Gregory Manco in your posession from your role with the Hawk

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 04/16/2025

*CLERK OF COURT*

_____     OR     _____
*Signature of Clerk or Deputy Clerk*                *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Gregory V Manco
Joseph M. Toddy, Esquire                                                 , who issues or requests this subpoena, are:
One Commerce Square, 2005 Market Street, 16th Fl, Philadelphia, PA 19103, jmtoddy@zarwin.com, 215-569-2800

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 5:22-CV-00285

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____
on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.: