UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREGORY V. MANCO, Ph.D.,<br><br>    Plaintiff,<br><br>  v.<br><br>ST. JOSEPH'S UNIVERSITY, HADASSAH COLBERT, KIERNAN LOUE, LYNLY CARMAN, DR. SUSAN LIBELL, KARLEIGH LOPEZ, ERIN FAHEY, CORRINE MCGRATH, CHERYL MCCONNELL,<br><br>    Defendants. | Civil Action No. 5:22-CV-00285-JLS |

**RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO
COMPEL THE DEPOSITION OF DEVIN YINGLING**

Pursuant to E.D. Pa. Local Rule 7.1(c), Devin Yingling, by and through undersigned counsel, respectfully submits this Response in Opposition to Plaintiff's Motion to Compel the Deposition of Devin Yingling. In support thereof, Ms. Yingling submits this brief, exhibits, and proposed order.

**INTRODUCTION**

On May 2, 2025, non-party Devin Yingling, a former student reporter with *The Hawk*, was made aware that a subpoena had been dropped off at her place of work while she was not there. The subpoena was issued by Gregory Manco, plaintiff in the above-captioned civil action concerning an employment discrimination dispute between Mr. Manco and St. Joseph's University (the "University") and defamation claims against University alumni related to social media posts. Ms. Yingling moved to quash the subpoena on May 9, 2025, ECF No. 187, which this Court

granted on May 12. 2025.  ECF No. 188.  On May 22, 2025, this Court denied Plaintiff's request to extend the discovery deadline, which otherwise closed on May 14, 2025.  ECF No. 190.

Now, notwithstanding this Court's order quashing the same subpoena and after the close of discovery, Plaintiff moves to compel Ms. Yingling's compliance with his subpoena.  ECF No 189 [hereinafter "Pl.'s Mot."].  The Court should deny Plaintiff's motion because, once again, Ms. Yingling has not been properly served under the Federal Rules of Civil Procedure.  The Court should also deny the motion to compel Ms. Yingling's compliance with the subpoena because it imposes an undue burden on her, a non-party to this proceeding, which will burden her journalistic activities.  Indeed, for the same reasons stated in Ms. Yingling's motion to quash, Plaintiff's motion to compel must be denied because the testimony and information sought therein is shielded from discovery under Pennsylvania's statutory reporter's privilege, as well as the First Amendment reporter's privilege.

Plaintiff's motion flouts this Court's orders quashing his first subpoena to Ms. Yingling and denying his request to extend the discovery period in this case.  Such egregious and abusive litigation tactics should not be countenanced and Plaintiff's motion must be denied.

## ARGUMENT

**I.    Ms. Yingling was not properly served under the Federal Rules of Civil Procedure and therefore the subpoena was properly quashed.**

Plaintiff cannot compel compliance with a subpoena that has not been properly served.  *E. Aaron Enters. v. WebPlus*, No. 2:07-cv-0585-LDD, 2009 WL 10640571, at *2 (E.D. Pa. Mar. 31, 2009) (citing *Firefighters' Inst. for Racial Equal. v. City of St. Louis*, 220 F.3d 898, 903 (8th Cir. 2000)).  Here, once again, *see* Mot. to Quash, ECF No. 187, Plaintiff failed to personally serve his subpoena on Ms. Yingling, as he is required to do under Rule 45.  *Whitmer v. Lavida Charter*, No. 91–0607, 1991 WL 256885, at *2 (E.D. Pa. Nov. 26, 1991); Fed. R. Civ. P. 45(b)(1).  The rules for

serving a subpoena on a non-party to litigation are "stricter standards" than the Fed. R. Civ. P. 4(e) rules for service as it "permits *only* personal" service. *Davis v. Musler*, 713 F.2d 907, 913 (2d. Cir. 1983) (emphasis added).

Here, despite Plaintiff's assertions to the contrary, Pl.'s Mot. at 4–5, it is clear Ms. Yingling did not evade service of the subpoena at issue. First, she does not reside at the location where plaintiff attempted to serve the subpoena, Yingling Decl. ¶ 7; such does not amount to evasion of service. *See e.g.*, *Ramada Worldwide Inc. v. Shriji Krupa, LLC*, No. 07-2726, 2013 WL 1903295 (D.N.J. Apr. 17, 2013) (holding that service was not proper when it was not at the correct residence). It is unclear how Ms. Yingling's complete unawareness that someone was trying to serve her at a house where she does not reside is grounds to assert that she was evading service. *See Gambone v. Lite-Rock Drywall Corp.*, 124 F. App'x 78, 79 (3d. Cir. 2005). She moved out of the 18 Oakland Avenue residence in May 2023 and has not lived there for the past two years. *Id.* Second, while plaintiff's process server could have completed personal service at Ms. Yingling's place of work, that attempted service was ineffective because the process server dropped off the papers with Ms. Yingling's co-worker, who is not able to accept service on Ms. Yingling's behalf. Yingling Decl. ¶ 4; *see* Fed. R. Civ. P. 45(b)(1) ("Serving a subpoena requires delivering a copy to the named person.").[1]

---

[1] It is worth noting that while Plaintiff was required to serve Ms. Yingling pursuant to the "stricter standards" of Fed. R. Civ. P. 45, attempting service by dropping off the form with her co-worker does not meet the more lax requirements of Fed. R. Civ. P. 4 or Pennsylvania law. Rule 4 permits service only by following the state law in the state where the court is located or where service is made, delivering a copy to the individual personally, leaving a copy at the individual's dwelling with someone who lives there, or delivering a copy to an agent authorized to receive service. Fed. R. Civ. P. 4(e). Similarly, Pennsylvania law does not allow for service of a document on a co-worker who is not an agent of the individual or the person in charge of the place of business. 231 Pa. Code. Rule 402.

Ms. Yingling's counsel did not accept plaintiff's latest attempt to propound a subpoena based on undersigned counsel's understanding that discovery had been closed in this proceeding and the fact that the prior attempt to subpoena Ms. Yingling had been quashed by this court.[2] *See* Ex. A. A court order extended discovery to May 14, 2025, ECF No. 175, but that deadline had long passed when Plaintiff's counsel emailed Ms. Yingling's counsel on May 20, 2025 requesting that she accept service on Ms. Yingling's behalf. *See* Ex. A. Ms. Yingling's motion to quash the subpoena was already granted when Plaintiff's request that undersigned counsel accept service was sent. *Id.*; *see* ECF No. 188.

Plaintiff improperly served Ms. Yingling and attempted to serve a subpoena after the discovery deadline closed. For those reasons, Plaintiff's motion to compel Ms. Yingling's deposition should be denied.

**II.     The Court should deny Plaintiff's motion because it is an attempt to place an undue burden on Ms. Yingling, who was working in her capacity as an independent student journalist.**

The Court should deny Plaintiff's motion to compel Ms. Yingling's compliance with the subpoena because it will subject her, a non-party, to undue burden. Fed. R. Civ. P. 45(d)(3)(A)(iv). Factors to determine if an undue burden exists include "relevance, the need for the information requested, whether the information can be obtained by other means, burdens the subpoena may impose, the status of the recipient as a non-party, and the costs of compliance." *Rardon v. Falcon Safety Prods.*, Nos. 23-1594 & 23-1596, 2023 WL 5347298, at *2 (3d Cir. Aug. 21, 2023). Similarly, under Rule 26, a party is only entitled to take discovery to the extent that the burden it

---

[2] Plaintiff greatly misrepresents the order of events of his attempts to serve Ms. Yingling. Every attempt to serve Ms. Yingling occurred *prior* to Ms. Yingling securing counsel; she did not seek assistance of counsel until she was aware that she was being subpoenaed. The email from Ms. Yingling's counsel declining to accept service on Ms. Yingling's behalf occurred **after** the subpoena was quashed and **after** the discovery deadline closed.

4

seeks to impose is "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The "standards for nonparty discovery require a stronger showing of relevance than for party discovery." *See In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 240 (E.D. Pa. 2014) (quoting *Zukoski v. Phila. Elec. Co.*, No. 93-4780, 1994 WL 637345, at *3 (E.D. Pa. Nov. 14, 1994)). Even at his second bite at the apple, Plaintiff still has not made the requisite showing and his subpoena remains unduly burdensome.

Plaintiff asserts that taking Ms. Yingling's deposition will help him understand the context behind the publication of the February 23, 2021 article published in *The Hawk*, the student newspaper at St. Joseph's University. However, *The Hawk* is not a party to the case nor does Plaintiff allege that anything published in *The Hawk* was defamatory, therefore, the relevance of any information Ms. Yingling may have concerning the February 23, 2021 article to the claims in this case is dubious. Plaintiff further argues that because Ms. Yingling was on staff at *The Hawk*, she was acting as an "agent" of St. Joseph's University, Pl.'s Mot. at 5, but Plaintiff greatly misunderstands both agency law and the role of student journalists. *The Hawk* is independent from the University and accordingly Ms. Yingling at no time acted as an agent of the University.[3] In sum, Plaintiff has not explained his claimed need for a "complete picture of Yingling's level of involvement in the publication of" an article that is not in suit, published by another non-party. Pl.'s Mot. at 5.

Plaintiff further argues that he seeks to learn "who at the Hawk responded to Defendant Lopez via social media." *Id.* Ms. Yingling, who has not written for *The Hawk* for nearly three years, does not have access to *The Hawk* social media accounts. *See* Yingling Decl. ¶ 3. She also

---

[3] Indeed, it does not appear on the "Student Organization" page of St Joseph's website. *Student Organizations*, Saint Joseph's Univ., https://www.sju.edu/offices/student-life/sla/sco (last visited June 4, 2025).

does not have access to the email account she used while working at *The Hawk* and therefore does not have access to, for example, emails requesting comment for the story—emails that Plaintiff seemingly already has. *Id.*; *see* Pl.'s Mot. at 6 ("Plaintiff has knowledge that Yingling was intimately involved with this article, as she spearheaded the research for said article by emailing Plaintiff and other SJU faculty"). Plaintiff has given no justification for why he would need the newsgathering information from Ms. Yingling, especially as the newsgathering has resulted in a factual story that accurately reported the University had opened an investigation into Plaintiff.

Plaintiff's desire to depose Ms. Yingling also rests on his belief that she was "in direct contact with the ringleader of the conspiracy to cancel Plaintiff." Pl.'s Mot. at 6. This Court has already dismissed Plaintiff's conspiracy claim. ECF No. 106 ("Plaintiff's civil conspiracy claim found in Count IX will be dismissed as to all defendants . . . ."). As there is no conspiracy claim, any testimony Ms. Yingling may have on the topic is not "relevant to claims or defenses" to this litigation. *See* Fed. R. Civ. P. 26(b)(1); *Cole's Wexford Hotel v. Highmark Inc.*, 209 F. Supp. 3d 810, 823 (W.D. Pa. 2016) (explaining the relevancy standards in Fed. Rule Civ. P. 26(b)). Requiring Ms. Yingling to sit for a deposition about her communications with an alleged ringleader of a conspiracy would place an undue burden on her and would be an abuse of the tools of discovery. *Cole's Wexford Hotel*, 209 F. Supp. 3d at 818 (detailing the history of the rules advisory committee's attempts to prevent abuse of discovery and finding that "abuse can best be prevented by intervention by the court as soon as abuse is threatened." (quoting Fed. R. Civ. P. 26 advisory committee's notes)).

Plaintiff's claim that Ms. Yingling "clearly has information that is essential" to his claims, Pl.'s Mot. at 6, is further belied by his dilatory approach to obtaining the discovery he seeks to compel after the close of discovery. In this manner, Plaintiff's belated, second attempt to seek

testimony from Ms. Yingling appears to be a "fishing expedition designed to harass," rather than a genuine attempt to gather information to support Plaintiff's claims.[4] *Schmulovich v. 1161 Rt. 9 LLC*, No. 07-597, 2007 WL 2362598, at *5 (D.N.J. Aug. 15, 2007). Again, the article published more than four years ago in *The Hawk* is not at issue in this case, so it is unclear how testimony from Ms. Yingling about her work product—which is protected in Pennsylvania, *see infra*—would help Plaintiff prove that his former employer improperly fired him or that individuals defamed him on their personal social media accounts.

Despite his argument that this subpoena was not a last-minute attempt to burden Ms. Yingling, the evidence is clear that Plaintiff was aware of *The Hawk* article contemporaneous to its publication, as he points out that Ms. Yingling emailed him at that time to seek comment. Pl.'s Mot. at 6. For more than four years Plaintiff has been aware of Ms. Yingling as a potential deponent, as well as any other persons working on the February 2021 article.[5] In addition, as early as May 2022, Plaintiff was aware of *The Hawk* article as he cited to it his proposed amended complaint. *See* ECF. No. 28. Upon information and belief, Plaintiff's counsel was sent in November 2024 an audio recording purportedly between Ms. Yingling and Ms. Colbert. In March 2025, Plaintiff noted that Ms. Yingling was someone he intended to subpoena, but had not done so yet. ECF No. 176-1. At this point in the litigation, discovery had been extended three times and closed May 14, 2025. *See* ECF No. 131 (original discovery deadline is October 25, 2025); ECF

---

[4] Plaintiff also states that Defendant Hadassah Colbert and Ms. Yingling "knew each other for years" and have had "conversations that had nothing to do with said article." Pl.'s Mot. at 5. The fact that Ms. Yingling and Ms. Colbert were acquainted, standing alone, does not serve as a legitimate basis to subpoena Ms. Yingling.

[5] The article, titled "University Initiates Investigation of Math Professor" was designated as authored by "staff" and not a particular student reporter. Typically, "staff" bylines designate that several individuals contributed to an article. Hawk Staff, *University Initiates Investigation of Math Professor*, Hawk Newspaper (Feb. 23, 2022), available at https://sjuhawknews.com/21464/news/university-initiates-investigation-of-math-professor/.

No. 148 (discovery extended to December 31, 2024); ECF No. 167 (discovery extended to March 14, 2025); ECF No 175 (discovery extended to May 14, 2025). While Plaintiff asserts in his motion that many depositions were conducted at the last hour, he failed to mention that *all* his cited examples had been completed *before* the close of discovery. Pl.'s Mot. at 6. Plaintiff was fully aware of Ms. Yingling, her role at *The Hawk*, and the audio clip alleged to be between her and Ms. Colbert prior to the December 2024 discovery deadline, but he waited for two more discovery deadlines to come and go before attempting to compel her deposition testimony.

Plaintiff has not adequately explained how Ms. Yingling's testimony or production of records could help his claims beyond merely speculating that she played some role in this "conspiracy" to get Plaintiff fired. His belated attempt to obtain discovery from Ms. Yingling smacks of a fishing expedition. The Court should deny Plaintiff's motion because it places an undue burden on a non-party.

### III.   Plaintiff is unable to overcome the reporter's privilege and therefore cannot compel Ms. Yingling to testify about her sources and other unpublished information.

The Pennsylvania Supreme Court has assumed that Pennsylvania recognizes a First Amendment reporter's privilege. *Commonwealth v. Bowden*, 838 A.2d 740, 753 n.10 (Pa. 2003). This privilege is crucial and exists to "promote the free flow and exchange of ideas and information to the news media," which is "essential to the existence of a democratic republic." *Castellani v. Scranton Times, L.P.*, 916 A.2d 648, 653 (Pa. Super. Ct. 2007) (citing to *Hatchard v. Westinghouse Broad. Co.*, 532 A.2d 346, 350 (Pa. 1987)). The protection extends beyond just confidential sources, but also applies to "a reporter's resource material" and other "unpublished information." *United States v. Cuthbertson*, 630 F.2d 139, 147 (3d Cir. 1980).

In evaluating that privilege, a court "must balance on one hand the policies which give rise to the privilege and their applicability to the facts at hand against the need for the evidence sought to be obtained in the case at hand." *Bowden*, 838 A.2d at 754 (quoting *Riley v. City of Chester*, 612 F.2d 708, 716 (3d Cir. 1979)). The party that is seeking to overcome this privilege must show that: (1) it has made an effort to obtain the information from other sources; (2) the information is only accessible through the reporters and their sources; and (3) the information is crucial to the case. *Id.* at 755.

Here, Plaintiff argues that he has overcome this privilege, despite not pointing to a ***single*** piece of information that Ms. Yingling possesses that he is unable to obtain elsewhere. Rather, he states, without explanation, that Ms. Yingling is the "only source" of "key information." Pl.'s Mot. at 8. At no point does he explain what that information could be or why he must get it from Ms. Yingling instead of an actual party to the case. Plaintiff also states that he has been "diligently attempting to obtain evidence of Yingling's involvement" through parties in the case. *Id*. This diligent investigation, conducted with the vast access to information afforded in discovery, has not produced ***any*** evidence implicating Ms. Yingling in his dismissed conspiracy theory.

Further, Plaintiff has failed to show how the testimony sought is material, relevant, and necessary to the instant matter. *See McMenamin v. Tartaglione*, 590 A.2d 802 (Pa. Commw. Ct. 1991); *United States v. Criden*, 633 F.2d 346 (3d Cir. 1980); *Cuthbertson*, 630 F.2d 139; *Riley*, 612 F.2d 708. Nor could he. The extent of Ms. Yingling's reporting and personal knowledge of Plaintiff's termination is limited to a single eleven paragraph story not authored by her. *See supra* n.5. Plaintiff has failed to establish, and the subpoena as it was issued does not indicate, how the testimony sought is crucial to Plaintiff's claims. *McMenamin*, 590 A.2d at 811. Plaintiff has not made a strong showing, and the subpoena as issue does not indicate, that the information sought

9

cannot be obtained by alternative means. *Id*. Consequently, the motion should be denied insofar that the subpoena at issue seeks information and testimony that is protected by the reporter's privilege

## CONCLUSION

For the foregoing reasons, Ms. Yingling respectfully requests the deny Plaintiff's motion to compel her testimony and compliance with the subpoena.


Dated: June 4, 2025                             */s/ Paula Knudsen Burke*
                                                Paula Knudsen Burke
                                                REPORTERS COMMITTEE
                                                FOR FREEDOM OF THE
                                                PRESS
                                                PA ID: 87607
                                                4000 Crums Mill Rd., Ste. 101
                                                Harrisburg, PA 17112
                                                (717) 370-6884
                                                pknudsen@rcfp.org

                                                *Counsel for Non-Party Devin Yingling*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREGORY V. MANCO, Ph.D.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>ST. JOSEPH'S UNIVERSITY, HADASSAH COLBERT, KIERNAN LOUE, LYNLY CARMAN, DR. SUSAN LIBELL, KARLEIGH LOPEZ, ERIN FAHEY, CORRINE MCGRATH, CHERYL MCCONNELL,<br><br>　　　　Defendants. | Civil Action No. 5:22-CV-00285 |

**[PROPOSED] ORDER**

AND NOW, this _____ day of _____, 2025, upon consideration of Plaintiff's Motion to Compel the Deposition of Devin Yingling and Ms. Yingling's response in opposition thereto, it is hereby ORDERED and DECREED that Plaintiff's Motion to Compel is DENIED and Ms. Yingling shall not be required to appear at a deposition or produce any documents. Notice of the Entry of this Order shall be given to all parties as prescribed by law.

Date: _____

　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　**JEFFREY L. SCHMEHL**
　　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES**
　　　　　　　　　　　　　　　　　　　　　　　　**DISTRICT JUDGE**