IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREGORY V. MANCO, Ph.D, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 22-285 |
| | : | |
| ST. JOSEPH'S UNIVERSITY, *et al.*, | : | |
|     Defendants. | : | |

**MEMORANDUM OPINION**

**Schmehl, J.**   /s/ JLS                                                                                                 **July 14, 2025**

**I.     INTRODUCTION**

This opinion provides the reasoning behind the May 22, 2025 order (ECF No. 190) holding that the confidentiality designations of certain protected materials, which were challenged by Plaintiff and reviewed by the Court in-camera, are proper and shall remain in place. The order was issued prior to this opinion in the interest of providing clarity for the remainder of the discovery period. The ruling, and this opinion, are based upon our in-camera review of the redacted and unredacted investigation report, as well as consideration of correspondence from counsel and relevant orders and filings.

**II.    BACKGROUND**

On December 21, 2022, Defendants Saint Joseph's University and Dr. Cheryl McConnell (the "SJU Defendants") filed a Motion to Strike FERPA-Protected Student Information in the Second Amended Complaint (ECF No. 65), arguing that personally identifiable student information protected by the Family Educational Rights and Privacy Act ("FERPA") was improperly included in Plaintiff's filing of his Second Amended Complaint. FERPA forbids the improper use or disclosure of students' educational records. SJU Defendants specified that the

material it sought to strike included students' names, grades, and highly confidential medical information maintained by the University or a person acting on its behalf, such as Plaintiff. (*Id.*)

SJU Defendants argued that Plaintiff took the protected student information from the University's systems without a legitimate basis, without student consent, and without a court order or subpoena, and publicly filed it three times, despite the fact that counsel for SJU Defendants requested on multiple occasions that Plaintiff remove the FERPA-protected information from the public record. (*Id.*) SJU Defendants noted that Plaintiff had been on notice of their contention that his disclosures constituted violations of FERPA, as well as University policies, since receipt of their May 3, 2022 letter. (*Id.*; *see* Exhibit I attached to Sec. Am. Compl. (ECF No. 51)).

On November 8, 2023, this Court denied SJU Defendants' motion to strike, but ordered that the Complaint, Amended Complaint, and Second Amended Complaint be placed under seal, and warned Plaintiff not to file any FERPA-protected material to the public docket going forward. (ECF No. 103). As explained in the footnote, this order was intended to strike a balance between SJU Defendants' reasonable and substantial concern that certain disclosures of student information constituted violations of FERPA and Plaintiff's need to access and use such information to advance his cause of action. (*Id.*) The footnote also specifically directed that if Plaintiff wanted to use further FERPA-protected information in future filings, he must redact the student information from the public filing and file an additional copy of the relevant pleading under seal. (*Id.*)

The parties entered into a Protective Order (ECF No. 138) on May 31, 2024 for the purpose of safeguarding confidential material going forward and facilitating resolution of future disputes

over confidentiality designations. Under the Protective Order, parties could designate materials as "CONFIDENTIAL" or Attorneys' Eyes Only ("AEO") if the underlying information contained "non-public, confidential, proprietary, or commercial information not readily ascertainable through lawful means by the public." (*Id.*) Materials so designated become "Protected Materials." (*Id.*) Section XI of the protective order, titled "Filing Protected Materials," states:

> In the event that a Party uses any Protected Materials in its motion, pleadings, or other documents filed with the Court, such use **shall** be made under seal. **A Receiving Party may not file or disclose in the public record any Protected Materials absent written permission from the Producing Party or a court order secured after appropriate notice to all interested persons.**

(*Id.* at XI (emphasis added)).

The SJU Defendants produced both redacted and unredacted versions of an investigation report generated by an external investigator hired by the University to assess complaints made against Plaintiff, which is highly relevant to Plaintiff's claims in this matter. The redacted version was marked confidential, while the unredacted version was marked AEO. Redactions were made of student names and personally identifiable information protected under FERPA.

On September 5, 2024, Plaintiff filed his Motion for Leave to Appeal (ECF No. 146), which included Protected Materials conspicuously marked "AEO" and containing FERPA-protected student information. This public disclosure clearly violated both the Protective Order and the Court's November 8, 2023 order, and the violation could not be cured, because the entirety of the filing was quickly published online by a media outlet (ECF No. 149, Exhibit 10, Broad + Liberty's September 6, 2024 Article, filed under seal).

Plaintiff's counsel sent a letter to the Court on April 1, 2025 requesting that we perform an in-camera review of the Protected Materials at issue, the redacted and unredacted versions of

the investigation report, to assess the propriety of their confidentiality designations. Counsel for SJU Defendants asserted their objections in an April 3, 2025 letter to the Court, and Plaintiff then submitted a reply letter on April 4, 2025.

### III. LEGAL STANDARD

Federal Rule of Criminal Procedure 16(d)(1) provides that, with respect to protective orders, "the court may, *for good cause*, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." (emphasis added). It is well established that a party seeking a protective order over discovery material must demonstrate that 'good cause' exists for protective order. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994).

The Third Circuit Court of Appeals has recognized several factors that may be considered when evaluating whether "good cause" exists: (1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public. *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) (citing *Pansy*, 23 F.3d at 787–91).

When considering whether to modify an existing protective order, as requested here, the Court must consider these same factors. *Pansy*, 23 F.3d at 790. Additionally, the Court must consider the "reliance by the original parties on the [protective] order." *Id.*

## IV. DISCUSSION

### A. THE REDACTED REPORT MARKED "CONFIDENTIAL"

SJU Defendants explain in their April 3, 2025 letter that the redacted report was marked confidential because, per the University's policies, the investigation itself was confidential. In addition to the promise of confidentiality set forth in the University's policies and during the investigation itself, SJU Defendants argue that allowing disclosure to the public and the media about complaints or witness statements made by individuals about or against Plaintiff may have a chilling effect on a complainant's or a witness's willingness to come forward with such concerns in the future. Lastly, SJU Defendants correctly point out that this Court has already ruled that quasi-judicial immunity applies to communications that commenced Plaintiff's investigation by the University (ECF No. 106 at p. 22), which would similarly apply to many of the exhibits to the reports and summaries contained therein.

The first *Pansy* factor weighs in favor of preserving the confidential designation, as disclosure of the redacted report would violate the privacy interests of students who were assured of the confidential nature of their statements and involvement in the investigation. Preserving this promise of confidentiality is a legitimate concern of SJU Defendants, as a chilling effect could result from disclosure, which could negatively impact campus culture and its students' trust in the university. The second *Pansy* factor, concerning whether the purpose of disclosure is legitimate, also weighs in favor of maintaining the designation, because Plaintiff's April 4, 2025 letter conveys that he seeks disclosure to "publicly clear his name," and disclosure of a confidential investigative report is not necessary to accomplish this goal. Plaintiff may seek to

clear his name by prevailing in the litigation, but the Court does not concern itself with his attempt to litigate the case in the public eye.

The third *Pansy* factor weighs in favor of removing the designation, as disclosure of the redacted report is not likely to cause a party embarrassment since the redactions provide sufficient anonymity to those referenced in the report. Because the report does not contain information important to public health and safety, the fourth *Pansy* factor weighs in favor of retaining the confidentiality designation. The fifth *Pansy* factor also weighs in favor of preserving confidentiality. The reports have been produced in both redacted and unredacted forms, so the information has been shared among the litigants for efficiency purposes. Additionally, "it would be unfair to modify an order that was stipulated to and relied upon by the parties." *Wallace v. Powell*, No. 3:09-cv-0291, 2012 WL 1191607, at *4 (M.D. Pa. April 10, 2012).

The sixth *Pansy* factor also weighs in favor of maintaining the confidentiality designation, because the parties benefitting from it are primarily the students who initiated and participated in the investigation, rather than SJU itself. Lastly, the seventh *Pansy* factor weighs in favor of removing the designation, because one can argue that this case involves issues important to the public, as evidenced by the media coverage and public attention it has received thus far. Overall, the Court finds that the balance of factors weighs in favor of preserving the confidential designation of the redacted report.

### B. THE UNREDACTED REPORT MARKED "ATTORNEYS' EYES ONLY"

The application of 'Attorney's Eyes Only" designations is often limited to cases in which a party has demonstrated good cause for the designation by articulating concrete and specific harms

that would result from de-designation. *Clark v. McDonough*, No. 23-553, 2024 WL 2701611, at *14 (W.D. Pa. May 24, 2024). "The party moving for the restrictive [Attorney's Eyes Only] designation must detail the alleged harm it is likely to suffer absent the requested protection with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Id*. (quoting *U.S. ex. rel. Daugherty v. Bostwick Lab'ys*, No. 1:08-CV-354, 2013 WL 3270355, at *2 (S.D. Ohio June 26, 2013)).

In their April 3, 2025 letter, SJU Defendants state that they produced the investigation report in unredacted form in a good faith effort to avoid a discovery dispute, despite their legitimate concerns given the previous filings by Plaintiff that included FERPA-protected information. Although Plaintiff contends in his April 4, 2025 reply letter that SJU Defendants provided no justification for the confidentiality designations until their April 3, 2025 Letter, the Court notes they have consistently maintained their position that good cause exists to designate the Protected Materials as "CONFIDENTIAL" or "AEO." In fact, SJU Defendants set forth a thorough analysis making that argument in their December 21, 2022 Motion to Strike FERPA-Protected Student Information in the Second Amended Complaint. (ECF No. 65).

Their central concern throughout the litigation has been protecting student information from improper disclosure in accordance with FERPA, a concern that they raised early on in the litigation and at multiple points since. The Family Educational Rights and Privacy Act was enacted by Congress in 1975 for the purpose of ensuring parents' access to their children's educational records, as well as preventing the improper disclosure of those records. 20 U.S.C. § 1232(g). FERPA induces educational institutions to act in accordance with its standards by conditioning these institutions' receipt of federal funds on their compliance. *Id.* In contemplating an unauthorized release of educational records, FERPA defines those materials as "those records,

files, documents, and other materials which (i) contain information directly related to a student; and (ii) are maintained by an educational agency or institution or by a person acting for such agency or institution." *Id.* at § 1232g(a)(4)(A).

"Personally identifiable information" is defined in 34 C.F.R. § 99.3 to include: (a) the student's name; (b) the name of the student's parent or other family member; (c) the address of the student or student's family; (d) a personal identifier, such as the student's social security number, student number, or biometric record; (e) other indirect identifiers, such as the student's date of birth, place of birth, and mother's maiden name; (f) other information that, along or in combination, is linked or linkable to a specific student that would allow a reasonable person in the school community, who does not have personal knowledge of the relevant circumstances, to identify the student with reasonable certainty; or (g) information requested by a person who the educational agency or institution reasonably believes knows the identity of the student to whom the education record relates. 34 C.F.R. § 99.3.

Under 34 C.F.R. § 99.31(a)(1), "school officials, including teachers" can only be provided access to student records for "legitimate educational interests." Other access that is not for legitimate educational interests, even by school officials, can only be granted with consent of the student. SJU's FERPA policy makes clear that access to student records is restricted to purposes permitted under FERPA. (ECF No. 65). FERPA contains an exception which allows disclosure of protected information without student consent if the party first obtains a lawfully issued subpoena or court order (*see* § 99.31(a)(9)(i) and (ii)), but the Court has never authorized such disclosure in this case. Plaintiff nevertheless filed protected student information to the public docket multiple times.

The improper disclosure of personally identifiable student information in this case not only

violates the privacy of the students in violation of FERPA and SJU policy, but it is also prejudicial to the university. FERPA delegates the enforcement of its provisions to the Department of Education (20 U.S.C. §1232(e)), and a violation can result in the initiation of an investigation into the university. FERPA provides that "no funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of educational records … of students without the written consent of their parents to any individual, agency or organization …" 20 U.S.C. § 1232g(b)(1). Therefore, SJU has rightly expressed deep concern over improper disclosures in violation of FERPA, since such disclosures could result in not only violating student privacy that it's responsible for protecting, but also the loss of its federal funding and damage to its reputation.

SJU Defendants note in their April 3, 2025 letter that they felt an "Attorneys' Eyes Only" designation was necessary to prevent FERPA violations. Clearly there have been disclosures to the media due to Plaintiff's disregard for the confidentiality designations. As the Court is also aware that Plaintiff publicly filed Protected Materials conspicuously marked "AEO" to the docket, and the entirety of that filing was published online by a media outlet. SJU Defendants therefore articulated concrete and specific harms that could result from de-designation, and unfortunately their fears were justified, as those harms resulted despite the designation being in place. SJU Defendants further noted that the designation is proper because the investigation report does not contain information important to public health and safety, and no documents were withheld from Plaintiff, since he has access to the narrowly redacted version of the report.

Materials covered by FERPA do not gain immediate protection but are presumed to have a strong privacy interest attached. *Lei Ke v. Drexel Univ.*, No. 11-6708, 2014 WL 1100179, at *5 (E.D. Pa. Mar. 20, 2014) (holding that redacted student files, which fall under FERPA's definition

of "educational records," were to be made available for discovery to enable Plaintiff to prove his claim). Therefore, as to the first *Pansy* factor, it's clear that disclosure of FERPA-protected information violates the privacy interests of current and former students named in the report. This factor deserves special weight in the analysis, since the privacy interests at issue are afforded explicit protection under federal law.

The second *Pansy* factor also weighs in favor of retaining the designation, as Plaintiff has not articulated a compelling legitimate purpose that would be served by removing the "Attorneys' Eyes Only" designation. The redactions made are minimal, and do not hinder a reader from understanding the report, so there is no reason why Plaintiff should require access to the unredacted version. The third factor, whether disclosure of the information will cause a party embarrassment, also weighs in favor of preserving the designation, as Plaintiff has already disclosed the redacted personally identifiable student information, which is now public and could result in harassment of these individuals by members of the public who are sympathetic to Plaintiff's claims.

The remaining *Pansy* factors are not relevant to this inquiry, as the "Attorneys' Eyes Only" designation relates to disclosure to the parties, rather than public disclosure, and because no documents have been withheld by SJU Defendants.

In Plaintiff's April 4, 2025 letter he raises two cases in which SJU allowed plaintiffs to publicly file the school's relevant external investigation report. In *Powell v. St. Joseph's University et al*, E.D. Pa. Docket 2:17-cv-04438, although a former student did attach unredacted portions of an independent investigator's report in support of his opposition to SJU's motion to dismiss, this was filed prior to the Court ruling on SJU's motion to seal. The Court later granted the unopposed motion. Similarly, in *Doe v. St. Joseph's University*, E.D. Pa. Docket No. 2-18-cv-02044, although the student plaintiff attached a redacted version of the external investigation report in support of

his arguments against SJU's motion for summary judgment, the parties had previously entered into an initial confidentiality agreement and, from the record, SJU did not appear to dispute the propriety of that filing.

These cases are highly distinguishable, as the respective plaintiffs were a former student and a student, rather than a professor employed by SJU when the events at issue in this case took place. Here, the current and former students are co-defendants. Common sense suggests that, as an educational institution, SJU's concerns and litigation strategy would be vastly different in such a case, as it has responsibilities to protect its current and former students from the professors it employs. Professors hold a position of power over students, as evidenced by the fact that Plaintiff had access to FERPA-protected information such as the grades and medical information of individual students. In such a situation, it is clear why SJU would be more concerned about the public disclosure of external investigation materials containing FERPA-protected student information., particularly given the history of disclosures and media communications by Plaintiff in this case.

## IV.    CONCLUSION

The SJU Defendants have consistently maintained their position that the current confidentiality designations of the redacted and unredacted report, as well as the drafts of the report, are necessary to protect the privacy of current and former students. For all the reasons set forth above, the Court agrees, and finds the current designations are proper and shall remain in place. No unusual change in circumstances occurred that would now render these designations improper at this time.

Lastly, given the history and context here, Plaintiff's request to modify the initial designations is frankly audacious, since Plaintiff either negligently or willfully caused the

unredacted Protected Materials at issue to be leaked to the press in the first place. The FERPA-protected information contained in his filing now remains public as a result of that blatant violation of the Protective Order. The Court does not understand why Plaintiff would ask the Court to revisit this issue.