**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GREGORY V. MANCO Ph.D., : | **CASE NO. 5:22-cv-00285-JLS** |
| : | |
| Plaintiff, : | |
| v. : | |
| : | |
| ST. JOSEPH'S UNIVERSITY, et al. : | |
| : | |
| Defendants. : | |
| : | |

## <u>ORDER</u>

AND NOW, this __ day of _____, 2025, upon consideration of Plaintiff's Supplemental Motion for Leave to File a Third Amended Complaint (ECF No. 200), the Opposition thereto filed by Defendants Saint Joseph's University and Dr. Cheryl McConnell, and the Opposition thereto filed by Defendants Hadassah Colbert, Kiernan Loue, Lynly Carman, Karleigh Lopez, Erin Fahey, and Corrinne McGrath, it is hereby **ORDERED** that Plaintiff's Motion is **DENIED.**

**IT IS FURTHER ORDERED** that in light of the Court's prior Orders (ECF Nos. 106, 143), and Plaintiff's Motion, Plaintiff is cautioned that any further attempts by Plaintiff to reverse the Court's prior decisions in this case, including those related to civil conspiracy and application of quasi-judicial privilege to the investigation conducted by Saint Joseph's University, shall be grounds for contempt.

**BY THE COURT:**

_____
The Hon. Jeffrey L. Schmehl

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GREGORY V. MANCO Ph.D., : | **CASE NO. 5:22-cv-00285-JLS** |
| : | |
| Plaintiff, : | |
| v. : | |
| : | |
| ST. JOSEPH'S UNIVERSITY, et al. : | |
| : | |
| Defendants. : | |
| : | |

**OPPOSITION OF DEFENDANTS SAINT JOSEPH'S UNIVERSITY**
**AND DR. CHERYL MCCONNELL TO PLAINTIFF'S MOTION FOR LEAVE**
**TO FILE A THIRD AMENDED COMPLAINT**

Candice Kearney, Esq.
Yuliya Khromyak, Esq.
**TUCKER LAW GROUP, LLC**
Ten Penn Center
1801 Market Street, Suite 2500
Philadelphia, PA 19103

*Counsel for Defendants Saint Joseph's*
*University and Dr. Cheryl McConnell*

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ................................................................................................ 1

II.  PROCEDURAL HISTORY ................................................................................ 1

   A.  Relevant Docket Entries .............................................................................. 1

   B.  Relevant Discovery History ......................................................................... 3

III.  ARGUMENT ...................................................................................................... 5

   A.  Legal Standard ............................................................................................. 5

   B.  Plaintiff's Motion Should be Denied Because it is Severely Prejudicial. .............. 5

      1.  Plaintiff's Motion is Severely Prejudicial to Saint Joseph's Defendants ........... 6

      2.  Plaintiff's Motion is Severely Prejudicial to Renee Smith ................................. 7

   C.  Plaintiff's Motion Should Be Denied in the Interest of Judicial Economy. ............. 7

   D.  The Court Should Deny Plaintiff's Motion Because it is Indicative of Undue Delay and Bad Faith. .................................................................................. 8

      1.  Undue Delay ....................................................................................................... 8

      2.  Bad Faith and Dilatory Motive ........................................................................ 11

   E.  Plaintiff's Attempt to Circumvent Prior Court Rulings Is an Exercise In Futility That Should Be Denied ............................................................... 13

      1.  Defamation as to Saint Joseph's University ..................................................... 14

      2.  Defamation as to Dr. McConnell ...................................................................... 17

      3.  False Light as to Dr. McConnell ...................................................................... 19

      4.  Race Discrimination as to the Saint Joseph's Defendants .............................. 19

      5.  Civil Conspiracy as to Saint Joseph's Defendants .......................................... 23

IV.  CONCLUSION ................................................................................................ 26

## TABLE OF AUTHORITIES

Adams v. Gould, Inc.,
    739 F.2d 858 (3d Cir. 1984) ................................................................ 11

Alvin v. Suzuki,
    227 F.3d 107 (3d Cir. 2000). .............................................................. 11

Arthur v. Maersk, Inc.,
    434 F.3d 196 (3d Cir. 2006). ................................................................ 5

Berger v. Edgewater Steel Co.,
    911 F.2d 911 (3d Cir. 1990) ..................................................... 9,10, 11

Bronowicz v. Allegheny Cty.,
    804 F.3d 338 (3d Cir. 2015) ............................................................... 14

Casselli v. City of Philadelphia,
    54 F. Supp. 3d 368 (E.D. Pa. 2014) .................................................. 19

Cureton v. NCAA,
    252 F.3d 267 (3d Cir. 2001) ............................................................ 5, 8

Curran v. Children's Service Center of Wyoming County, Inc.,
    578 A. 2d 8 (Pa. Super. 1990) ........................................................... 19

Dole v. Arco Chem. Co.,
    921 F.2d 484 (3d Cir.1990) ................................................................. 5

El v. Marino,
    722 F. App'x 262 (3d Cir. 2018).......................................................... 14

Foman v. Davis,
    371 U.S. 178 (1962) ........................................................................... 11

Fraser v. Nationwide Mut Ins. Co.,
    352 F.3d 107 (3d Cir. 2003) ................................................................. 5

Kanter v. Barella,
    489 F.3d 170 (3d Cir. 2007) ............................................................... 13

Killen v. Nw. Human Servs.,
    No. 06-4100, 2007 U.S. Dist. LEXIS 66602 (E.D. Pa. Sep. 7, 2007).................. 21

Lafate v. Vanguard Group, Inc.,

    2014 U.S. Dist. LEXIS 148086 (E.D. Pa. Oct. 16, 2014) ...................................... 8

Landon v. Hunt,

    977 F.2d 829 (3d Cir. 1992) .................................................................. 23, 24

Luciani v. City of Philadelphia,

    643 F. App'x 109 (3d Cir. 2016)........................................................................ 5, 6

Morse v. Lower Merion Sch. Dist.,

    132 F.3d 902 (3d Cir. 1997) .............................................................................. 21

Mullin v. Balicki,

    875 F.3d 140 (3d Cir. 2017) ................................................................................ 5

Papera v. Pennsylvania Quarried Bluestone Co.,

    948 F.3d 607 (3d Cir. 2020) .............................................................................. 23

Rosati v. Colello,

    94 F. Supp. 3d 704 (E.D. Pa. 2015) ............................................................ 21, 23

Shane v. Fauver,

    213 F.3d 113 (3d Cir. 2000) ................................................................................ 5

Special Risk Ins. Servs. v. GlaxoSmithKline, LLC,

    No. 19-3002, 2021 U.S. Dist. LEXIS 246020 (E.D. Pa. Mar. 10, 2021) ........ 5, 6, 9

Synthes, Inc. v. Marotta,

    281 F.R.D. 217 (E.D. Pa. 2012)........................................................................... 5

Umland v. Planco Fin. Servs.,

    542 F.3d 59 (3d Cir. 2008) ............................................................................... 15

Defendants Saint Joseph's University (the "University") and Dr. Cheryl McConnell ("Dr. McConnell") (collectively, the "Saint Joseph's Defendants"), by and through their undersigned counsel, hereby oppose Plaintiff's Motion for Leave to File a Third Amended Complaint (the "Motion") (ECF No. 200).

## I.    INTRODUCTION

In his Motion, Plaintiff assigns blame to everyone involved in this litigation (including the Court) except himself and provides no explanation as to why he chose to wait *months* after receiving "key discovery" to amend his Complaint, especially since his last attempt was denied on August 19, 2024. Plaintiff's Motion is severely prejudicial to the Saint Joseph's Defendants and the Court as the proposed amendments require extensive additional discovery right as the case is on the brink of discovery's end. Plaintiff's Motion is further indicative of undue delay and bad faith, and none of the proposed "revived" claims can withstand a motion to dismiss. For these reasons, and those more fully set forth below, the Saint Joseph's Defendants respectfully request that Plaintiff's Motion be denied.

## II.    PROCEDURAL HISTORY

### A.    Relevant Docket Entries

Plaintiff commenced this action three and a half years ago by filing a Complaint on January 21, 2022, alleging discrimination, retaliation, and other state law claims against the University, five students, and a faculty member. ECF No. 1. On May 25, 2022, Plaintiff filed a Motion for Leave to Amend his Complaint, which was granted on August 18, 2022. ECF Nos. 28, 29,45. On October 13, 2022, Plaintiff, yet again, sought leave to amend his Complaint. ECF No. 49. After stipulation by all parties and approval by this Court, Plaintiff filed his Second Amended Complaint, adding a new claim against the University and numerous new allegations. ECF Nos. 50, 51. On December 21, 2022, the Saint Joseph's

Defendants, Hadassah Colbert, Erin Fahey, Corrinne McGrath, Lynly Carman, and Karleigh Lopez, all timely filed motions to dismiss Plaintiff's Second Amended Complaint. ECF Nos. 61-64, 66, 68. On January 25, 2024, this Court partially granted these motions to dismiss, some with prejudice. ECF Nos. 106, 107.[1]

On February 19, 2024, Plaintiff filed a Motion for Reconsideration of the Court's January 25, 2024 Order, and in the alternative, to file a Third Amended Complaint. ECF No. 119. This was Plaintiff's *fourth* iteration of the Complaint, meant to revive his dismissed discrimination, defamation, and civil conspiracy claims. ECF No. 119. On August 19, 2024, the Court denied Plaintiff's Motion for Reconsideration, and in the alternative, to file a Third Amended Complaint. ECF No. 143. Since August 19, 2024, Plaintiff has filed *three* substantive motions (ECF Nos. 146, 155, 189) and *two* letters requesting relief (ECF No. 144 and 166), along with numerous correspondence sent to chambers. At no point between August 19, 2024, and July 2, 2025, did Plaintiff attempt to amend his Complaint based on newly discovered evidence.

On September 5, 2024, Plaintiff filed a Petition to Seek Interlocutory Appeal as to the Court's dismissal (with prejudice) of his civil conspiracy claims, which the Court denied on June 30, 2025. ECF Nos. 146, 198. Two days after this denial, on July 2, 2025, Plaintiff filed the instant Motion for Leave to file a Third Amended Complaint (the "proposed Complaint") and presented to the Court a *fifth* proposed iteration of the Complaint, meant to "revive" his dismissed discrimination, defamation, and civil conspiracy claims that this Court had previously rejected.

---

[1] Defendant Loue filed her own Motion to Dismiss on February 14, 2024, which was decided on August 14, 2024. ECF Nos. 112, 142.

## B.  Relevant Discovery History

On April 12, 2024, Plaintiff served initial discovery requests on the Saint Joseph's Defendants and the Alumni Defendants.[2] On June 14, 2024, the Saint Joseph's Defendants served their initial production Bates stamped SJU_MANCO_0001-0190, Defendant Colbert served her initial production Bates stamped COLBERT_0001-100, and Defendant Lopez served her initial production Bates stamped LOPEZ_0001-0057. Defendant Colbert's and Defendant Lopez's June 14, 2024 productions contained four documents Plaintiff claims are "newly" discovered (LOPEZ_0033, 0047; COLBERT_0032, 0057). *See* Comprehensive Chart of Plaintiff's Proposed Amendments and Associated "Newly" Discovered Evidence, attached hereto as Exhibit A.

On July 2, 2024, the Saint Joseph's Defendants produced documents Bates stamped SJU_MANCO_0191-0853, consisting of the full, redacted investigation report, marked as "Confidential." The July 2, 2024 production contains seven pages Plaintiff claims are "newly" discovered (SJU_MANCO_0801, 0804, 0812-14, 0844). *See* Ex. A. On September 4, 2024, Saint Joseph's Defendants produced documents Bates stamped SJU_MANCO_0854-1450, consisting of an unredacted version of the full investigation report, marked as "Attorneys' Eyes Only." The September, 4, 2024 production contains two pages Plaintiff claims are "newly" discovered (SJU_MANCO_0854-855). *See* Ex. A.

On September 20, 2024, Saint Joseph's Defendants produced documents Bates stamped SJU_MANCO_1451-2629, containing four pages Plaintiff claims as "newly" discovered (SJU_MANCO_1556, 1677, 1771, 1749). *See* Ex. A. On October 8, 2024, Plaintiff deposed his first fact witness - Renee Smith. On November 11, 2024, Defendant

---

[2] Plaintiff's initial discovery requests to the Saint Joseph's Defendants did **not** contain a request that Saint Joseph's Defendants produce drafts of the investigation report.

Colbert produced documents Bates stamped COLBERT_0101-126, containing two pages Plaintiff claims as "newly" discovered (COLBERT_0102, 126). *See* Ex. A. On December 9 and 10, 2024, Defendant Lopez produced documents Bates stamped LOPEZ_0058-67 and LOPEZ_0068-0103, containing three pages Plaintiff claims as "newly" discovered (LOPEZ_0064, 0068, 0078, 0081). *See* Ex. A. On December 11 and 12, 2024, Plaintiff deposed Defendant Karleigh Lopez. Plaintiff similarly claims that Ms. Lopez's deposition testimony is "newly" discovered evidence. *See* Ex. A.

On January 6, 2025, Plaintiff for the first time requested that the Saint Joseph's Defendants produce all drafts of the investigation report. On February 5, 2025, the Saint Joseph's Defendants properly objected to Plaintiff's request based on attorney-client and work product privilege. On February 13, 2025, Plaintiff deposed Defendant Lynly Carman. Plaintiff claims Ms. Carman's testimony is "newly" discovered evidence. *See* Ex. A.

On March 5, 2025, Saint Joseph's Defendants produced documents Bates stamped SJU_MANCO_2821-3397, containing, inter alia, full unredacted drafts of the investigation report marked as "Attorneys' Eyes Only." This document production contains numerous pages Plaintiff claims as "newly" discovered (SJU_MANCO_2821-3072, 3073-74, 3076-78). *See* Ex. A. On March 6, 2025, during a conference before the Court, Plaintiff (for the first time) requested that the Court stay all proceedings if the Court grants Plaintiff's Petition to Seek Interlocutory Appeal as to his dismissed civil conspiracy claims. *See* ECF No. 176.

On May 9, 2025, Defendant Colbert produced documents Bates stamped COLBERT_0371-388, containing three pages Plaintiff claims as "newly" discovered (COLBERT_0386-88). *See* Ex. A. On May 12, 2025, ahead of Kristopher Tapp's scheduled deposition, Saint Joseph's Defendants produced documents Bates stamped SJU_MANCO_3731-3753, containing a page Plaintiff claims as "newly" discovered

(SJU_MANCO_3752). *See* Ex. A. Pursuant to the Court's January 24, 2025 Order, discovery closed on May 14, 2025. ECF No. 167. Plaintiff did not seek an extension of the discovery period prior to its expiration. *See, e.g.* ECF No. 190.

## III.   ARGUMENT[3]

### A.  Legal Standard

"[T]he policy favoring liberal amendments is not 'unbounded.'" *Synthes, Inc. v. Marotta*, 281 F.R.D. 217, 224 (E.D. Pa. 2012) (*citing Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir.1990)). "[U]ndue delay, bad faith, dilatory motive, prejudice, [or] futility" could all "justify a denial of leave to amend." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000); *see also Fraser v. Nationwide Mut Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2003). These factors, however, are **not** exhaustive. A court can also ground its decision upon consideration of additional equities, such as **judicial economy and burden on the court**. *Mullin v. Balicki*, 875 F.3d 140, 150 (3d Cir. 2017). Prejudice to the non-moving party is the touchstone for the denial of an amendment. *See Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006).

### B.  Plaintiff's Motion Should be Denied Because it is Severely Prejudicial.

"When considering the issue of prejudice, a court must determine whether allowing the amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." *Special Risk Ins. Servs. v. GlaxoSmithKline*, LLC, No. 19-3002, 2021 U.S. Dist. LEXIS 246020 (E.D. Pa. Mar. 10, 2021) (*citing Cureton v. NCAA*, 252 F.3d 267, 273 (3d Cir. 2001)). Prejudice is most prevalent, and therefore courts are more likely to deny motions for leave to amend, when the amendment is sought after discovery has closed or on the eve of trial. *See Luciani v. City of Philadelphia*, 643 F. App'x 109, 111 (3d Cir.

---

[3] To the extent applicable, Saint Joseph's Defendants incorporate by reference the legal arguments set forth by the Alumni Defendants in their opposition papers.

2016) (affirming denial of a motion for leave to amend because plaintiff did not move until discovery had closed); *Special Risk Ins. Servs.*, 2021 U.S. Dist. LEXIS 246020 ("Allowing Plaintiff to make the proposed amendments at this stage of litigation . . . would unduly burden Defendant with additional discovery, costs, and efforts to defend against new facts and/or theories.").

### 1. Plaintiff's Motion is Severely Prejudicial to Saint Joseph's Defendants

Plaintiff's Motion should be denied because the proposed amendments will result in substantial additional discovery (including re-opening of discovery) and additional costs to the Saint Joseph's Defendants related to discovery and defending against newly asserted facts and theories that have long been dismissed (some with prejudice). *See, e.g., Special Risk Ins. Servs.*, 2021 U.S. Dist. LEXIS 246020 ("a court must determine whether allowing the amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories.").

This Court acknowledged at the status conference on July 11, 2025, that discovery is nearly completed and that this case is on track to proceed to dispositive motion practice and trial. Now, suddenly, Plaintiff seeks to add an additional party and revive multiple claims that have been dismissed in a transparent attempt at a do-over at discovery. This case is three-and-a-half years old, and despite Plaintiff's disingenuous statements of a need to "clear his name" and that no one wants this case to be over more than him, Plaintiff now attempts to prolong the proceedings even further.

Plaintiff admits that additional discovery will be necessary, stating that "any need for additional discovery due to the additional of new defendants or claims does not prejudice the non-moving party." ECF No. 200 at p. 22. However, Plaintiff fails to explain how additional discovery will not result in prejudice to the Saint Joseph's Defendants as additional

6

discovery necessarily results in additional costs, thereby demonstrating undue prejudice. The parties in this case have engaged in extensive discovery, the deadline for which was extended several times. Plaintiff deposed fifteen witnesses, the parties produced thousands of pages of discovery (including highly confidential materials), and the defendants collectively deposed Plaintiff over three days as to the claims that survived the Court's January 25, 2024 Order. It is not in the interest of justice to reopen discovery, extend case deadlines, and delay this matter any further. Accordingly, Plaintiff's Motion should be denied on undue prejudice grounds.

### 2. Plaintiff's Motion is Severely Prejudicial to Renee Smith

Ms. Smith will be severely prejudiced if Plaintiff's Motion is granted. Discovery in this case is over, and Ms. Smith has had no opportunity to engage in discovery or to depose Plaintiff or any other witness in her own right. Ms. Smith is entitled to counsel of her choice, and she should be afforded an opportunity to respond to Plaintiff's Motion and the allegations against her contained therein.

### C. Plaintiff's Motion Should Be Denied in the Interest of Judicial Economy.

The Court itself will be prejudiced if Plaintiff's Motion is granted. Plaintiff's blatant gamesmanship throughout this litigation has forced this Court to expend significant resources responding to Plaintiff's unending torrent of motions, requests, and demands, no matter how improper or untimely.[4] Plaintiff's Motion is yet another example of Plaintiff's lack of deference to the Court's prior rulings as he attempts to undo every Court Order with which

---

[4] To date, Plaintiff has filed fourteen motions on the public docket in this case. *See* ECF Nos. 28, 38, 49, 59, 60, 90, 91, 108, 119, 146, 155, 189, 200, and 201. To date, Plaintiff has also sent ten letters to the Court requesting specific relief. *See* Plf's Letter to Chambers dated August 16, 2022; November 27, 2024; December 6, 2024; December 11, 2024; December 12, 2024; January 17, 2025; February 21, 2025; March 28, 2025; April 1, 2025; and June 24, 2025.

he disagrees. Discovery is over and the parties are finalizing the last remnants of discovery disputes that arose prior to discovery ending. Plaintiff's Motion only seeks to prolong the life of this case with no end in sight. Therefore, in the interest of judicial economy, Plaintiff's Motion should be denied.

### D. The Court Should Deny Plaintiff's Motion Because it is Indicative of Undue Delay and Bad Faith.

Plaintiff sat on discovery **for months** prior to seeking leave to amend, and when he finally sought leave, Plaintiff blamed everyone else but himself for the delay. Further, Plaintiff, yet again, is attempting to re-litigate the Court's Orders dated January 25, 2024, August 19, 2024, and June 30, 2025 (ECF Nos. 107, 143, 198). Plaintiff filed his Motion **months** after he discovered the supposed factual basis of his proposed amendments, asserting claims against a new party, "reviving" previously dismissed claims, and admitting that further discovery will be necessary if his amendments were accepted by the Court. For these reasons alone, Plaintiff's Motion should be denied.

#### 1. Undue Delay

When analyzing "undue delay," the Third Circuit has advised courts to consider "whether new information came to light or was available earlier to the moving party." *Cureton v. NCAA*, 252 F.3d 267, 273 (3d Cir. 2001). The "question of undue delay requires that [a court] focus on the movant's reasons for not amending sooner." *Id.* "A motion to amend should be made **as soon as the necessity for altering the pleading becomes apparent**." *Lafate v. Vanguard Group, Inc.*, 2014 U.S. Dist. LEXIS 148086, at *3-4 (E.D. Pa. Oct. 16, 2014) (internal citations omitted) (emphasis added). "Courts in this district have found undue delay and/or prejudice where the proposed amendments assert new claims, where new discovery would be necessary, and where the motion for leave to amend was filed **months after the factual basis of the amendment was discovered by the moving party**." *Id.* at

*4 (finding unreasonable delay when amendments were based on facts known to plaintiff for over two years) (emphasis added); *see also Berger v. Edgewater Steel Co.*, 911 F.2d 911, 924 (3d Cir. 1990) (finding unreasonable delay when amendments were based on facts known to plaintiff for four and a half months); *Special Risk Ins. Servs., Inc.*, 2021 U.S. Dist. LEXIS 246020 (finding unreasonable delay when amendments were based on facts known to plaintiff for *three months*).

 *Berger v. Edgewater Steel Co.* is instructive. In *Berger*, the Third Circuit affirmed a denial of plaintiffs' motion for leave to amend because plaintiffs filed the motion after the close of an extended discovery period, four and a half months after the information upon which the motion was based became available, and attempted to assert a new claim and/or additional remedies that would have required new and extensive discovery. 911 F.2d 911 (3d Cir. 1990). In support of its decision, the Third Circuit held that "[t]he allowance of the [plaintiffs'] untimely motion for leave to amend by adding this new and substantially broader claim would put an unwarranted burden on the trial court and be likely to result in prejudice to [the defendant.]" *Id.* at 924.

 The timing of Plaintiff's Motion constitutes undue delay. Plaintiff filed this Motion *forty-nine days* after discovery closed and *months* after he discovered the factual basis of his proposed amendments. As demonstrated by Exhibit A, the vast majority of "newly" discovered information was known to Plaintiff between July 2, 2024 (one full year prior to Plaintiff's Motion) and March 3, 2025 (three months and twenty-seven days prior to Plaintiff's Motion). Ex. A. Even if Plaintiff indeed learned new information during discovery, he made the tactical decision to sit on that discovery for *months* without requesting timely relief from the Court. Plaintiff's gamesmanship is further apparent as his Motion was filed *two days after* the Court denied his Petition for Interlocutory Appeal, along with the corresponding

denial of Plaintiff's request for a stay of proceedings. This denial was the catalyst behind Plaintiff's Motion, not any "newly" discovered evidence.

Plaintiff's proposed amendments require re-opening of discovery, right as the parties are on the brink of its completion, necessarily resulting in an imposition of additional costs on the Saint Joseph's Defendants and the Court due to Plaintiff's failure to timely review documents received in discovery. Parties diligently conducted discovery as to Plaintiff's claims that survived the various motions to dismiss, and other than a few discrete items related to depositions, discovery ended months ago, with parties preparing for dispositive motion practice. Further, Plaintiff's reasons for not amending sooner fall apart under scrutiny. Plaintiff states he "could not have brought forth this Motion until this time[,]" because his proposed allegations were "based on new evidence that Plaintiff learned of during discovery[;]" however, the vast majority of this "newly" discovered evidence was known to Plaintiff by March 6, 2025 – more than three months prior. *See* ECF No. 200 at p. 10; Ex. A. Plaintiff argues he could not have filed this Motion while his Motion for Reconsideration (ECF No. 119) was pending; however, the Court's final decision as to that Motion was in August 2024, and Plaintiff provides no explanation as to why he did not file the instant Motion at any point since August 2024.

Additionally, the facts of this case are very similar to *Berger*, where plaintiffs' delay of four and a half months *after* the information was discovered and *after* discovery had closed led to a finding of undue delay. 911 F.2d at 924. Similarly here, Plaintiff delayed filing the instant Motion for as long as one year and eighteen days or as long as three and a half months after he received discovery behind his proposed amendments.[5] Discovery has

---

[5] The vast majority of discovery upon which Plaintiff bases the instant Motion upon was produced to Plaintiff between June 14, 2024, and March 5, 2025. *See* Ex. A.

largely been closed, and just like in *Berger*, "allowing the amendment here would inject new issues into the case requiring extensive discovery." *Berger*, 911 F.2d at 924.

Plaintiff has failed to provide the Court with a compelling reason to excuse his delay in filing this Motion, and his attempts to shift blame on the Saint Joseph's Defendants and the Court are unavailing. Accordingly, his Motion should be denied.

### 2. Bad Faith and Dilatory Motive

A motion to amend may be properly denied if there is a showing of bad faith. *See Foman v. Davis,* 371 U.S. 178, 182 (1962); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). The question of bad faith requires the Court to focus on Plaintiff's motives for not amending the complaint sooner. *See Adams v. Gould, Inc.,* 739 F.2d 858, 868 (3d Cir. 1984).

There are four indicia of bad faith present in Plaintiff's Motion. First, Plaintiff admits he filed this Motion *months* after receiving discovery supporting his proposed amendments because he failed to timely review received discovery. Second, Plaintiff attaches to his proposed Complaint hundreds of pages of documents designated as "Attorneys' Eyes Only." Third, Plaintiff attaches to his proposed Complaint an unredacted version of the final investigation report designated as "Attorneys' Eyes Only," while being in the possession of a minimally redacted version of the same document produced months prior. Fourth, Plaintiff attaches to his proposed Complaint a page from Saint Joseph's Defendants' privilege log while intentionally omitting preceding pages that refute Plaintiff's claims.

Plaintiff argues he filed the Motion in good faith "as soon as the ability to file it became apparent[.]" ECF No. 200 at p. 20. This is demonstrably false as most of the "newly" discovered information was received by Plaintiff between June 14, 2024 and March 3, 2025. *See* Ex. A. Further, Plaintiff openly admits he was dilatory in reviewing discovery. *See* ECF No. 200 at p. 17 ("Plaintiff's counsel then needed time to review these documents, in

particular the nine drafts of the report."); and p. 20 ("Plaintiff submitted this Motion as soon as the ability to file it became apparent from review of the voluminous documents produced by Defendants.") Plaintiff cannot in the same breath demand that Saint Joseph's Defendants produce thousands of pages of discovery, fail to timely review the requested discovery, and then proceed to blame the Saint Joseph's Defendants for producing "voluminous documents" that Plaintiff himself requested. Plaintiff's failure to timely review discovery does not save his untimely Motion and demonstrates the first indicia of bad faith.

Plaintiff's inclusion of highly confidential documents he received months prior as part of his proposed Complaint further demonstrates bad faith.[6] Plaintiff attaches to his proposed Complaint **two hundred and eighty-two pages** designated as "Attorneys' Eyes Only," while only citing to ten pages – less than four percent of these documents. *See* ECF No. 200, Exs. E and G. Notably, these documents were produced to Plaintiff months prior on September 4, 2024 and March 5, 2025. *See* Ex. A. Given the highly confidential nature of these documents, as well as the Court's consistent ruling that these documents are to be treated as such, Plaintiff's decision to sit on these "key" documents for months and then attach them in their entirety to his proposed Complaint demonstrates the second indicia of bad faith.

Plaintiff also attaches to his proposed Complaint the unredacted "Attorneys' Eyes Only" version of the investigation report produced on September 4, 2024 (SJU_MANCO_854-885), even though Plaintiff has in his possession a narrowly redacted "Confidential" version of the same report, which was produced on July 2, 2024 (SJU_MANCO_191-787). *See* Ex. A; ECF No. 200 at ¶¶ 96, 177, Ex. G. The Saint Joseph's

---

[6] The Saint Joseph's Defendants note that Plaintiff has a history of seeking highly confidential documents during discovery for the seemingly express purpose of providing the information contained therein to the media to "clear his name." Such abuse of the discovery process has resulted in disclosures of highly confidential information and documents to the press and is the subject of the pending Motion for Sanctions.

Defendants produced the unredacted version of the report to avoid a discovery dispute with Plaintiff and marked it as "Attorneys' Eyes Only" to protect student information pursuant to FERPA. ECF No. 7 at p. 7. The redactions to the "Confidential" version of the report are minor, shielding personally identifiable information protected under FERPA. ECF No. 201 at pp. 10-11. There was no need for Plaintiff to attach the unredacted version of the investigation report to his proposed Complaint, as the redacted version of the report conveys the same information while protecting highly confidential information. Therefore, Plaintiff's attachment of the unredacted version of the final investigation report demonstrates the third indicia of bad faith.

Plaintiff's reliance on allegedly "new" evidence gleaned from the Saint Joseph's Defendants' Privilege Log dated May 13, 2025 is further indicative of bad faith. ECF No. 200 at ¶¶ 209, 213. Plaintiff argues this "new" evidence demonstrates that Dr. McConnell "edited" the University's media statement and knew about its wide dissemination. Notably, Plaintiff makes it seem as if he first learned this information on May 13, 2025. This is false. The privilege log entries that Plaintiff references were added **on March 5, 2025**, as shown on page 19 of the same document, which Plaintiff conveniently omitted. *See* Redacted Portion of Saint Joseph's Defendants' Privilege Log dated May 13, 2025, attached hereto as Exhibit B at pp. 19, 22; *see also* Redacted Portion of Saint Joseph's Defendants' Privilege Log dated March 5, 2025, attached hereto as Exhibit C at pp. 25, 29-30. Yet again, Plaintiff's failure to timely review discovery is not a proper excuse here, demonstrating the fourth indicia of bad faith.

### E. Plaintiff's Attempt to Circumvent Prior Court Rulings Is an Exercise In Futility That Should Be Denied.

"Where an amended pleading would be futile, that alone is sufficient ground to deny leave to amend." *Kanter v. Barella*, 489 F.3d 170, 181 (3d Cir. 2007). "Futility means that

13

the complaint, as amended, would fail to state a claim upon which relief could be granted" under the standard of Federal Rule of Civil Procedure 12(b)(6). *El v. Marino*, 722 F. App'x 262 (3d Cir. 2018) (affirming denial of motion for leave to amend on futility grounds) (internal quotations omitted). In evaluating whether a plaintiff has stated a claim upon which relief could be granted, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Bronowicz v. Allegheny Cty.*, 804 F.3d 338, 344 (3d Cir. 2015) (internal quotation mark omitted).

On January 25, 2024, this Court partially granted the Saint Joseph's Defendants' motion to dismiss, dismissed Plaintiff's defamation, race discrimination, and civil conspiracy claims against the Saint Joseph's Defendants, and issued a detailed memorandum of law identifying the reasons why the dismissed claims were legally deficient.[7] ECF Nos. 106, 107. Despite having the benefit of the Court's detailed analysis, fifteen depositions, and voluminous discovery, Plaintiff fails to put forth the allegations necessary to "revive" his deficient claims. For this reason alone, Plaintiff's Motion should be denied with prejudice.

### 1. *Defamation as to Saint Joseph's University*

Plaintiff's amended defamation claims against the University are fatally deficient. The Court previously dismissed Plaintiff's defamation claim against the University, which was solely based on the University's media statement, on two separate grounds – failure to allege the defamatory implication of the statement and failure to allege that the statement "implied that [Plaintiff] has personally broken the law in a racist manner." ECF No. 106 at pp. 17-18.

---

[7] On August 19, 2024, this Court upheld its dismissal of Plaintiff's defamation, race discrimination, and civil conspiracy claims against the Saint Joseph's Defendants. ECF No. 143.

In dismissing Plaintiff's claim, the Court further noted that it "will not . . . extend claims for defamation to **mere implications** that someone **might** be racist." ECF No. 106 at pp. 18-19 (emphasis in original).

Plaintiff argues that his proposed Complaint "revives" his defamation claim against the University because it now alleges the negative implication of the University's media statement and facts to suggest that the media statement is capable of defamatory meaning. ECF No. 200 at pp. 10-11. A review of this "new" evidence demonstrates that Plaintiff is seeking a second (if not a third) bite of the apple by amending his defamation allegations using information he has known for months, if not years.

Plaintiff's "newly" discovered evidence relates to the University's media statement "harm[ing] the reputation of Plaintiff, lower[ing] him in the estimation of the [University], local, and academic community, and deter[ing] third persons from associating with him,"[8] "impl[ying] that not only was Plaintiff biased but that he was biased and discriminatory towards his students in his capacity as their professor[,]" and "convey[ing] to the reader that [the University] did not conspire with Renee Smith in drafting the Investigation Report, which it did, and that the independent investigator could not determine whether Plaintiff was biased or discriminatory." ECF No. 200 at p. 11. This is nothing new.[9] Plaintiff provides no

---

[8] This quote appears to come directly from the Court's recitation of the law as to whether a statement is capable of defamatory meaning. ECF No. 106 at p. 16 ("A statement is defamatory if it 'tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from association or dealing with him.'"). This allegation would not get past a motion to dismiss because it is a conclusory recitation of the elements of a cause of action. *See Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

[9] The Court has already analyzed and rejected such arguments in January 2024. ECF No. 106 at pp. 18-19 ("[V]iewing facts in a light most favorable to Manco, SJU's statement might lead a reader to conclude that there is a chance, however small, that Manco is a racist. In other words, a reader might conclude that because SJU's findings about Manco appear to be inconclusive, there is a chance that he was racist toward students.").

explanation why he could not have presented these "new" allegations at any point prior to this Motion and appears to base these "new" allegations entirely on the drafts of the investigation report and associated emails that pre-date the University's media statement. Further, none of these "new" allegations fix the fatal flaw in Plaintiff's defamation claim against the University – his repeated failure to allege that the University's media statement "implied that [Plaintiff] has personally broken the law in a racist manner." ECF No. 106 at pp. 17-18.

Plaintiff provides no reference to the newly added paragraphs that correspond with his revived defamation claim against the University; however, Saint Joseph's Defendants surmise these are Paragraphs 207-208, 214-216. In Paragraph 207, Plaintiff adds a defamatory statement attributed to the University by alleging that Ms. Morrison "published the false and defamatory report by forwarding it to Dr. McConnell and Hargust on May 7, 2021." ECF No. 200 at ¶ 207. In Paragraph 208, Plaintiff adds another defamatory statement attributed to the University by alleging that Ms. Morrison and the University's General Counsel shared the outcome of Ms. Smith's investigation with Kristopher Tapp ("Dr. Tapp") and Shaily Mennon ("Ms. Mennon"), noting that there was "insufficient evidence to make a determination that Dr. Manco did (or did not) violate the PPDHR." ECF No. 200 at ¶ 208. Yet again, "Plaintiff never explicitly alleges what the defamatory implication is, let alone that SJU implied that Manco was a racist *and* that he unlawfully abused his position to further his racism." ECF No. 106 at p. 18. A defamation claim based on allegations contained in Paragraphs 207 and 208 cannot survive a motion to dismiss (and therefore is futile) because Plaintiff has not alleged facts that suggest that these two "statements" are capable of a defamatory meaning or implication.

In Paragraphs 214 through 216, Plaintiff adds in "newly" discovered evidence as to

the University's two specific publications of its statement to the media[10] and stating that these statements were defamatory because they "impugned [on] Dr. Manco's conduct in the performance of his job by implying that even after a semester-long investigation, that the jury was still out as to whether he acted in a racist and discriminatory manner towards his students." ECF No. 200 at ¶¶ 214-216. Plaintiff fails to cite to the "newly" discovered evidence that led to these "new" allegations and fails to mention that the two media statements are close to identical.

Even if we accept that the allegations in Paragraphs 214 through 216 are "newly" discovered, they cannot "revive" Plaintiff's defamation claim against the University. The alleged implication that there is a chance that Plaintiff may have "acted in a racist and discriminatory manner towards his students[,]" is not synonymous with an accusation that "the accused has personally broken the law in a racist manner." At best, Plaintiff alleges that the defamatory implication of the University's media statement is that he may have acted in a racist manner towards his students. As previously stated by this Court, in Pennsylvania, a simple accusation of racism is not enough. ECF No. 106 at p. 18. Plaintiff's defamation claim against the University cannot survive a motion to dismiss, and therefore, Plaintiff's Motion as to this claim should be denied.

### 2. Defamation as to Dr. McConnell

Plaintiff's amended defamation claims against Dr. McConnell are similarly fatally deficient. Plaintiff's basis for "reviving" his defamation claim against Dr. McConnell is due to "new evidence [received] through discovery showing that Dr. McConnell was an author and

---

[10] The University's media statement to Todd Shepard as alleged by Plaintiff in Paragraph 214 of his proposed Complaint is not "newly" discovered as this specific media statement is attached to Plaintiff's current Second Amended Complaint. ECF No. 51 at p. 228.

contributor to SJU's media statement."[11] ECF No. 200 at p. 19. Notably, the documents cited by Plaintiff do not support this "new" allegation neither demonstrate nor suggest that Dr. McConnell edited or authored the University's media statement. See ECF No. 200 at Ex. O. Even if we accept as true Plaintiff's allegations that Dr. McConnell "was an author and contributor to SJU's media statement," Plaintiff fails to allege that it was Dr. McConnell who published the University's statement to the media. Not only that, but Plaintiff presents evidence that the two statements that serve as the basis for his defamation claim against Dr. McConnell were published by someone else – namely, Gail Benner, the University's Director of Public Relations and Media. ECF No. 200 at ¶¶ 214-215 and Ex. H. Publication by the defendant is a requisite element of a defamation claim, and Plaintiff doomed his defamation claim against Dr. McConnell by presenting allegations and evidence to the contrary.

Plaintiff further alleges that "[Dr.] McConnell published *her comments, suggestions and/or edits* to Gail Benner on May 10 and 11, 2021[,]" however this allegation cannot serve as a basis for Plaintiff's defamation claim against Dr. McConnell because "[m]erely alleging that two people 'communicated' in a way [Plaintiff] might not have liked, without any evidence of what these alleged communications say, is a conclusory allegation." ECF No. 106 at p. 19. Plaintiff fails to point to the evidence that supports this "new" allegation, and therefore, any alleged comments, suggestions, and/or edits penned by Dr. McConnell cannot be the basis for a defamation claim.

For these reasons, Plaintiff's defamation claim against Dr. McConnell cannot survive a motion to dismiss, and therefore, Plaintiff's Motion as to this claim should be denied.

---

[11] Plaintiff does not attempt to "revive" his defamation claim against Dr. McConnell based on her communication with Hargust and her May 3, 2022 letter – and therefore, any such arguments are waived.

### 3.  *False Light as to Dr. McConnell*

Plaintiff's basis for reviving his false light claim against Dr. McConnell is similarly due to "new evidence [received] through discovery showing that Dr. McConnell was an author and contributor to SJU's media statement."[12] ECF No. 200 at p. 19. A false light claim in Pennsylvania requires "that the "matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Casselli v. City of Philadelphia*, 54 F. Supp. 3d 368, 380 (E.D. Pa. 2014) (*quoting Curran v. Children's Service Center of Wyoming County, Inc.*, 578 A. 2d 8, 12 (Pa. Super. 1990)) (internal quotations omitted). Plaintiff, yet again, fails to adequately allege publicity by Dr. McConnell because Plaintiff fails to allege that the media statement was published by Dr. McConnell to the public at large. Despite deposing Dr. McConnell over two days and reviewing thousands of documents produced in discovery, Plaintiff cannot point to ***any*** facts that Dr. McConnell published, publicized, or authored the media statement in question, thereby dooming Plaintiff's false light claim against her.

Plaintiff alleges that "[Dr.] McConnell published her comments, suggestions and/or edits to Gail Benner on May 10 and 11, 2021[,]" however the Court has already held that "[d]isclosure to [four persons or less] is insufficient for false light under Pennsylvania law." ECF No. 106 at p. 34. Plaintiff's false light claim against Dr. McConnell cannot survive a motion to dismiss, and therefore, Plaintiff's Motion should be denied.

### 4.  *Race Discrimination as to the Saint Joseph's Defendants*

Plaintiff's proposed amendments do not save his doomed race discrimination claim.

---

[12] Plaintiff presents no evidence to support his allegation that Dr. McConnell was the "author" of the University's media statement. Exhibit O to Plaintiff's proposed Complaint simply shows that two emails were sent from Gail Benner ***to Dr. McConnell***. ECF No. 200 at Ex. O. At best, Exhibit O demonstrates that Dr. McConnell was involved in reviewing "talking points" generated by the University and in-house counsel.

The Court previously dismissed Plaintiff's race discrimination claims against the Saint Joseph's Defendants because Plaintiff failed to adequately plead an inference of unlawful race discrimination. Further, the only adverse employment action pled by Plaintiff in all prior iterations of his Complaint was the non-renewal of his teaching contract.

Plaintiff's bases his "revived" race discrimination claims against the Saint Joseph's Defendants on "evidence that was produced by SJU through discovery to show that he indeed was intentionally discriminated against by SJU based on his race and that he was treated differently than other non-white Professors." ECF No. 200 at p. 16. Plaintiff fails to identify the newly added paragraphs that correspond to his race claims. However, it appears that Paragraphs 113 through 130 are relevant to this analysis and pertain to three distinct sets of events: (1) the University's submission to the Faculty Review Board relating to Plaintiff's appeal of his non-renewal, (2) the University's alleged retention of a black professor in summer of 2021, and (3) the University's alleged differential treatment of a non-white professor. ECF No. 200 at ¶¶ 113-130.

The University's submission to the Faculty Review Board, which was produced to Plaintiff on June 2, 2024, does not revive Plaintiff's doomed race discrimination claim.[13] Plaintiff argues that the University's submission "revealed its illegal motives for putting [Plaintiff] on immediate administrative leave during the investigation," because "[h]ad Dr. Manco not been the same race as the police officers being accused by the Public of killing Walter Wallace Jr. or George Floyd, then SJU would not have taken such adverse actions against him[.]" ECF No. 200 at ¶¶ 113, 114 (emphasis added). However, placing an employee on paid administrative leave pending an investigation is ***not*** an adverse

---

[13] Paragraphs 113 through 116 relate to the University's submission to the Faculty Review Board and cite to Exhibit I of Plaintiff's proposed Complaint. Exhibit I was part of the Saint Joseph's Defendant's July 2, 2024 document production.

employment action adequate to support a discrimination claim. *See, e.g.*, *Rosati v. Colello*, 94 F. Supp. 3d 704, 714 (E.D. Pa. 2015) ("Without negative consequences, [an] investigation alone is not an adverse employment action."); *Killen v. Nw. Human Servs.*, No. 06-4100, 2007 U.S. Dist. LEXIS 66602 (E.D. Pa. Sep. 7, 2007).

Even if placing Plaintiff on paid administrative leave was an adverse employment action (it is not), there is simply no inference of discrimination here and Plaintiff likening himself to police officers who killed two black men is outrageous.[14] Plaintiff's allegation of being a "white scapegoat" is an unsupported speculation that need not be credited by the Court. *See, e.g.*, *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (holding that courts are not to credit "bald assertions" or "a legal conclusion couched as a factual allegation."). The University was providing context in which the events of February 2021 occurred to the Faculty Review Board, and nothing in the University's submission creates an inference that had Plaintiff been any other race but white, that the University would have reacted differently to complaints of bias and discrimination in the classroom. In addition, Plaintiff fails to allege that Dr. McConnell authored this document, or was involved in its creation, and therefore Plaintiff cannot use it as a basis to revive his race discrimination claim against Dr. McConnell.

Plaintiff's allegation that the University retained a black female statistics professor while it chose not to renew his contract further fails to "revive" Plaintiff's doomed race discrimination claim.[15] Plaintiff alleges that the source of this allegation was "newly"

---

[14] Plaintiff incorrectly assumes that all police officers who were arrested and tried for the murder of George Floyd were white.

[15] Paragraphs 117 through 121 relate to Plaintiff's allegation that the University retained a black female statistics professor while it chose not to renew his contract, with Plaintiff citing to SJU_MANCO_0804 and Exhibit J of Plaintiff's proposed Complaint. Both SJU_MANCO_0804 and Exhibit J (Bates stamped SJU_MANCO_0844) were part of the Saint Joseph's Defendant's July 2, 2024 document production. *See* Ex. A.

discovered evidence, however, SJU_MANCO_0844 does ***not*** contain any professor names, their race, or their qualifications, and Plaintiff fails to explain to the Court how his "new" allegations stem from the information contained in SJU_MANCO_0844. *See* ECF No. 200 at Ex. J; Ex. A. Plaintiff's disingenuous attempt to revive his race claims based on pure speculation must be rejected.

Plaintiff' own presented evidence further undermines his allegations as to Professor Burton. Plaintiff inserts into his proposed Complaint a screenshot of three decision filters that the University used in deciding which Visiting Assistant Professors ("VAP") will be retained, including an inquiry into whether the VAP in question has expertise that is essential but not available ***in the department's tenure track faculty***, and whether proposed courses can be covered by ***tenure track faculty and adjuncts***. ECF No. 200 at ¶ 117. Plaintiff alleges there is an inference of discrimination because the University retained Professor Burton, a black woman, as part of the Decision and Systems Science Department, arguing that the University "selected [her] over Dr. Manco due to SJU's true need to combat the racial tensions that existed on campus and save face by renewing a black Professor over Dr. Manco." ECF No. 200 at ¶¶ 118-121. Unfortunately for Plaintiff, pure speculation and conclusory allegations cannot survive a motion to dismiss. There is no inference that can be gleaned from SJU_MANCO_0804 and SJU_MANCO_0844 to demonstrate that Dr. Burton was selected "over" Plaintiff because the decisional filters clearly show that analysis of expertise was made on a department-level basis (Dr. Burton was not in Plaintiff's department) and analysis of coverage included only tenure track faculty and adjuncts (Plaintiff was neither).[16]

---

[16] Plaintiff fails to allege that Dr. McConnell made the decision to select Dr. Burton "over" Plaintiff or even that she was involved in such decision making. Accordingly, Plaintiff cannot

Further, Plaintiff's allegations that "[h]ad Dr. Manco not been a white Professor during a time when SJU was more with the University's public image than supporting its faculty, then Dr. Manco would have received the same treatment from SJU as Taoufik" fail to demonstrate the requisite inference of discrimination to salvage his failed race discrimination claim.[17] Per Plaintiff's own allegations, the difference in treatment was *not* race-based, but rather due to the University's concern with public image. ECF No. 200 at ¶ 128. Further, the University's decision to place Plaintiff on paid administrative leave is not an adverse employment action adequate to support a discrimination claim. *See, e.g.*, *Rosati*, 94 F. Supp. 3d at 714.. Plaintiff also fails to include Dr. McConnell in his allegations related to Professor Taoufik, and therefore, he cannot use them as a basis to revive his race discrimination claim against Dr. McConnell.

Accordingly, Plaintiff's race discrimination claims against the Saint Joseph's Defendants cannot survive a motion to dismiss, and therefore, Plaintiff's Motion as to these claims should be denied.

### 5. Civil Conspiracy as to Saint Joseph's Defendants

Plaintiff's civil conspiracy claims against the Saint Joseph's Defendants are precluded under the doctrine of *res judicata* because the Court previously dismissed them **with prejudice**.[18] *See* ECF No. 106 at p. 40; ECF No. 107 at para. 1. "A dismissal with prejudice 'operates as an adjudication on the merits,' so it ordinarily **precludes future claims**." *Papera v. Pennsylvania Quarried Bluestone Co.*, 948 F.3d 607, 611 (3d Cir. 2020) (*quoting Landon*

---

[17] use the University's retention of Dr. Burton as a basis to revive his race discrimination claim against Dr. McConnell.

[17] Paragraphs 122 through 130 relate to Plaintiff's allegations as to Professor Taoufik, with Plaintiff citing to the deposition of Kristopher Tapp and SJU_MANCO_003752 in support.

[18] Plaintiff's omission of this fact in his Motion is telling and demonstrates his lack of candor with the Court.

*v. Hunt*, 977 F.2d 829, 832-33 (3d Cir. 1992)) (emphasis added). Application of *res judicata* is appropriate here because Plaintiff cannot re-assert civil conspiracy claims that the Court has previously dismissed with prejudice. Further, application of *res judicata* would serve the interests of fairness, finality, and judicial economy.

Even if *res judicata* was not applicable here (it is), Plaintiff's "revived" civil conspiracy claims against the Saint Joseph's Defendants are futile. The Court clearly stated that "it **must** be alleged that the sole purpose of the conspiracy was to injure[,]" that Plaintiff "failed to establish that the **sole purpose** of SJU's actions was to injure him[,]" and that Plaintiff "entirely failed to plead that any of the defendants acted with the sole intent to injure or harm him." ECF No. 106 at pp. 38-40. The Court further clarified that "Plaintiff's civil conspiracy claim was dismissed due to the failure to allege that defendants acted with malicious intent, defined as meaning 'solely to injure.'" ECF No. 143 at p. 1, n. 1. Despite such clear instruction, Plaintiff's proposed Complaint fails to allege that the University and Dr. McConnell acted with sole intent to injure or harm.

In his Motion, Plaintiff addresses "new" allegations of civil conspiracy in Paragraphs 55, 58, and 63-65 of his proposed Complaint.[19] *See* ECF No. 200 at pp. 18-19. None of these paragraphs save Plaintiff's civil conspiracy claim against the University because, yet again, Plaintiff fails to allege that SJU's **sole purpose** for the alleged actions was to injure Plaintiff. Plaintiff further fails to point to **any** "new" allegations of civil conspiracy as to Dr. McConnell. *See* ECF No. 200 at pp. 18-19.

In Paragraphs 55 and 64, Plaintiff alleges Ms. Morrison encouraged Ms. Colbert and Ms. Lopez to find other students who experienced bias, harassment, discrimination, or misconduct in Plaintiff's classroom and to direct them either to Ms. Morrison or to file their

---

[19] Paragraphs 63 does not allege any action on behalf of the Saint Joseph's Defendants.

own bias reports. Plaintiff further alleges in Paragraph 65 that "SJU clearly conspired with Colbert and Lopez by instructing them both to gather additional complaints against Dr. Manco." None of these paragraphs are based on "newly" discovered evidence as the Court has already reviewed Ms. Morrison's conduct during the consultation process and rejected it as a basis for a valid civil conspiracy claim against the University.[20] ECF No. 106 at p. 39. Despite being previously instructed that the applicable test for civil conspiracy claims on a motion to dismiss is one of sole motive, Plaintiff to his detriment, continues to allege facts consistent with the mixed motive standard.

In Paragraph 58, Plaintiff alleges that Devin Yingling was an agent of the University because she was a "News Editor for SJU's student newspaper," and that she communicated with Ms. Colbert about "going to get [Manco] f***ing fired." Plaintiff presents no additional facts tying Ms. Yingling to the alleged conspiracy and fails to explain how Ms. Yingling's private conversation with Ms. Colbert demonstrates that it was the University's sole purpose to injure Plaintiff.

Even if we set *res judicata* aside, Plaintiff has failed to plead colorable civil conspiracy claims against the Saint Joseph's Defendants despite having the benefit of an extended discovery period and obtaining deposition testimony from at least fifteen witnesses. Plaintiff's amended civil conspiracy claims against the Saint Joseph's Defendants would not survive a motion to dismiss, and therefore Plaintiff's amendments are futile. Accordingly, Plaintiff's Motion as to civil conspiracy claims against the Saint Joseph's Defendants should be denied with prejudice.

---

[20] "[Plaintiff] alleges that SJU informed a student that to strengthen a claim for a Title IX violation, the student should find other students who could corroborate this claim. Even if SJU's actions hurt Manco, he has not properly alleged that the sole purpose of this action was to harm him. His harm occurred, according to his own allegations, while SJU investigated his behavior—his injury is incidental to another purpose." ECF No. 106 at p. 39.

IV.    **CONCLUSION**

For the foregoing reasons, Defendants Saint Joseph's University and Dr. Cheryl McConnell, respectfully request that this Court deny Plaintiff's Motion for Leave to File a Third Amended Complaint. A proposed order is attached.

Respectfully submitted,

**TUCKER LAW GROUP, LLC**

Dated: July 23, 2025              _/s/ Candice Kearney_
                                 Candice Kearney, Esq.
                                 Yuliya Khromyak, Esq.
                                 Ten Penn Center
                                 1801 Market Street, Suite 2500
                                 Philadelphia, PA 19103
                                 (215) 875-0609

                                 *Counsel for Defendants Saint Joseph's University and Dr. Cheryl McConnell*

## CERTIFICATE OF SERVICE

I, Candice Kearney, Esquire, hereby certify that I caused to be served a true and correct copy of the foregoing document to the following counsel of record via the Court's electronic filing system:

Joseph M. Toddy, Esquire
Scott Zlotnick, Esquire
**ZARWIN BAUM, DeVITO**
**KAPLAN, SCHAER & TODDY, P.C.**
2005 Market Street, 16th Floor
Philadelphia, PA 19103
*Attorneys for Plaintiff*

Deniz Uzel Reilly, Esquire
Sarah Myirski, Esquire
**FISHER & PHILLIPS, LLP**
100 N. 18th Street, 12th Floor
Philadelphia, PA 19103
*Attorney for Defendants,*
*Hadassah Colbert, Kiernan Loue,*
*Karleigh Lopez, Erin Fahey and*
*Corrine McGrath and Lynly Carman*

*/s/ Candice Kearney*
Candice Kearney, Esquire

Dated: July 23, 2025