IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREGORY V. MANCO, Ph.D., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : CIVIL ACTION NO. 5:22-CV-00285 |
| | : |
| ST. JOSEPH'S UNIVERSITY, | : |
| HADASSAH COLBERT, KIERNAN | : |
| LOUE, LYNLY CARMAN, KARLEIGH | : |
| LOPEZ, ERIN FAHEY, CORRINE | : |
| MCGRATH AND DR. CHERYL | : |
| MCCONNELL | |
| | : |
| Defendants. | : |

## ORDER

AND NOW, this _____ day of _____, 2025, upon consideration of Plaintiff, Gregory V. Manco, Ph.D's Motion for Sanctions Against Defendant, St. Joseph's University, and any responses thereto, it is hereby ORDERED that the Motion is GRANTED. IT IS FURTHER ORDERED:

1. Judgement is entered against Defendant St. Joseph's University with respect to Plaintiff's False Light claim against them;

2. The documents titled "████████████████████████████" as referenced in SJU_Manco_003150 shall be produced in their native format within ten (10) days of the date of this Order;

3. Defendant St. Joseph's University is to produce Tracy Pachman, Esq. for a deposition within twenty (20) days from the date of this Order; and

4. Defendant St. Joseph's University is to produce the documents included in the Court's July 23, 2025 Order within seven (7) days from the date of this Order or risk further sanctions.

BY THE COURT:

_____
The Hon. Jeffrey L. Schmehl

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREGORY V. MANCO, Ph.D., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :     CIVIL ACTION NO. 5:22-CV-00285 |
| | : |
| ST. JOSEPH'S UNIVERSITY, HADASSAH COLBERT, KIERNAN LOUE, LYNLY CARMAN, KARLEIGH LOPEZ, ERIN FAHEY, CORRINE MCGRATH AND DR. CHERYL MCCONNELL | : |
| | : |
| Defendants. | : |

**PLAINTIFF'S MOTION FOR SANCTIONS**
**AGAINST DEFENDANT ST. JOSEPH'S UNIVERSITY**

Plaintiff, Gregory Manco, by and through his counsel, herein motions this Honorable Court to Sanction Defendant St. Joseph's University for the reasons set forth in the accompanying Memorandum of Law, all of which is incorporated herein by reference.

                                                                             Respectfully submitted,
                                                                             ZARWIN, BAUM, DeVITO,
                                                                             KAPLAN, SCHAER & TODDY, P.C.

                                                                             /s/ Joseph M. Toddy
                                                                             JOSEPH M. TODDY, ESQ.
                                                                             2005 Market Street, 16th Floor
                                                                             Philadelphia, PA  19103
                                                                             215.569.2800; Fax  215.569.1606
                                                                             Attorney for Plaintiff
                                                                             jmtoddy@zarwin.com

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREGORY V. MANCO, Ph.D., | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION NO. 5:22-CV-00285 |
| ST. JOSEPH'S UNIVERSITY, HADASSAH COLBERT, KIERNAN LOUE, LYNLY CARMAN, KARLEIGH LOPEZ, ERIN FAHEY, CORRINE MCGRATH AND DR. CHERYL MCCONNELL | : |
| Defendants. | : |

**PLAINTIFF GREGORY V. MANCO, PH.D'S MOTION FOR SANCTIONS AGAINST DEFENDANT ST. JOSEPH'S UNIVERSITY**

Plaintiff Gregory V. Manco, Ph.D. ("Plaintiff" or "Dr. Manco"), by and through his attorneys, Zarwin Baum DeVito Kaplan Schaer Toddy, PC, respectfully submits this Memorandum of Law in support of Plaintiff's Motion for Sanctions Against Defendant St. Joseph's University. In support of this motion, Plaintiff submits the attached Memorandum of Law, the exhibits thereto, and the proposed form of Order.

**I. INTRODUCTION**

On March 15, 2021, Plaintiff, Dr. Gregory V. Manco's ("Plaintiff" or "Dr. Manco") former attorney, Samantha Harris, during the course of the "independent" external investigation into Plaintiff, sent a preservation letter to Defendant St. Joseph's University's ("SJU") General Counsel, Tracy Pachman. *See* March 15, 2021 Preservation Letter attached as Exhibit "A." The letter explicitly stated that SJU was to preserve any and all evidence related to the external

investigation into Dr. Manco, including any notes. Also included was that SJU was to notify any persons responsible for maintaining any of the documents referenced in the letter of their duty to preserve said information, such as Renee Smith, the outside counsel who performed the investigation. As Plaintiff's then attorney stated, SJU's failure to comply with the preservation letter could result in sanctions being imposed against them should a lawsuit be filed against them.

Despite being in receipt of the preservation letter during Renee Smith's investigation and understanding the potential consequences for their destruction of documents, SJU failed to inform Ms. Smith of her duty to keep all documents related to her investigation, including any notes or memoranda outlining conversations she had with individuals who participated in the investigation. When asked at her deposition about her conversations with witnesses who participated in the investigation, Ms. Smith testified that she did not recall any of the conversations and, importantly, that she no longer has any contemporaneous notes. She testified that she has no idea what she did with her notes despite acknowledging they existed and that SJU never told her to keep them. *See* relevant excerpts from Renee Smith's deposition testimony attached as Exhibit "B" at 44:7 to 45:24.

Due to SJU's failure to abide by the preservation letter, Plaintiff has been severely prejudiced due to his inability to determine the full extent of the conversations Ms. Smith had with any individual who played a role in ███████████████████ and her final report regarding her investigation into Dr. Manco. Ms. Smith's inability to recall any of her conversations makes her notes critical to Plaintiff's case since she was unable to offer testimony as to the credibility of witnesses nor the extent of their conversations. Plaintiff is thus unable to discern if any witness testimony was intentionally omitted from Ms. Smith's final report that may have further supported Plaintiff's testimony and bolstered his credibility while diminishing the credibility of the

complainants.[1] Additionally, Plaintiff does not know the extent of the conversations that Ms. Smith had with any employee of SJU who reviewed and assisted ▮▮▮▮▮▮▮▮▮▮▮▮ and the final report.

SJU has also failed to produce the documents entitled "▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮ as referenced in SJU_Manco_003150 despite responding to Plaintiff's January 6, 2025 Discovery Deficiency Letter that the documents have been produced. *See* SJU's March 5, 2025 discovery responses attached as Exhibit "C." None of the referenced documents include the native format[2] and title of the referenced documents. Thus, Plaintiff cannot discern the information included in those documents that were crucial in initiating the investigation into him. Ms. Morrison's deposition testimony acknowledging the litigation hold letter means that both documents should have been preserved and given to Plaintiff in their native format in discovery.

Additionally, SJU failed to provide Plaintiff with any of the documents that the Court ordered be produced on July 23, 2025. *See* Doc. 212 attached as Exhibit "D." Among the documents not produced were those related to the disparate impact analysis, which the Court stated, "may be highly relevant to the claims and defenses in this case." SJU instead stated that the documents were privileged. However, SJU never made that argument in their June 26, 2025 letter to the Court in response to Plaintiff's initial letter nor did they file a Motion for Reconsideration.

---

[1] There is no requirement for a meet and confer procedure for a motion made under Fed. R. Civ. P. 37(e). A motion made under this provision is not a motion seeking to compel disclosure or production subject to the good faith confer certifications required by Fed. R. Civ. P. 37 (a)(1) and Fed. R. Civ. P. 37 (d)(1) (B). Nor is it required under the ED Pa Local Rules as it is not a "discovery" motion. *See*, *e.g.*, *Martin v. SGT, Inc*. (D. Utah 2022) 2022 U.S. Dist. LEXIS 232888 ("Martin offers no support for applying Local Rule 37-1's meet-and-confer requirement to motions for sanctions based on alleged failure to comply with prior court orders or spoliation. Nor is the court aware of any authority applying a meet-and-confer requirement in such a scenario.")

[2] "The native file format is the file structure defined by the original creating application." *Race Tires America, Inc. v. Hoosier Racing Tire Corp*., 674 F.3d 158, n.2 (3d Cir. 2012).

## II. BACKGROUND

The Court is well aware of the history of this case. Dr. Manco was improperly placed on administrative leave by SJU on February 19, 2021 for his social media activity, hours after Defendant Hadassah Colbert ("Colbert") doxed him over selected tweets of his that she purported to be racist and transphobic. Ms. Colbert and Defendant Karleigh Lopez ("Lopez"), both of whom were alums of the University, doxed and defamed Dr. Manco while pleading to their social media followers to report him in order to pressure SJU into taking immediate action. After receiving swift public pushback for violating Dr. Manco's contractual right to speak freely as a citizen, SJU decided after the fact and in bad faith that Dr. Manco's alleged classroom conduct, not his tweets, would be the pretext for his investigation and placement on leave for the remainder of the semester. While Dr. Manco was on leave, Lexi Morrison encouraged Ms. Lopez to get others to file classroom complaints against Dr. Manco; Ms. Lopez, in turn, relayed it to followers of hers along with sending them a link to the bias reporting form.

SJU then retained Renee Smith, Esquire, to conduct the "independent and external" investigation into whether or not the allegations made against Dr. Manco violated SJU's policies. Although Ms. Smith cleared Dr. Manco on all counts, SJU misrepresented her findings in the statements to the media and chose not to renew his full-time contract.

As discussed above, less than one (1) month after being placed on leave, Plaintiff's former attorney sent SJU's General Counsel, Tracy Pachman, a preservation letter to ensure that all documents related to the investigation into Dr. Manco were maintained. However, SJU blatantly disregarded Ms. Harris' letter and did not inform Ms. Smith of her need to preserve the documents made in connection with her investigation, including notes and/or audio recordings with individuals who participated in the investigation and ultimately assisted in its outcome. As a result,

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████. *See* Ex. B at 44:7-14.[3] Ms. Smith further stated she could not even recall anything about her interviews with Dr. Manco. *Id*. at 47:19-22. Ms. Smith testified that that she would have kept contemporaneous notes on those conversations and that she no longer had them. *Id*. at 44:15-20. Importantly, she testified that no one from SJU asked her to keep her investigation file. *Id*. at 44:23-45:8.

In terms of witness credibility, Ms. Smith testified that some of the things she looks for during her interviews are a witnesses demeanor, what they are telling her versus what a document says and, if a second interview is warranted, which it was here for several witnesses, asking them about what someone else might have told her. *Id*. at 59:4-22. In addition to any notes pertaining to witness statements and credibility, Ms. Smith's failure to preserve evidence has also prevented Plaintiff from seeing any notes she made based on her conversations with Lexi Morrison, SJU's then Director of the Office for Title IX and Equity Compliance and Chair of SJU's Bias Activity Response, ████████████████████████ ████████████████████████████████

---

[3] ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████. *Id*. at 51:4-18.

Lexi Morrison testified that she was aware there was a litigation hold in place. *See* relevant portions of Lexi Morrison's Deposition Transcript attached as Exhibit "F," at 10:17-22. Ms. Morrison stated that it is her normal practice when receiving a litigation hold letter not to delete anything. *Id.* at 12:2-12. Despite that knowledge, Ms. Morrison testified she did not communicate to Ms. Smith that she was required to keep all of her records. *Id.* at at 258:9-14. This was despite the fact that Ms. Morrison was one of her primary points of contact at SJU during the investigation. *Id.* Ms. Morrison stated that it was the responsibility of the general counsel's office (Ms. Pachman) to send a litigation hold letter once it was received to an outside investigator. *Id*. at 259:2-14. She does not know if that happened in this instance, meaning the only person who would know is Ms. Pachman. *Id*. at 258:15-17.

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████████ and stated that they were that document. However, it does not make sense that those documents constitute that document since it should be one single document. Further, the document was not produced in its native form of the titled PDF. Since the documents played a critical role in the investigation into Dr. Manco, there is no reason that they should not have been produced as they were initially presented to Plaintiff nor is there anything preventing SJU from producing them in their original format.

Additionally, on July 23, 2025, this Court issued an Order directing SJU to produce certain documents that had been requested in a number of Requests for the Production of Documents. *See* Doc. 212. On August 25, 2025, Plaintiff's counsel emailed SJU's counsel after they failed to produce the documents within 30 days. On August 27, 2025, SJU provided a letter response. With respect to the Court Order regarding any and all documents being produced related to the disparate impact analysis, SJU stated that, "Following receipt of ECF No. 212, the [SJU] Defendants reviewed the requested disparate impact analysis documents and determined that these documents were protected by attorney-client and work-product privilege." *See* Plaintiff's August 25, 2025 email and SJU's August 27, 2025 Letter attached as Exhibit "G." The privilege argument was never made to the Court prior to its decision nor was it raised in a Motion for Reconsideration following the July 23rd Order.

### III. ARGUMENT

#### A. The Governing Standards

Plaintiff asks the Court to sanction the SJU Defendants for their failure to preserve evidence when they knew to a certainty that there would be litigation. "Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Paramount Pictures Corp. v. Davis*, 234 F.R.D. 102, 110 (E.D. Pa. 2005) (*quoting Mosaid Techs., Inc. v. Samsung Elecs. Co., Ltd*., 348 F. Supp. 2d 332, 335 (D.N.J. 2004)). This Court can address the spoliation of evidence under its inherent authority to manage litigation and to impose the appropriate sanction for the failure to preserve and produce documentary evidence. *See, e.g., Bull v. United Parcel Service, Inc.,* 665 F.3d 68, 73 n. 5 (3d Cir. 2012) (citing standards).

On the other hand, the standards governing a party's failure to preserve and produce electronically stored information ("ESI") find their source in Fed. R. Civ. P. 37(e). In 2015, Rule 37 was amended to provide a uniform standard governing spoliation sanctions for the loss of electronically stored information. The United States Supreme Court promulgated amended Rule 37(e) in recognition of 'the serious problems resulting from the continued exponential growth in the volume of [electronically stored] information.'" *See e.g.*, *Bistrian v. Levi*, 448 F. Supp. 3d 454, 464 (E.D. Pa. 2020) (citing Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment). "Where the amended rule applies, it provides the exclusive remedy for spoliation of electronically stored information ('ESI'), foreclosing reliance on the court's inherent authority." *Id.; see also Accurso v. Infra-Red Servs., Inc.*, 169 F. Supp. 3d 612, 618 (E.D. Pa. 2016) (Rule 37(e) 4 "specifically addresses the applicability of sanctions for spoliation of electronically stored information.").

Amended Rule 37(e) further provides that spoliation occurs where ESI "that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e).

The elements of spoliation are first, "the spoliating party was under a duty to preserve when the loss occurred." Second, "the lost ESI was within the scope of the duty to preserve." Third, "the information was lost because the party failed to take reasonable steps to preserve" it. And fourth, "because ESI 'often exists in multiple locations,' spoliation occurs only where the information is

truly lost and not recoverable elsewhere." *Bistrian*, 448 F. Supp. 3d at 465 (quoting Fed. R. Civ. P. 37(e) Advisory Committee's Note to 2015 amendment). [4]

Once spoliation is found to have occurred, the Court is instructed to determine what sanction to impose.[5] *Bull v. United Parcel Service, Inc.,* 665 F.3d 68, 73 n. 5 (3d Cir. 2012). Rule 37(e) provides that "(1) upon finding prejudice to another party from loss of the information, [the court] may order measures no greater than necessary to cure the prejudice; or (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation [the court] may: (A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter default judgment."

To determine which sanctions should be imposed, the Court must find either prejudice to the moving party (this entitles him to the "lesser" sanctions of 37(e)(1), with no bad faith required), or that the non-moving party acted with the intent to deprive the moving party of the ESI's use in litigation (which shows bad faith, and entitles the affected party to the harsher sanctions of 37(e)(2)). *See Ansley v. Wetzel*, 2023 U.S. Dist. LEXIS 2054, at *4 (Jan. 5, 2023, M.D. Pa.); *GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 83 (3d Cir. 2019).

The Third Circuit has set out three factors for courts to consider in contemplating spoliation sanctions: (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will

---

[4] Although the format of the documents that SJU did not produce is unknown to him, Plaintiff assumes for the sake of this motion that most of it, such as email and documents transmitted or filed electronically, were in electronic format, and thus subject to the purview of Rule 37(e).

[5] This Court recently entered an Order (Doc. 225) sanctioning Plaintiff despite finding the violation was unintentional. In this instance, SJU's conduct appears willful in that they intentionally disregarded a litigation hold letter and did not instruct Ms. Smith to maintain her entire investigation file, which likely contained evidence that was highly favorable to Plaintiff's action. Plaintiff anticipates that this Court will appreciate the gravity of this egregious act given that Plaintiff was sanctioned for a far less serious offense.

avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future. *GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 82 (3d Cir. 2019) (*quoting Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994)). These factors remain applicable to motions governed by the amended Rule 37(e).

### B. SJU was Aware of the Preservation Letter and Failed to Inform Ms. Smith of Her Obligation to Preserve Her Investigation File

Despite Ms. Morrison's acknowledgement that SJU was aware of the preservation letter sent by Dr. Manco's former attorney, SJU failed to place Ms. Smith on notice of the necessity to maintain her investigation file. Their failure to do is inexcusable under Rule 37(e), which incorporates the common-law "duty to preserve relevant information when litigation is reasonably foreseeable." *See*, *e.g.* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.); *Bull*, *supra*. Under these facts, litigation by Dr. Manco was not merely foreseeable, it was a virtual certainty.

SJU's failure to maintain all documents related to the investigation into Dr. Manco make it far more difficult to show SJU's intent and state of mind while Ms. Smith was performing her so-called "independent investigation"[6] of Dr. Manco. Dr. Manco has never seen the full unredacted version of the Investigation Report and thus was unable to discuss with Ms. Smith her findings at the investigation's conclusion when her memory may have been clearer as to who she spoke with and the contents of those conversations. Thus, there is no other source for that material or the other material that SJU or Ms. Smith discarded.

Moreover, Ms. Smith professed a lack of knowledge or memory about her entire investigation that would have been reflected or memorialized in memoranda or email exchanges,

---

[6] [redacted]

such as her contemporaneous notes regarding conversations she had with complainants and any credibility determinations that speak to whether the complaints levied against Dr. Manco were done with an intent to harm and damage his reputation.

Additionally, Ms. Morrison, despite her knowledge of the litigation hold letter, ███████ ████████████████████████████████████████████████. Similar to Ms. Smith's investigation file, those documents served as the basis for the investigation into Dr. Manco and are critical to Plaintiff's case.

Where, as here, evidence was destroyed in bad faith, "the burden shifts to the spoliating party to show lack of prejudice. A bad faith spoliator carries a heavy burden to show lack of prejudice because [a] party who is guilty of intentionally [destroying] documents ... should not easily be able to excuse the misconduct by claiming that the vanished documents were of minimal import." *Micron Tech., Inc. v. Rambus Inc.,* 917 F. Supp. 2d 300, 319 (D. Del. 2013).

Under these circumstances, an appropriate order would be at the very least compelling SJU's General Counsel, Tracy Pachman, to appear for a deposition to explain why the preservation letter was never provided to Ms. Smith and to discuss her involvement in the investigation into Dr. Manco. Since neither Ms. Morrison nor Ms. Smith could offer a plausible explanation as to why Ms. Smith's notes from her investigation were not maintained, Ms. Pachman is the only other person who could explain why Plaintiff is now prejudiced by SJU's failure to maintain the investigation file related to him. Additionally, SJU should be ordered to turn over "███████ ████████████████████" in their original format to ensure their authenticity.

### C. SJU Failed to Comply with a Court Order

SJU flagrantly disregarded the Court's July 23rd Order (Doc. 212) compelling them to produce any and all documents related to the disparate impact analysis.[7] Their August 27th letter contained an improper assertion of privilege that should have been included in either their initial objection to the Court or in a Motion for Reconsideration. Further, SJU had been in receipt of Plaintiff's initial discovery request for said information since June 9, 2025 and based on their response in their letter, failed to look for any responsive documents until well after the request was initially made. An appropriate Order should be issued that properly reprimands SJU for their failure to abide by a Court order.

### IV. CONCLUSION

For all of these reasons, Plaintiff requests that his Motion for Sanctions be granted.

Respectfully submitted,

/s/Joseph M. Toddy
Joseph M. Toddy, Esq.
jmtoddy@zarwin.com
ZARWIN, BAUM, DeVITO, KAPLAN
SCHAER & TODDY, P.C.
One Commerce Square, 16th Floor
2005 Market Street
Philadelphia, PA 19103
Tel.   215-569-2800
Fax.   215-569-1606

DATED: December 11, 2025

---

[7] SJU did not produce any of the documents the Court ordered them to produce in the July 23rd Order. *See* Ex. D. However, the disparate impact analysis was the only one that they acknowledged the documents existed but were not going to produce them.

## CERTIFICATE OF SERVICE

I, Joseph M. Toddy, hereby certify that I served a copy of the foregoing Motion by making it available to all registered users of the Court's ECF system, including all counsel of record.

/s/ Joseph M. Toddy
JOSEPH M. TODDY

DATED:   December 11, 2025